**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHARLENE FIGUEROA and JERMAINE BURTON, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-01306 |
| *Plaintiff,* | Honorable Gary M. Feinerman |
| v. | |
| KRONOS INCORPORATED, a Delaware corporation, | |
| *Defendant.* | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
TRANSFER, CONSOLIDATE, AND APPOINT INTERIM COUNSEL**

This case is a microcosm of the employer BIPA litigation landscape. Jay Edelson and James Zouras, counsel to Plaintiffs Charlene Figueroa and Jermaine Burton (the "*Figueroa* counsel"), have moved this case forward by fully briefing both a motion to dismiss and a motion to strike class allegations, including a round of supplemental briefing. Meanwhile, counsel to Plaintiffs Quatisha Marshall and Art Arcangelo (the "*Marshall* counsel")—who oppose the *Figueroa* plaintiffs' motion to appoint interim counsel—have been content to sit on the sidelines and hope for a good result while the first movers do the heavy lifting.

In the broader universe of BIPA litigation, this is precisely what has been going on all along. The *Figueroa* counsel filed the first-ever BIPA case, *see Licata v. Facebook, Inc.*, 2015-CH-05427 (Apr. 1, 2015), and have since then been out front, obtaining strong decisions from the courts in both the trial and appellate level, and insisting on settlements that correspondingly provide extremely strong relief. The *Marshall* counsel have filed numerous cases but have, by

and large, done the same thing in them as they have done here: waited for other attorneys—often, the *Figueroa* counsel—to obtain good decisions and defend BIPA in the legislature.

To be clear, the Figueroa counsel are not complaining about this state of affairs. In fact, it is their strong preference. That's because when the *Marshall* counsel have taken the legal questions of first impression in BIPA before the courts, they've lost. *See Bernal v. ADP, LLC*, 17-CH-12364 (Cir. Ct. Cook Cty.); *Miller v. Sw. Airlines Co.*, 926 F.3d 898, 900 (7th Cir. 2019). And the *Marshall* counsel's five settlements include largely reverting "funds" that result in the McGuire firm getting many times what the class does. This undercuts attorneys like the *Figueroa* counsel, and the like-minded attorneys on the Liaison Committee, when they go to the negotiating table demanding real settlements that create actual funds and direct payments to the class without the need for claim forms.

Aside from undercutting BIPA plaintiffs with bad decisions and worse settlements, the *Marshall* counsel have done nothing to participate in the broader BIPA plaintiffs' bar. As described in the opening brief, the *Figueroa* counsel have been leaders in attempting to organize the BIPA plaintiffs' bar and protect the law in the legislature from the earliest days of BIPA litigation. The *Marshall* counsel didn't engage with those efforts. Even with regard to the talks about leadership in this case, they were unable to do any work to come to an agreement. After the two sides had a number of conversations, the *Figueroa* counsel made self-ordering proposals which the *Marshall* counsel neither accepted nor rejected. They were simply unable to respond, which wasted weeks of time.

Now, when the *Marshall* counsel are confronted with the possibility that their inability to do substantive work in the cases is going to cause them to lose a role as lead class counsel, they threaten to "blow up" any settlement or class certification sought in this case through an opt-out

campaign. Far from recommending them to serve this class, this premature decision—made without even considering whether opting out would be in the best interests of their clients—is exactly why they have not earned the role of leading this class. Having produced no evidence that they can work cooperatively, despite the *Figueroa* counsel giving them a lot of opportunity to do so, the *Figueroa* counsel cannot recommend to this Court that they be included even as additional interim counsel.

Jay Edelson and James Zouras have a demonstrated track record of willingness to do the hard work of obtaining excellent results for BIPA plaintiffs. Their results in BIPA, both in the landscape-shifting legal results that they've achieved and the market-leading settlements that they've negotiated, demonstrate why they should be appointed as interim class counsel here. In this case, they ask to keep doing the work as sole interim counsel.

