**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHARLENE FIGUEROA and JERMAINE BURTON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>KRONOS INCORPORATED, a Delaware corporation,<br><br>*Defendant*. | Case No. 1:19-cv-01306<br><br>Honorable Gary M. Feinerman |

**KRONOS INCORPORATED'S RESPONSE TO COMBINED MOTIONS FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS**

This motion represents an attempt by Plaintiffs and several non-party subpoena recipients (collectively the "Movants") to seek to impose procedural roadblocks on Kronos' attempts to obtain relevant information that is necessary for its affirmative defenses and for issues surrounding class certification. Rather than properly responding to the individual subpoenas that Kronos served on the named plaintiffs in a number of BIPA class actions brought against employers that used Kronos timekeeping technology, the Movants instead seek to prevent all subpoena recipients, including those who did not join the motion, from responding to any of Kronos' requests.

This improper attempted grouping of all of these subpoenas ignores the fact that, as an individual subpoena recipient, each absent putative class member may face significant differences in his or her individual circumstances that weigh on the decision of whether and how each individual should respond to Kronos' subpoenas. Rather than acknowledging these individual circumstances, and serving objections and responses to the various subpoenas, Movants attempt to patch together several disparate complaints that some of the Movants (or those individuals

represented by Plaintiffs' counsel or the Liaison Committee who have not yet responded) might have as a means to collectively quash all of the subpoenas.

Raising such a procedural roadblock is contrary to the expressed wishes of this Court, and Plaintiffs' attempt to join in by seeking the entry of a protective order is, quite simply, baseless. (Dec. 10, 2020 Hr'g Tr. at 13:16-17 (stating the Court will "be very disappointed if there are procedural roadblocks that are set up" to these subpoenas)). The subpoenas that Kronos issued to the lead plaintiffs in the various state court BIPA employer lawsuits, who are absent putative class members here, seek targeted information that is highly relevant both to Kronos' affirmative defenses, as well as to the issue of class certification. Further, Kronos' requests are highly targeted so as to seek the relevant information without imposing an undue burden on the subpoena recipients, and without treating them "unfairly" in any sense of the word. As such, Movant's combined motion to quash and motion for protective order should be denied in its entirety.

## I. The Subpoena Recipients Should Respond To Their Respective Subpoenas.

Each of the Rule 45 subpoenas issued by Kronos that are now in dispute is directed to a specific individual. While each of those subpoenas contains identical requests, the appropriate response to those requests is of course shaped by the individual circumstances of each subpoena recipient. The individual circumstances that may apply to one subpoena issued to one individual, do not necessarily dictate an appropriate response to a different subpoena, directed to a different individual. Movants' motion demonstrates this by pointing out that some, **but not all**, of the BIPA employer cases in which the subpoena recipients serve as named plaintiffs have settled or not progressed to discovery. (Dkt. 234 at 10). Even if the fact that a BIPA employer lawsuit settled or had not yet commenced discovery was a reason to quash the subpoenas in any of those cases—as

discussed below, it is not—that fact would have no bearing on the subpoenas in the cases where the related BIPA lawsuit has proceeded to discovery.

By trying to lump all of the subpoenas together and respond en-masse a single time, Movants are trying to aggregate any individual objections that each individual might have to the subpoenas, either as a whole or to specific requests, in order to piece together an argument that all of the requests contained in each subpoena must be quashed. This is improper and Movants have provided no authority approving of such a tactic. In order to properly address any of the objections that Movants or the non-moving subpoena recipients may have with the individual subpoenas that were issued to them individually, they should serve individual objections. At that point, the Parties can meet and confer as to the objections and attempt to resolve them through the proper channels.

## II. The Information That Kronos Requests Is Relevant, As This Court Has Already Largely Held.

Much of the Movants' motion is devoted to rehashing an argument that the information Kronos seeks in the subpoenas is irrelevant and not necessary. Movants primarily make this argument by reaching back to this Court's ruling on Kronos' motion to strike class allegations from April 13, 2020 to highlight the fact that the Court ruled that Kronos' arguments on the appropriateness of Plaintiffs' class allegations were *at that time* insufficient to justify striking the class allegations. *See* Dkt. 234 at 7-8. Unsurprisingly, Movants make no mention of the fact that since the ruling on the motion to strike class allegations, the Court has subsequently held that much of the exact information that Kronos seeks in the subpoenas is relevant in this case.[1] (*See* June 10, 2020 Hr'g Tr. at 38:24-39:9) (ordering production of personnel files "pertaining to union

[1] The Court has not yet addressed the relevancy of the use of other biometric devices or social media activity. Both of these issues are currently before the Court—the issue of the use of biometric devices in Kronos' pending motion to compel (Dkt. 259) and the issue of social media activity in Kronos' motion for leave to file additional interrogatories (Dkt. 261).

membership, consent, waiver, objection based on privacy, or anything consent or privacy related or data related matters, [and] employment agreements that speak in any way to privacy or data or employment policies").