## I. The *Marshall* counsel's settlements are cause for serious concern.

The leading point in the *Marshall* counsel's brief highlights a significant problem. From the beginning in settling BIPA cases, the *Figueroa* counsel have insisted on substantial monetary relief, direct checks to class members without a claims process where possible, and distribution of an entire settlement fund. *E.g.*, *Taylor v. Sunrise Senior Living Mgmt.*, 2017-CH-15152 (Cir. Ct. Cook Cty. Feb. 4, 2019); *Lloyd v. Xanitos*, 2018-CH-15351 (Cir. Ct. Cook Cty. July 25, 2019) (fund constituting $1,300 per person with direct checks); *Edmond v. DPI Specialty Foods*, 2018-CH-09573 (Cir. Ct. Cook Cty.) (preliminary approval granted, fund constituting $1,000 per person with direct checks) (Cir. Ct. Cook Cty.); *Watts v. Aurora Chicago Lakeshore Hosp. LLC*, 2017-CH-12756 (Cir. Ct. Cook Cty.) (preliminary approval granted, fund constituting $1,000 per person with direct checks). Unusually for privacy class actions, BIPA cases in the employment context concern a class for whom relatively robust information exists: the employers know who

3

is in the class, and typically have address information as well. That makes it possible to accurately assess who is in the class and their location without a claim form, an equitable model of distribution that the *Figueroa* counsel have advocated for wherever possible. Against that settlement landscape the McGuire firm, particularly,[1] has gone against the grain by (1) settling claims for less monetary relief than most cases post-*Rosenbach*, and (2) using a claims-made structure to effectively disguise reversionary agreements that yield much less money to a far lower percentage of the class.

Of particular concern is the *Marshall* counsel's misrepresentation to this Court of the settlement agreements they struck in three cases: *Zhirovetskiy v. Zayo Group, LLC*, *McGee v. LSC Communications*, and *Marshall v. Lifetime Fitness*. In their brief, the *Marshall* counsel state that these settlements "recovered" substantial funds for a class of individuals. The actual settlements show their statements about those agreements obfuscate what actually happened. Unlike the settlement structure that the *Figueroa* counsel have strived for, these agreements are not actually funds at all, but claims-made settlements upon which the McGuire firm has inexplicably demanded substantial fees on the completely illusory "fund" number. These agreements are discussed in brief below the characterization of the settlements from the *Marshall* counsel's brief on page 8.

    a.   ***Zhirovetskiy v. Zayo Group, LLC***, **2017-CH-09323 (Cir. Ct. Cook Cty., Ill.): "$1 million recovered for class of 2,000 individuals"**

The *Marshall* counsel's description of *Zhirovetskiy* suggests that they recovered $1 million for their clients. But the settlement, which unnecessarily required a claim form, capped the payment at $400.00 per *claimant*. (*See Zhirovetskiy* Settlement Agreement, attached hereto as Exhibit 1, at ¶ 53.) That allowed the McGuire firm to artificially inflate the value of the

---

[1]    The Hart firm is not appointed as Class Counsel in these actions.

agreement by a reverter. The defendant was required to create a non-reversionary settlement fund in the amount of $500,000.00, with the remaining $490,000.00[2] to be funded only if needed to pay claims and which would otherwise revert to the defendant. (*See id.* ¶ 52.)

The McGuire firm sought 40% of the essentially illusory "total" amount as attorneys' fees. (*See Zhirovetskiy* Fee Motion, attached hereto as Exhibit 2.) Courts in the Seventh Circuit likely would not consider this a "fund" at all, and instead a claims-made settlement, resulting in a substantially lower fee award. *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 831–32 (7th Cir. 2018). Nevertheless, the final approval papers suggest that about 600 claims were submitted, thus the defendant paid $407,256.17 in fees, $10,000 to the plaintiff as an incentive award, and $240,000.00 to the class. (*See Zhirovetskiy* Final Approval Motion, attached hereto as Exhibit 3.) As will be seen, this nearly two-to-one ratio of fees to class relief is actually one of the better results that McGuire achieved in these three settlements.