Putting aside the fact that the Court has already largely ruled on this issue, the requested discovery is relevant and necessary in any event. Request No. 1 in each subpoena asks for information from the recipient about his or her membership in a union. (Dkt. 234-1, Request 1). The question of union membership, and whether a large group of individuals that make up the putative class were members of a union, is necessary for purposes of class certification. BIPA claims from union-affiliated individuals have repeatedly been found to be preempted. *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1155-56 (7th Cir. 2020); *Miller v. Sw. Airlines Co.*, 926 F.3d 898, 904 (7th Cir. 2019). If the subpoena recipients, and the groups of putative class members that they claim to represent in their separate employer BIPA suits are, or were ever, members of a union, that will raise serious questions as to the adequacy of Plaintiffs Figueroa and Burton to represent vast swaths of the putative class—not to mention bringing into question whether Plaintiffs' claims are common or typical of those of all of the individuals they purport to represent. *See* Fed. R. Civ. P. 23(a)(2-4).[2]

Request No. 2 in each subpoena asks for records related to the recipient's "use, consent to use, objection to the use of, or waiver of the objection to the use of" the timekeeping devices that are at issue in each recipient's respective BIPA employer action. (Dkt. 234-1, Request 2). Again, this information from each subpoena recipient is relevant and necessary. Whether large swaths of the putative class ever consented to, objected to the use of, or waived any objection to the use of

[2] Moreover, the issue of whether putative class members can still maintain an action against a third-party vendor such as Kronos when their claims are preempted against their employers has not yet been decided on the merits. Indeed, the law on LMRA preemption of BIPA claims has developed significantly since the Court's issuance of its April 2020 opinion.

Kronos' technology weighs directly on the ability of Plaintiffs to certify the class that they seek to represent in this case, in particular on whether individual issues predominate.

Next, Request Nos. 3 and 4 seek information related to data or privacy policies that the individuals were subject to during their employment with the employer who they are suing for BIPA violations. (Dkt. 234-1, Requests 3 and 4). Much like with the previous request, any privacy policy that was provided to a non-insignificant portion of the putative class that identified Kronos' role in the timekeeping processes used by each employer will necessarily inform the calculus as to whether Plaintiffs' claims are common to and typical of the claims of the individuals that Plaintiffs seek to represent.

Request Nos. 5 and 6 seek information related to biometric timekeeping devices, or other biometric devices, that the subpoena recipients have used. (Dkt. 234-1, Requests 5 and 6). While the Court has not yet ruled on this issue, it is currently before the Court in Kronos' pending Motion to Compel. (Dkt. 259). As discussed more fully in that motion, information related to subsequent use of biometric devices is relevant to, and necessary for, Kronos' affirmative defenses of waiver, assumption of risk, and consent. (Dkt. 259 at 3-6). Obtaining this information from the subpoena recipients who are putative class members, in addition to named plaintiffs in their own actions, again goes to questions of class certification—typicality and commonality.

Request No. 7 asks for each subpoena recipient's recent social media activity related to their BIPA lawsuits, Kronos, biometric information, BIPA, the recipient's use of biometric devices, and their alleged injuries in their respective BIPA employer lawsuits. (Dkt. 234-1, Request 7). While, unlike the majority of Kronos' requests, this specific category of information has not yet been ruled on by the Court, it is relevant because it speaks to the recipients' prior knowledge and use of biometrics, knowledge of BIPA, and their relationship with their employers. Movants'

insistence of focusing on the impact that any of these factors would have with regards to an individual putative class member is misplaced. Importantly, each of the subpoena recipients has already claimed to be an adequate representative of a significant portion of the class that is proposed here by filing their own class actions against Kronos' customers. As such, their individual information can logically be extended to a portion of the putative class here and any significant differences between the subpoena recipients and Plaintiffs should be considered when this Court addresses class certification.

Finally, Request Nos. 8 and 9 directly request deposition transcripts and discovery responses that were produced in the BIPA employer cases, except for documents produced by Kronos. Kronos believes that the other information that it has asked for in these subpoenas was likely also requested in discovery in the employer cases. For the same reasons that the foregoing categories of documents are relevant to Kronos' defenses, the discovery requests and transcripts of any depositions that address those same documents are likewise relevant.