**b.** *McGee v. LSC Communications***, 2017-CH-12818: "$700,000 recovered for class of 500 workers"**

The McGuire firm used the same structure in its *McGee* settlement. This settlement, too, did not actually provide the $700,000 supposed fund. Instead, the settlement required an unnecessary claim form and capped payments at $750.00 with an actual non-reversionary amount of $350,000.00. (*McGee* Settlement Agreement, attached hereto as Exhibit 4, ¶¶ 53–54.) The remaining $350,000.00 was funded only if approved claims, attorneys' fees, and expenses exceeded the original sum. Put another way, this is a $700,000 "recovery" only if every class member made a claim.[3] Nothing of the sort was expected to happen and of course, is not what

---

[2]      This adds up to $990,000.00, not $1,000,000.00, though this is the least of the problems here.
[3]      The claims of every class member would total to $390,000.00. The remainder of the Fund is McGuire's requested 40% attorneys' fees on the entire $700,000 ($290,000), a $5,000 incentive award, and $25,000 for settlement administration.

happened, as there was a 13% claims rate at the time of filing final approval, so the defendant actually payed approximately $51,000.00 to the class. (*See McGee* Final Approval Motion, attached hereto as Exhibit 5, at 9.) McGuire sought 40% of the $700,000 number, resulting in $280,000.00 in fees. (*See McGee* Final Approval Order, attached hereto as Exhibit 6.)

### c. *Marshall v. Lifetime Fitness*, 2017-CH-14262: "$1.7 million recovered for 6,000 employees"

Finally, McGuire's largest settlement is its most suspect. In no way did it "recover" $1.7 million for 6,000 employees, but it followed the above structures with a caveat: it provided 6,000 employees the option to file a claim capped at $270.00 and two years of "Dark Web Monitoring." (*See Marshall* Settlement, attached hereto as Exhibit 7, at ¶ 51.) The Settlement "values" the credit monitoring at $130.00 per class member. (*Id.*) When describing the agreement to *this* Court, McGuire at least did not attempt to include the credit monitoring as settlement value. But it did when the firm moved for fees in Cook County, asking for 33% of a purported *$2,430,000.00* Settlement Fund. (*Marshall* Mot. for Fees, attached hereto as Exhibit 8 at 5.) With an estimated 1,000 claims, the defendant paid approximately $270,000 in cash to the class,[4] and $800,000 in fees to McGuire. (*Marshall* Final Approval Mot., attached hereto as Exhibit 9 at 1; *Marshall* Final Approval Order, attached hereto as Exhibit 10.)

In choosing interim class counsel, the Court should consider counsel's "experience in handling . . . the types of claims asserted in the action," Fed. R. Civ. P. 23(g)(1)(A), as well as "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[,]" Fed. R. Civ. P. 23(g)(1)(B). The *Figueroa* counsel have consistently put the class

---

[4]     Credit monitoring might cost $130.00 if purchased by a consumer on the open market, but it doesn't cost anywhere close to that for a defendant to purchase in bulk. What's more, the defendant expressly denied that there had been any disclosure of the class's biometric data and a breach was not alleged in the complaint. *See Marshall* Settlement, Ex. 7 at ¶ 7. There was thus no need for the credit monitoring and its presence in the settlement would unnecessarily alarm the class members

first. They were the first to recognize that in the employer-BIPA context it is not only possible, but preferable to send checks directly without a claim form, which allows for every class member to make a recovery. *See Taylor v. Sunrise*, 2017-CH-15152. The *Marshall* counsel still uses a claims structure—which others have joined the *Figueroa* counsel in abandoning—despite no need for it in these settlements. They have done this in order to deliberately obfuscate claims-made settlements and reap an enormous portion of fees while leaving the vast majority of class members out to dry. Their willingness to describe that structure to this Court as "recovering" those sums for the class is extremely questionable.