The unique position that the subpoena recipients occupy as lead plaintiffs in cases where they represent large, employer-specific portions of the class that Plaintiffs seek to certify here further bolsters the argument for relevancy. Plaintiffs have chosen to try and certify an expansive class that stretches across all of the various companies that use Kronos timekeeping technology in Illinois. It is implausible to think that there are not at least some differences in the way that such timekeeping technology was implemented and used at each company. By seeking information from the individuals who claim to adequately represent all of the employees at the various companies that have been sued for BIPA violations, Kronos can most efficiently flesh out what exactly those differences are. Any differences between the various circumstances that large portions of the putative class experiences when they used Kronos technology will, of course, bear

on this Court's decisions as to whether Plaintiffs can adequately represent the class that is defined in Plaintiffs' complaint.

In sum, all of the documents that Kronos requests are relevant and necessary to this case. Kronos should not be restricted from seeking and obtaining this information based on the assertion that the recipients are "absent" putative class members. *See Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 70 (S.D.N.Y. 2020) ("a defendant should not be 'unfairly prejudiced by being unable to develop its case' even though 'facts of the case may reside with the absent class members.'"). Kronos has limited its requests to issues that the Court has largely already found to be relevant, and should be answered.

## III. Service Of Rule 45 Subpoenas On The Named Plaintiffs In BIPA Employer Cases Is A Fair Method To Seek Discovery From The Subpoena Recipients.

Serving subpoenas on the named plaintiffs in the BIPA employer cases was the process outlined by this Court for seeking the discovery Kronos asks for here. (Dec. 10, 2020 Hr'g Tr. at pp. 12-13). As such, Movants' claims that the subpoena process is unfair to the subpoena recipients also misses the mark. On this point, Movants' arguments essentially boil down to the following conclusory claims: (1) experience with biometric data collection and social media activity is "unnecessarily intrusive and burdensome[;]" (2) producing their own personnel files is too burdensome on them; and (3) "responding to the subpoenas creates additional (and unnecessary) expense and burden for counsel as well." (Dkt. 234 at 10-11).

Any burden that responding to the discovery requests creates for Plaintiffs' counsel is irrelevant to the analysis of whether a Rule 45 subpoena should be quashed or whether a protective order should be entered. *See* Fed. R. Civ. Pro. 26(c)(1) (the court may issue a protective order "to protect *a party or person* [from whom discovery is sought] . . . undue burden or expense . . . .") (emphasis added). As Plaintiffs' counsel fervently argued in opposing Kronos' Rule 33 and 34

discovery requests seeking this same information, and as the Court agreed, Kronos is seeking this information from the lead plaintiffs in the BIPA state court cases—not from Plaintiffs' counsel. (*See* Dec. 10, 2020 Hr'g Tr. at 12:14-21). As such, the only burden that could possibly be relevant here is the burden to either those state court plaintiffs or to Plaintiffs Figueroa and Burton. The fact that those individuals are largely represented by Plaintiffs' counsel or the Liaison Committee here does not factor into the analysis. Put simply, Plaintiffs cannot argue that Kronos must seek this information through Rule 45 subpoenas, rather than by any other more efficient means, and then turn around and use the inefficiency that they advocated for as a reason why the subpoenas are improper.[3]

With regards to the burden that these subpoenas put on the subpoena recipients, Movants have not provided any reasoning for why these simple requests are "unnecessarily intrusive and burdensome." Instead, Movants essentially rest on their argument that the information is irrelevant and therefore any burden, no matter the size, is overly burdensome. As discussed above, the requested information is both relevant and necessary to the issue of class certification in this case. Moreover, it is also relevant to Kronos' affirmative defenses.

Additionally, the actual burden that the requests in the Subpoena impose on the subpoena recipients is minimal. Kronos' requests are targeted at information that is directly relevant to the BIPA employer cases—much of which has likely already been produced in those cases. As the Court previously contemplated, it is unlikely that the burden associated with this discovery would be that great. (Dec. 10, 2020 Hr'g Tr. at 13:7-10) ("I can't imagine the burden would be that great

[3] Plaintiffs' continued efforts to obstruct discovery here is also contrary to the previous promises that Plaintiffs' counsel has made to the Court that they would conduct discovery in a way that was efficient and non-duplicative of the state court BIPA cases. (*See* Dkt. 38-6, 38-7, 38-8, 38-9). Counsel has been appointed Interim Lead Counsel based on those promises not once, but twice. It is time that counsel earn that designation rather than continue to frustrate discovery and create inefficiencies at every turn.

given that . . . it's just about discovery that's already been taken in the state court case."). Movants have given no reason why this is not the case here and the only burdens they point to are entirely contrived.