Finally, the *Marshall* counsel actually are not correct that they have been appointed as class counsel in "more finally-approved BIPA settlements" than the *Figueroa* counsel. The *Figueroa* counsel have six, including the only one in federal court (*see Dixon v. Smith Senior Living Mgmt.*, 17-cv-08033 (N.D. Ill.)), and the firms are evidently "tied" at five settlements in the employment context.[5] It's not clear why this matters in the relevant analysis of who is going to advance the interests of the class. What certainly matters, for that question, is that the *Figueroa* counsel have demanded a settlement structure that provides significant monetary relief to the class before fees for themselves. That is also what they will do in this case. The *Marshall* counsel's record, on the other hand, speaks for itself.

II.     **The *Marshall* counsel's legal results in BIPA are losses.**

The *Figueroa* counsel are confident that their overall resumes—their work outside the BIPA space, and in privacy and employment particularly—compare favorably against the *Marshall* counsel's. What the *Figueroa* counsel's history demonstrates is a willingness to do the

---

[5]     *Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cty. Dec. 1, 2016) (a class of consumers); *Taylor* , 2017-CH-15152; *Lloyd*, 2018-CH-15351; *Dixon*, 17-cv-08033; *Sharrieff v. Raymond Mgmt. Co.*, 2018-CH-01496; *Morris v. Imperial Towers Condo.*, 2018-CH-00989.

work that brings their clients extraordinary results—whether that's in a negotiation, at trial, or in the Supreme Court. *See Spokeo v. Robins*, 136 S. Ct. 1540 (2016) (holding that "intangible harm" can satisfy Article III standing requirements); *see Wakefield v. ViSalus, Inc.*, No. 3:15-CV-1857-SI, 2019 WL 3945243 (D. Or. Aug. 21, 2019) (after achieving largest-ever privacy verdict amounting to $925 million, refusing to decertify class); *see Birchmeier v. Caribbean Cruise Line, Inc. et al.*, No. 12-cv-04069, dkt. 596 (N.D. Ill.) (granting final approval to largest TCPA settlement ever), *affirmed by Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018), *cert. denied sub nom. McCabe v. Aranda*, 139 S. Ct. 923 (2019). The respective counsel's track records in BIPA make the point even more clearly.

That is because the *Figueroa* counsel have been leaders in BIPA litigation from the beginning, filing the first cases and continuously moving them forward. In the first-filed BIPA case, *Licata v. Facebook, Inc.*, 2015-CH-05427, the Edelson firm successfully certified a class at the district court level and defeated a motion for summary judgment, and—since the opening brief in this case—successfully defended class certification in the Ninth Circuit. *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1267 (9th Cir. 2019). That case will be headed toward trial.

In both the consumer and the employer BIPA contexts, in which the *Marshall* counsel attempt to claim space, the *Figueroa* counsel have continuously won leading appellate decisions. *See Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175, ¶ 84 (finding that plaintiffs need not allege additional injuries to be "aggrieved," prior to the Illinois Supreme Court's holding in *Rosenbach*); *Rottner v. Palm Beach Tan, Inc.*, 2019 IL App (1st) 180691-U, ¶ 12 (finding that plaintiffs need not allege additional injuries to state a claim for liquidated damages); *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645 (finding that arbitration clause covering "wage and hour" claims did not cover BIPA claims). That's in addition to

winning key victories at the circuit court level, which the *Figueroa* counsel continue to do as the BIPA defense bar mounts new arguments in the post-*Rosenbach*, post-"aggrieved," world. *See McDonald v. Symphony Bronzeville Park LLC*, 2017-CH-11311 (Cir. Ct. Cook Cty. June 17, 2019), attached hereto as Exhibit 11 (holding plaintiff did not lack standing under Illinois law to bring suit, that BIPA not preempted by Workers' Compensation Act ("WCA"), and that plaintiff sufficiently stated claim for liquidated damages on negligence standard); *Robertson v. Hostmark Hosp. Grp.*, 2018-CH-5194, attached hereto as Exhibit 12 (Cir. Court Cook Cty., July 31, 2019) (holding that BIPA not preempted by WCA, and that BIPA has a five-year statute of limitations, rather than two- or one-year); *Mims v. Freedman Seating Co.*, 2018-CH-09806 (Cir. Ct. Cook Cty. Aug. 22, 2019), attached hereto as Exhibit 13 (holding that BIPA not preempted by WCA and that plaintiff need not allege negligence to state claim for liquidated damages); *Bruhn v. New Albertson's, Inc.*, 2018-CH-01737 (Cir. Ct. Cook Cty. July 2, 2019), attached hereto as Exhibit 14 (holding that BIPA's "HIPAA Exemption" does not immunize employers who collect biometric data from healthcare providers). The *Figueroa* counsel are well-equipped to serve this class, as they have demonstrated time and time again.