For example, the fact that some of the requested documents beyond discovery responses may also be in the possession of the recipients' employers does not create a burden. The Illinois Personnel Record Review Act law ensures that an employee's personnel documents are easily accessible to any employee that requests them. *See* 820 ILCS 40/1 *et seq.* Each of the subpoena recipients is the lead plaintiff in a BIPA lawsuit against their current or former employers. A request for personnel records under the Personnel Record Review Act is common practice prior to the filing of any such lawsuit. As such, the documents that Kronos requests are not only easily accessible to the subpoena recipients, but also have likely already been requested by each recipient.

Further, Kronos' subpoenas, of course, only seek documents that are in the recipients' "possession, custody, or control[.]" Fed. R. Civ. P. 45(a)(1)(A). To the extent any subpoena recipient truly does not know of any documents within his or her possession, custody, or control, he or she is welcome to state that in a response to the subpoena. Indeed, subpoena recipients that are not represented by Plaintiffs' counsel and the Liaison Committee have already done so. (*See* Third-Party Respondent Responses and Objections to Subpoena, attached as Exhibit 1).

Movants also claim that some of the requested documents do not exist because the respective cases have either not proceeded to discovery or have settled. In fact, based on the documents Kronos has received in response to identical subpoenas that were served to individuals not represented by Plaintiffs' counsel or the Liaison Committee, the exact documents that Kronos seeks may have led to early settlements or dismissals. For example, one recipient produced her former employer's BIPA policy and her signed consent, both of which identified Kronos. In that

case, the production of the consent is what caused the early dismissal. As such, the fact that any individual BIPA employer case has settled does not automatically mean that the lead plaintiff from that case will not have documents responsive to Kronos' subpoena.[4]

In sum, these requests are not "unfair" as alleged by Movants. Given their status as named plaintiffs in similar BIPA class actions in which the requested information is likely also relevant and subject to discovery, the subpoena recipients here are in an unusual position that puts them in a significantly better position to respond to these third-party subpoenas with an even smaller burden than would typically be placed on any absent class member.

**IV. Plaintiffs Lack Standing To Move For The Requested Protective Order.**

Plaintiffs' motion for a protective order barring responses to <u>all of the subpoenas</u> is, to say the least, unusual. Plaintiffs Figueroa and Burton make no attempt to differentiate their motion for a protective order from the subpoena recipients' motion to quash. Indeed, the protective order that is mentioned only twice throughout the motion asks for the exact same thing as the motion to quash—that the subpoena recipients not be forced to respond to the subpoenas.

Typically, a party may only challenge a subpoena issued to a third-party if that subpoena somehow infringes on the party's own rights. *See Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 186 (N.D. Ill. 2013) ("Ordinarily, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought.") (*quoting Kessel v. Cook County*, No. 00-C-2980, 2002 WL 398506 at *1-2 (N.D. Ill. Mar. 13, 2002)); *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C.), *on reconsideration*, 232 F.R.D. 6 (D.D.C. 2005) ("[a] party generally lacks

---

[4] If any subpoena recipients truly do not have responsive documents then they must state that, and the reason why no documents exist, rather than refusing to respond altogether. If responsive documents come to exist throughout the course of the BIPA employer case, that response can, of course, be supplemented.

standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter"); *Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co. of New York*, 519 F. Supp. 668, 680 (D. Del. 1981) (collecting cases for the proposition that "[a]s a general matter, a party has no standing to seek to quash a subpoena directed to one who is not a party"); *see also United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) (allowing a party to challenge a subpoena to a non-party "if the subpoena infringes upon the movant's legitimate interests").

Plaintiffs Burton and Figueroa do not attempt to explain why they have standing to challenge the subpoenas issued to the BIPA employer plaintiffs. Specifically, the motion does not mention any legitimate interest of Plaintiffs Burton and Figueroa that is infringed or threatened by these subpoenas. Because Plaintiffs lack standing, their motion for protective order should be denied.

**CONCLUSION**

For all of these reasons, Kronos respectfully asks the Court to deny Plaintiffs' and Absent Putative Class Members' Combined Motions for Protective Order and To Quash Subpoenas.

Dated: February 8, 2021

Respectfully submitted,

**KRONOS INCORPORATED**

By: */s/ Melissa A. Siebert*
One of Its Attorneys

Melissa A. Siebert
Erin Bolan Hines
Shook, Hardy & Bacon L.L.P
111 S. Wacker Drive
Chicago, Illinois 60606
Tel: (312) 704-7700
Fax: (312) 558-1195
masiebert@hb.com
ehines@shb.com

Debra Bernard
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603
Tel: (312) 324-8400
Fax: (312) 324-9400
dbernard@perkinscoie.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2021, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all Counsel of Record. Parties may access this filing through the Court's system.

*/s/ Melissa A. Siebert*