By contrast, when the *Marshall* counsel have moved a case forward—those that they refer to in their brief as examples of their results in BIPA litigation—are, by and large, massive failures.

In *Bernal v. ADP LLC*, the *Marshall* counsel—as they did in this case—amended a case which they had filed solely against the named plaintiff's employer to drop the employer and substitute a biometric timeclock company, ADP. 2017-CH-12364 (Cir. Ct. Cook Cty). (Again, as happened in this case, the *Marshall* counsel did this shortly after the *Figueroa* counsel filed a complaint seeking to certify a statewide class against ADP, LLC for its violations of BIPA. *See*

*Henderson v. ADP, LLC*, 2018-CH-7139 (Cir. Ct. Cook Cty. June 5, 2018).) They then briefed

and lost a motion to dismiss. The opinion was recently cited by Kronos to this Court as

supplemental authority. (*See* dkt. 77-1.)

To the extent that Judge Atkins's opinion provides a "clear roadmap" for how to survive

a motion to dismiss in such a case, that is the road the *Marshall* counsel should have followed to

begin with, and it was the one charted by the *Figueroa* counsel in this case. Judge Atkins could

not conclude, from the *Bernal* complaint, what the basis for ADP's liability was at all. (*Id.* at 3

("Plaintiff has failed to allege facts sufficient for the Court to properly assess Defendant's actual

involvement, relative to the biometric scanning technology, beyond the fact that Defendant

supplied Rockit with the technology.").) Though this remains a matter of some dispute with

Kronos, the *Figueroa* counsel have followed the clear roadmap from the beginning, premising

Kronos's liability on Kronos's own collection of biometric data. (Pls.' Opp. to Mot. to Dismiss,

dkt. 50, at 1, 8–9.) The *Marshall* counsel have done this putative class no favors with its

misunderstandings of the facts and law in *Bernal*.

The *Marshall* counsel also mention their work "defending . . . workers' biometric privacy

rights in the federal appellate courts," citing *Johnson v. UAL*, No. 19-1785 (7th Cir. 2019).

(*Marshall* Opp. Br., dkt. 75 at 5.) Though this likely does not require clarification (*see* dkts. 67,

68), this Court knows the case as *Miller v. Southwest Airlines*, in which the *Marshall* counsel

*completely* lost in the Seventh Circuit. *See* 926 F.3d at 904. Notable for this Court's purposes is

that the attorney from the McGuire firm that argued the case inexplicably refused to answer

several questions during argument, prompting Judge Easterbrook to repeatedly decry the

behavior as "unethical." *See* Audio Recording of Oral Argument, 19-1785 (7th Cir.), at 19:04–

19:22, *see also id.* at 25:00–25:30; 29:55–30:17.

The *Marshall* counsel filed a notice of supplemental authority earlier today citing two new decisions. While the *Figueroa* counsel are pleased to see them, it must be noted that the decisions build substantially on the work of the *Figueroa* counsel. For example, in *Bolds v. Arro Corp.*, 2018-CH-01811, the first cited opinion from Judge Sanjay Tailor of Cook County, the defendant argued that plaintiff lacked standing under Illinois law to sue. (*See* Tr. of Proceedings, dkt. 81-1, at 3.) The McGuire firm failed to cite *Duncan v. FedEx Office & Print Servs.*, a dispositive case on this question that was, again, produced by the Edelson firm. (*Id.* at 3, 22); 2019 IL App (1st) 180857, ¶ 23 ("Importantly, under Illinois law, when a plaintiff alleges a statutory violation, no 'additional requirements' are needed for standing."). Luckily, it had also been Judge Tailor's case and was footnoted by the defendant, prompting Judge Tailor to repeatedly ask why the McGuire attorney did not cite it. (*See* Tr. of Proceedings, dkt. 81-1, at 22–24.)

This issue has come up often in post-*Rosenbach* motion practice and the *Figueroa* counsel have made no secret of this case in their briefs; it's confusing how this could have been missed. *E.g.*, *McDonald*, 2017-CH-11311. Aside from this misstep, the *Marshall* plaintiffs did succeed on establishing the third-party vendor's liability on the theory of direct collection, which is the right track to take. (*See* Tr. of Proceedings at 27–43.) The second cited opinion, *Rogers v. CSX Intermodal Terminals, Inc.*, relies on *Sekura* and *Rottner*, which further demonstrates how foundational the *Figueroa* counsel's work has been in BIPA. No. 19-cv-02937, dkt. 24 at 6 (N.D. Ill. Sept. 5, 2019).

In short, the *Figueroa* counsel have done more than file cases. They have consistently been willing to put in the work to move them forward and produce victories at the appellate and circuit court level. The *Marshall* counsel have been content to sit back and let the *Figueroa*

counsel hash out these questions of first impression, in this case and elsewhere.[6] Nor has Mr. McGuire taken a lead here; if he appears to argue this motion at a hearing, it will be the first time he has appeared in Court in this case and, from what the *Figueroa* counsel can determine, perhaps any BIPA case. The *Figueroa* counsel are happy to lead the way, given their respective track records. But that points strongly toward appointing the *Figueroa* counsel as interim class counsel here.

### III. The *Marshall* counsel have not demonstrated their ability to cooperate with other plaintiff's counsel or provide meaningful benefits to the Class.

As the *Marshall* counsel recognize, courts should consider the proposed interim counsel's demonstrated ability to "work cooperatively with additional counsel[.]" *Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 290 (N.D. Ill. 2014). As described in the opening brief, the *Figueroa* plaintiffs have led the efforts to self-organize the plaintiff's bar from the early days of BIPA litigation, including in defending BIPA from efforts to gut the law in Springfield. (Pls.' Mot. to Consolidate, dkt. 37, at 8–9.) The *Marshall* counsel have generally not responded and not participated. That was, regrettably, also what occurred with regard to the efforts to propose a privately-ordered leadership structure for these actions.

The *Figueroa* counsel tried, as Mr. Edelson represented to the Court, to privately order the leadership of these actions. After initial discussions, the *Figueroa* counsel proposed a structure to the *Marshall* counsel. (Declaration of Jay Edelson ("Edelson Decl."), attached hereto as Exhibit 15, at ¶ 8.) For a time, the *Figueroa* counsel were optimistic that it would be possible to present a proposal to the Court that would resolve the interim counsel motion, given the early indications of support for the proposed structure. (*Id.* ¶ 12.) But when it came down to it, the

---

[6]     Given the small size of the McGuire firm, it's not clear that they have the resources to actively litigate all of the on-file BIPA cases, even if they wanted to.

*Marshall* counsel simply withdrew from the discussions, and did not offer comments or suggestions on the proposed leadership structure. (*Id.* ¶ 13.) Instead, they filed an opposition brief without any further engagement.

The *Figueroa* counsel have tried from the beginning to engage the *Marshall* counsel in the BIPA landscape as a whole. Members of the Edelson firm reached out to members of the McGuire firm, as they did other members of the plaintiffs' bar, to join in efforts to prevent the law from being overturned in Springfield. (*See Figueroa* Pls.' Opening Br., dkt. 42, at 8–9; *see also* Edelson Decl. ¶ 3.) While many, including Stephan Zouras, did join, the McGuire Firm was silent and has never engaged on the legislative threats posed. (*Id.* ¶ 4.) And when the Illinois Supreme Court accepted the appeal from the Second District's decision in *Rosenbach*, members of both *Figueroa* counsel's firms reached out to the McGuire firm to join an amicus brief on behalf of the plaintiffs in the employment law matters. (Declaration of James Zouras ("Zouras Decl."), attached hereto as Exhibit 16, ¶¶ 4–5.) Again, McGuire did not join. (*Id.* ¶¶ 5–6.)

The *Marshall* counsel have attempted to demonstrate a backing among members of the plaintiffs' bar by assembling a Leadership Group that are not already supporting the *Figueroa* counsel. There are not many, evidently representing just 25 on-file BIPA cases. (*Marshall* Opp. Br. at 3.) As far as having the support of the BIPA plaintiffs' bar generally, the *Figueroa* counsel have the support of attorneys whose practices are almost exclusively focused on defending employee rights, with more on-file cases. (*See* Decl. of David Fish, dkt. 38-6; Decl. of Brandon Wise, dkt. 38-7; Decl. of Alejandro Caffarelli, dkt. 38-8, Decl. of Doug Werman, dkt. 38-9.) Together with the supporting counsel, the *Figueroa* counsel represent fully two-thirds of on-file BIPA cases in the employment context.

The *Marshall* counsel go on to imply that, because they have so many cases on file, they must be appointed interim counsel—otherwise, they will unilaterally preclude class certification by waging an opt-out campaign or, if a settlement is reached, attempting to trigger a "blow up" provision. (*See Marshall* Opp. Br. at 20–21.) Without any explanation for why a mass opt-out of class certification would be necessary or beneficial to their clients, it's not clear what the *Marshall* counsel mean to suggest with this assertion other than a stick-up. The *Marshall* counsel cannot know, at this point, what settlement it is that they are threatening to blow up or why. These sorts of premature threats far from recommend the *Marshall* counsel as stewards of this case.

The reason the major players in the plaintiffs' BIPA bar support the *Figueroa* counsel is because of their track record of trying to self-organize and work cooperatively with others from the beginning. The fact that they have been unable to do so with the *Marshall* counsel in this case is a regrettable circumstance, but far from counsels in favor of appointing the *Marshall* counsel here. Indeed, the *Marshall* counsel appear to have no experience leading consolidated class litigation at all. (*See Marshall* Opp. Br. at 9–12.) Nothing about their actions in this case, or in BIPA litigation generally, suggests that should change.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) consolidate the *Figueroa* and *Marshall* actions, (2) appoint Jay Edelson of Edelson PC and James B. Zouras of Stephan Zouras LLP interim class counsel, and (3) grant any further relief as may be appropriate and just.

Respectfully submitted,

**CHARLENE FIGUEROA and JERMAINE
BURTON**, on behalf of themselves and all others
similarly situated,

Date: September 10, 2019

By:  /s/ Jay Edelson

*One of the Attorneys for the Plaintiffs and the
Putative Class*

James B. Zouras
Ryan F. Stephan
Andrew C. Ficzko
Haley R. Jenkins
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
Firm ID: 43734
jzouras@stephanzouras.com
rstephan@stephanzouras.com
aficzko@stephanzouras.com
hjenkins@stephanzouras.com

Jay Edelson
Benjamin H. Richman
J. Eli Wade-Scott
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
312.589.6370
312.589.6378 *f*
Firm ID: 62075
jedelson@edelson.com
brichman@edelson.com
ewadescott@edelson.com

David Fish
John Kunze
**THE FISH LAW FIRM, P.C.**
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
630.355.7590

15

630.778.0400 *f*
Firm ID: 44086
dfish@fishlawfirm.com
kunze@fishlawfirm.com

## CERTIFICATE OF SERVICE

I, Jay Edelson, an attorney, hereby certify that on I caused to be served the above and foregoing ***Plaintiffs' Reply in Support of Motion to Transfer, Consolidate, and Appoint Interim Counsel*** by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the court's CM/ECF electronic filing system.

/s/Jay Edelson