**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHARLENE FIGUEROA and JERMAINE BURTON, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-01306 |
| *Plaintiffs,* | Honorable Gary M. Feinerman |
| v. | |
| KRONOS INCORPORATED, | |
| *Defendant.* | |

**PLAINTIFFS' MOTION FOR AND MEMORANDUM IN SUPPORT OF
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................3

     A.      Illinois' Biometric Information Privacy Act...............................................3

     B.      Plaintiffs' Allegations and Defendant's Time Clocks ..........................5

     C.      Litigation, Negotiation, and Settlement .................................................5

III.    TERMS OF THE SETTLEMENT AGREEMENT.......................................8

     A.      Class Definition .........................................................................................8

     B.      Settlement Payments ..................................................................................9

     C.      Prospective Relief ....................................................................................10

     D.      Payment of Settlement Notice and Administrative Costs ................................11

     E.      Payment of Attorneys' Fees, Costs, and Incentive Awards ...........................11

     F.      Releases of Liability ................................................................................11

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ..................................................................12

     A.      The Numerosity Requirement is Satisfied ...............................................13

     B.      Common Issues of Fact and Law Predominate.................................................13

     C.      The Typicality Requirement is Satisfied .................................................14

     D.      The Adequacy Requirement is Satisfied .................................................15

     E.      A Class Action is a Superior Method of Resolving the Controversy .............20

     F.      The Class Is Ascertainable ......................................................................23

V.      PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .....23

VI.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..24

     A.      Plaintiffs and Proposed Class Counsel Have Adequately Represented the Settlement Class ........................................................................26

**B.**     **The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties** ............................................................................31

**C.**     **The Settlement Treats All Settlement Class Members Equally** ....................33

**D.**     **The Relief Secured for the Settlement Class Is Adequate and Warrants Approval** ..............................................................................................34

       **1.**     **The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval** ........................................35

       **2.**     **The method of distributing relief to the Settlement Class Members is effective and supports preliminary approval** .....................................37

       **3.**     **The terms of the requested attorneys' fees are reasonable** ..............38

**VII.**     **THE PROPOSED NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE** .....................................................................................................40

**VIII.**     **CONCLUSION** ..............................................................................................42

## **TABLE OF AUTHORITIES**

### **United States Supreme Court Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...........................................................................................12, 22

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
    568 U.S. 455 (2013)..................................................................................................12

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..................................................................................................40

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)..................................................................................................33

*Wal-Mart v. Dukes*,
    564 U.S. 338 (2011)..................................................................................................13

### **United States Appellate Court Cases**

*Arreola v. Godinez*,
    546 F.3d 788 (7th Cir. 2008) ...................................................................................12

*Beaton v. SpeedyPC Software*,
    907 F.3d 1018 (7th Cir. 2018) .................................................................................15

*Bell v. PNC Bank, Nat'l Ass'n*,
    800 F.3d 360 (7th Cir. 2015) ...................................................................................13

*Cothron v. White Castle System, Inc.*,
    No. 20-3202 (7th Cir.) ...............................................................................................7

*Fox v. Dakkota Integrated Systems, LLC*,
    980 F.3d 1146 (7th Cir. 2020) ...................................................................................6

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ...................................................................................25

*Gomez v. St. Vincent Health, Inc.*,
    649 F.3d 583 (7th Cir. 2011) ...................................................................................24

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ...................................................................................25

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*,
  877 F.3d 276 (7th Cir. 2017) ....................................................................... 28

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ....................................................................... 29

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) .................................................................. *passim*

*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019) ..................................................................... 17

*Retired Chi. Police Ass'n v. City of Chi.*,
  7 F.3d 584 (7th Cir. 1993) .......................................................................... 16

*Sosa v. Onfido, Inc.*,
  8 F. 4th 631 (7th Cir. 2021) ......................................................................... 17

*Spano v. The Boeing Co.*,
  633 F.3d 574 (7th Cir. 2011) ....................................................................... 15

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ............................................................ 13, 14, 22

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ....................................................................... 25

*Williams v. Rohm & Haas Pension Plan*,
  658 F.3d 629 (7th Cir. 2011) ....................................................................... 39

## United States District Court Cases

*Adkins v. Facebook, Inc.*,
  No. 18-cv-05982-WHA (N.D. Cal. May 6, 2021) ....................................... 1, 2

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ......................... 27

*Barnes v. Air Line Pilots Ass'n, Int'l*,
  310 F.R.D. 551 (N.D. Ill. 2015) .............................................................. 13, 21

*Bernal v. NRA Group, LLC*,
  318 F.R.D. 64 (N.D. Ill. 2016) ............................................................... 21, 22

*Charvat v. Valente*,
  No. 12-cv-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ...................... 32

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
    No. 1:18-cv-07018 (N.D. Ill. Sept. 10, 2020) ................................................. 39

*Cothron v. White Castle System, Inc.*,
    477 F. Supp. 3d 723 (N.D. Ill. 2020) ............................................................ 19

*Dixon v. Washington & Jane Smith Cmty.-Beverly*,
    No. 17-cv-8033 (N.D. Ill. May 31, 2018) ................................................. 9, 34

*Figueroa v. Kronos Inc.*,
    454 F. Supp. 3d 772 (N.D. Ill. 2020) ....................................................... 14, 15

*Goldsmith v. Tech. Sols. Co.*,
    No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ........................ 35

*Gumm v. Ford*,
    No. 5:15-cv-41-MTT (M.D. Ga. Jan. 17, 2019) .......................................... 26

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) .................... 25

*Hudson v. Libre Tech., Inc.*,
    No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13, 2020) ................. 36

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010)................................................................ 25

*In re AT & T Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ........................................................ 37

*In re Cap. One Tel. Cons. Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ......................................................... 28

*In re Facebook Biometric Info. Priv. Litig.*,
    No. 3:15-CV-03747-JD, 2018 WL 2197546 (N.D. Cal. May 14, 2018) ............ 35

*In re Facebook Biometric Info. Priv. Litig.*,
    326 F.R.D. 535 (N.D. Cal. 2018)......................................................... 21, 36

*In re Facebook Biometric Info. Priv. Litig.*,
    No. 15-cv-3747-JD, 2021 WL 757025 (N.D. Cal. Feb. 26, 2021) ............ 10, 17

*In re Google Buzz Priv. Litig.*,
    No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011)................. 29

*In re Google LLC Street View Elec. Commc'ns Litig.*,
    No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ........................... 1

*In re Toyota Motor Corp. Unintended Acceleration Mktg. Litig.*,
    No. 8:10ML 02151 JVS, 2013 WL 3224585 (C.D. Cal. June 17, 2013) ......................... 37

*Jackson v. Nat'l Action Fin. Servs., Inc.*,
    227 F.R.D. 284 (N.D. Ill. 2005) ...................................................................................... 21

*Lopez-McNear v. Superior Health Linens, LLC*,
    No.19-cv-2390 (N.D. Ill. Apr. 27, 2021) ........................................................................ 39

*Kaufman v. Am. Express Travel Related Servs., Co.*,
    No. 07-CV-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016) .......................................... 27

*Martinez v. Nandos Rest. Grp., Inc.*,
    No. 19-cv-07012 (N.D. Ill. Oct. 27, 2020) ..................................................................... 34

*Muir v. Nature's Bounty (DE), Inc.*,
    No. 15 C 9835, 2018 WL 3647115 (N.D. Ill. Aug. 1, 2018) .......................................... 14

*Osada v. Experian Info. Sols., Inc.*,
    290 F.R.D. 485 (N.D. Ill. 2012) ...................................................................................... 16

*Quiroz v. Revenue Prod. Mgmt., Inc.*,
    252 F.R.D. 438 (N.D. Ill. 2008) ...................................................................................... 16

*Ramirez v. GLK Foods, LLC*,
    No. 12-C-210, 2014 WL 2612065 (E.D. Wis. June 11, 2014) ....................................... 21

*Schulte v. Fifth Third Bank*,
    No. 09-CV-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) ..................................... 33

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .............................................................................. 37

*Snyder v. Ocwen Loan Servicing, LLC*,
    No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ............................. 25, 26, 33

*Starr v. Chi. Cut Steakhouse*,
    75 F. Supp. 3d 859 (N.D. Ill. 2014) ................................................................................ 16

*Thome v. NOVAtime Tech., Inc.*,
    No. 19-cv-6256 (N.D. Ill. Mar. 8, 2021) ............................................................. 2, 10, 30

*Toney v. Quality Res., Inc.*,
    323 F.R.D. 567 (N.D. Ill. 2018).............................................................. 23

*Wright v. Nationstar Mortg. LLC*,
    No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016)........................................ 32

*Young v. Rolling in the Dough, Inc.*,
    No. 17-cv-07825, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020)........................................ 32

*Ziemack v. Centel Corp.*,
    163 F.R.D. 530 (N.D. Ill. Sep. 25, 1995)........................................................ 15

## State Supreme Court Cases

*McDonald v. Symphony Bronzeville Park LLC*,
    2022 IL 126511.......................................................................... 17

*Rosenbach v. Six Flags Ent. Corp.*,
    129 N.E.3d 1197 (Ill. 2019).............................................................. 31

## State Appellate Court Cases

*Fisher v. HP Property Management, LLC, et al.*,
    2021 IL App (1st) 201372................................................................ 19

*Liu v. Four Seasons Hotel, Ltd.*,
    138 N.E.3d 201 (Ill. App. Ct.) .......................................................... 19

*Rottner v. Palm Beach Tan, Inc.*,
    2019 IL App (1st) 180691-U ............................................................ 17

*Sekura v. Krishna Schaumburg Tan, Inc.*,
    115 N.E. 3d 1080 (Ill. App. Ct.) ...................................................... 17

*Tims v. Black Horse Carriers, Inc.*,
    2021 IL App (1st) 200563.............................................................. 7, 19

## State Circuit Court Cases

*Bruhn v. New Albertson's*,
    2018-CH-01737 (Cir. Ct. Cook Cnty.) ................................................... 19

*Carroll v. Crème de la Crème, Inc.*,
    2017-CH-01624 (Cir. Ct. Cook Cnty.) .................................................. 2, 30

*Diaz v. Greencore, Inc.*,
2017-CH-13198 (Cir. Ct. Cook Cnty.) ........................................................ 8, 9

*Doporcyk v. Roundy's Supermarkets*,
2017-CH-08092 (Cir. Ct. Cook Cnty. June 9, 2017) ...................................... 19

*Kusinski v. ADP, LLC.*,
2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) ............................ 2, 10, 30

*Licata v. Facebook, Inc.*,
2015-CH-05427 (Cir. Ct. Cook Cnty. Apr. 1, 2015) ...................................... 17

*Marshall v. Lifetime Fitness, Inc.*,
2017-CH-14262 (Cir. Ct. Cook Cnty.) ...................................................... 2, 30

*Miracle-Pond v. Shutterfly*,
2019-CH-07050 (Cir. Ct. Cook Cnty. Sept. 9, 2021) ................................ 2, 30

*Prelipceanu v. Jumio Corp.*,
2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) ............................ 2, 10, 30

*Rosenbach v. Six Flags Ent. Corp.*,
2016-CH-00013 (Cir. Ct. Lake Cnty. Oct. 29, 2021) ...................................... 30

*Sekura v. L.A. Tan Enters., Inc.*,
2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) ............................ 10, 17, 39

*Svagdis v. Alro Steel Corp.*,
2017-CH-12566 (Cir. Ct. Cook Cnty.) .......................................................... 39

*Zepeda v. Intercontinental Hotels Grp., Inc.*,
2018-CH-02140 (Cir. Ct. Cook Cnty.) .......................................................... 39

## Rules and Statutory Provisions

740 ILCS 14 ................................................................................ *passim*

Fed. R. Civ. P. 23 ........................................................................ *passim*

## Miscellaneous Authority

1 NEWBERG ON CLASS ACTIONS
§ 3:56 (5th ed. 2011) ....................................................................24

2 NEWBERG ON CLASS ACTIONS
§ 4:72 (5th ed. 2011) ....................................................................22

4 NEWBERG ON CLASS ACTIONS
§ 13:1 (5th ed. 2011) ........................................................................................24

5 NEWBERG ON CLASS ACTIONS
§ 15:83 (5th ed. 2011) ..................................................................................... 39

Andrey Ficzko Attorney Profile, *Super Lawyers*, THOMSON REUTERS, available at
https://profiles.superlawyers.com/illinois/chicago/lawyer/andrew-ficzko/5838a1d0-62cb-
4a45-b0cd-1637db0cda6a.html ....................................................................... 18

Catherine Mitchell Attorney Profile, *Super Lawyers*, THOMSON REUTERS, available at
https://profiles.superlawyers.com/illinois/chicago/lawyer/catherine-mitchell/b5892544-
f7aa-4a39-9ece-9573551e9aa6.html ............................................................... 18

Ill. House Transcript, 2008 Reg. Sess. No. 276 ......................................................... 4

Diana Novak Jones, *Illinois Powerhouse: Edelson PC*,
LAW360 (October 5, 2017), https://edelson.com/wp-content/uploads/2016/05/Illinois-
Powerhouse-Edelson-PC.pdf ........................................................................18

Diana Novak Jones, *Illinois Powerhouse: Edelson PC*,
LAW360 (Aug. 28, 2018), https://www.law360.com/articles/1076447/illinois-
powerhouse-edelson-pc .................................................................................18

Grace Dixon Hanson, *Class Action Group Of The Year: Edelson*,
LAW360 (Dec. 3, 2020), https://www.law360.com/articles/1328395/class-action-group-
of-the-year-edelson ........................................................................................18

Haley R. Jenkins Attorney Profile, *Super Lawyers*, THOMSON REUTERS, available at
https://profiles.superlawyers.com/illinois/chicago/lawyer/haley-r-jenkins/17a1b0f2-33db-
4d80-8341-399802cd929d.html (last accessed Feb, 9, 2022) ...........................................19

James B. Zouras Attorney Profile, *Super Lawyers*, THOMSON REUTERS, available at
https://profiles.superlawyers.com/illinois/chicago/lawyer/james-b-zouras/3e398528-2ee7-
4c6d-bf77-ef609c8ca38d.html ........................................................................18

Joyce Hanson, *Cybersecurity & Privacy Group Of The Year: Edelson*,
LAW360 (Dec. 8, 2020), https://www.law360.com/articles/1327009/cybersecurity-
privacy-group-of-the-year-edelson ..................................................................18

Lauraann Wood, *Illinois Powerhouse: Edelson*,
LAW360 (Sept. 3, 2019),
https://www.law360.com/articles/1193728/illinois-powerhouse-edelson ........................18

*Law360 Names Practice Groups of the Year*,
LAW360 (Nov. 29, 2020), https://www.law360.com/articles/1327476/law360-names-practice-groups-of-the-year ................................................................................... 18

Matt Marshall, *Pay By Touch In Trouble, Founder Filing For Bankruptcy*,
VENTURE BEAT, available at http://goo.gl/xT8HZW ........................................................ 3

Meg Marco, *Creepy Fingerprint Pay Processing Company Shuts Down*,
CONSUMERIST, available at https://goo.gl/rKJ8oP ............................................................ 3

Ryan F. Stephan Attorney Profile, *Super Lawyer*, THOMSON REUTERS. available at
https://profiles.superlawyers.com/illinois/chicago/lawyer/ryan-f-stephan/3d2e4b09-091f-49d4-ad86-05d26528287a.html ...................................................................................... 18

Teresa M. Becvar Lawyer Profile, *Super Lawyers*, THOMSON REUTERS, available at
https://profiles.superlawyers.com/illinois/chicago/lawyer/teresa-m-becvar/7f1cfe58-fc28-4ad4-8b4c-4f9b85f43b18.html ...................................................................................... 18

## I.  INTRODUCTION

Over three years ago, Plaintiffs Charlene Figueroa and Jermaine Burton brought this case against Defendant Kronos, Inc. under the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* Plaintiffs alleged that Kronos violated BIPA by collecting the biometric data of thousands of Illinois workers through its biometric time clocks without providing them the requisite disclosures or obtaining informed written consent.[1] After intense litigation—which included substantial motion practice on the merits, extensive fact discovery (including the production of over a hundred thousand pages of documents and nine depositions), and a formal mediation with the Honorable James F. Holderman (Ret.) of JAMS in Chicago—the Parties have reached a class-wide settlement that, if approved, will provide outstanding monetary relief to the Settlement Class.[2] Kronos has agreed to pay $15,276,227 into a non-reversionary Settlement Fund to be distributed to the Settlement Class. Each Settlement Class Member who files a valid Claim Form will be entitled to a *pro rata* share of the Settlement Fund, which, assuming a claims rate of 10 to 20%, will amount to payments of approximately $290 to $580 each after costs and any fees are deducted.

Compared against other privacy cases, this Settlement provides an exceptional amount of monetary relief to Class Members. Privacy cases have frequently been settled for very little meaningful monetary relief, if any. *E.g.*, *In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No.

---

[1]  Plaintiffs and Kronos are collectively referred to as the "Parties."

[2]  The capitalized terms used in this motion are those used in the Stipulation of Class Action Settlement (the "Settlement" or "Agreement"), attached hereto as Exhibit 1.

18-cv-05982-WHA, dkts. 350, 369 (N.D. Cal. May 6, 2021 and July 13, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs). Despite the availability of statutory damages, this has happened in BIPA settlements, too. *E.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cnty. June 25, 2018) (providing only credit monitoring). Other BIPA settlements have capped monetary relief at a certain amount, with the inevitable remaining settlement funds reverting to the defendant. *E.g.*, *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cnty. July 30, 2019) ($270 per claimant with credit monitoring, reverting funds to defendant). Even compared against the better BIPA settlements of this size, involving tens of thousands of class members and establishing a non-reversionary settlement fund, this Settlement's $15,276,227 monetary relief for a Settlement Class that the Parties understand is about 171,643 people, is as good or better than its predecessors. *See, e.g.*, *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) ($7 million fund for approximately 260,000 class members); *Miracle-Pond v. Shutterfly*, 2019-CH-07050 (Cir. Ct. Cook Cnty. Sept. 9, 2021) ($6.75 million fund for potentially millions of class members); *Kusinski v. ADP, LLC.*, 2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) ($25 million fund for approximately 320,000 class members); *Thome v. NOVAtime Tech., Inc.*, No. 19-cv-6256, dkt. 90 (N.D. Ill. Mar. 8, 2021) ($4.1 million fund for 62,000 class members, and assignment of insurance policy). On top of that, Kronos—not Settlement Class Members—will bear the risk of any substantial inaccuracy in the Parties' understanding of the size of the class. If confirmatory discovery reveals that there are more Settlement Class Members than the Parties thought, then Kronos will put more money in the Settlement Fund as set forth in Section III. B. below.

Finally, on top of providing excellent monetary relief, this Settlement preserves all claims against Settlement Class Members' employers. The employers are *not* released by this Settlement, and Plaintiffs and the Class Members may still pursue their BIPA claims against them (either as part of ongoing class litigation or otherwise).

Given the relief proposed by the Settlement Agreement, the Court should not hesitate to find that the Settlement is well within the range of possible approval. Accordingly, Plaintiffs respectfully request that the Court grant their motion for preliminary approval in its entirety, certify the proposed Settlement Class, appoint their attorneys as Class Counsel, permit the confirmatory discovery as described in the Settlement Agreement, direct that the proposed Notice be disseminated to the Settlement Class, and set a Final Approval Hearing.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Illinois' Biometric Information Privacy Act

A brief history and overview of BIPA gives further context to the reasonableness of the proposed Settlement. In the early 2000s, a company called Pay By Touch began installing fingerprint-based checkout terminals at grocery stores and gas stations in major retailers throughout the State of Illinois to facilitate consumer transactions. (Complaint, ("Compl."), dkt. 1-1 ¶¶ 12.) The premise was simple: swipe your credit card and let the machine scan your index finger, and the next time you buy groceries or gas, you won't need to bring your wallet—you'll just need to provide your fingerprint. But by the end of 2007, Pay By Touch had filed for bankruptcy. (*Id.* ¶ 12–13.) When Solidus, Pay By Touch's parent company, began shopping its database of Illinois consumers' fingerprints as an asset to its creditors, a public outcry erupted.[3]

---

[3]      *See, e.g.*, Meg Marco, *Creepy Fingerprint Pay Processing Company Shuts Down*, CONSUMERIST, available at https://goo.gl/rKJ8oP (last accessed Feb. 9, 2021); Matt Marshall, *Pay By Touch In Trouble, Founder Filing For Bankruptcy*, VENTURE BEAT, available at http://goo.gl/xT8HZW (last accessed Feb. 9, 2021).

Though the bankruptcy court eventually ordered Pay By Touch to destroy its database of fingerprints (and their ties to credit card numbers), the Illinois legislature took note of the grave dangers posed by the irresponsible collection and storage of biometric data without any notice, consent, or other protections. *See* Ill. House Transcript, 2008 Reg. Sess. No. 276.

Recognizing the "very serious need" to protect Illinois citizens' biometric data—which includes retina scans, fingerprints, voiceprints, and scans of hand or face geometry—the Illinois legislature unanimously passed BIPA in 2008 to provide individuals recourse when companies fail to appropriately handle their biometric data in accordance with the statute. (*See* Compl. ¶ 14; 740 ILCS 14/5.) Thus, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . "

740 ILCS 14/15(b). BIPA also establishes standards for how companies must handle Illinois consumers' biometric data, requiring companies to develop and comply with a written policy establishing a retention schedule and guidelines for permanently destroying biometric data. 740 ILCS 14/15(a). BIPA also prohibits companies from disclosing or disseminating biometric data except with consent or under limited circumstances. 740 ILCS 14/15(d). To enforce the statute, BIPA provides a civil private right of action and allows for the recovery of statutory damages in

the amount of $1,000 for negligent violations—or $5,000 for willful violations—plus costs and

reasonable attorneys' fees. *See* 740 ILCS 14/20.

### B. Plaintiffs' Allegations and Defendant's Time Clocks

The Court has already set forth a succinct and accurate summary of the allegations in this

case in ruling on Kronos's motion to dismiss:

> Kronos is a provider of human resource management software and services. Doc.
> 1-1 at ¶ 1. As part of its business, Kronos provides timekeeping systems to
> thousands of employers in Illinois. *Ibid.* Those systems include biometric-based
> time clocks, which require employees to use their biometric information to punch
> in and out of work. *Id.* at ¶ 2.
>
> When beginning work for an employer that uses a Kronos biometric timekeeping
> device, an employee must have her fingerprint or palm print scanned to enroll in
> the Kronos database. *Id.* at ¶ 25. Kronos does not inform those employees that it is
> collecting, storing, or using their biometric data. *Id.* at ¶¶ 26-27. Nor does Kronos
> inform them of the purposes for collecting their data or to whom the data is or will
> be disclosed. *Ibid.* Kronos does not maintain retention schedules or guidelines for
> permanently destroying the data. *Id.* at ¶¶ 28, 32. Kronos has not destroyed
> biometric data when the initial purpose for obtaining it has been satisfied or within
> three years of an employee's last interaction with her employer. *Id.* at ¶ 32.
> Employees are not told whether and to whom Kronos discloses their data or what
> would happen to the data in the event of a Kronos merger or bankruptcy. *Id.* at ¶
> 33.

(Dkt. 128 at 2.) Based on the substantial discovery they obtained in this case, Plaintiffs

still believe these allegations to be accurate. Kronos, for its part, has denied any violation

of BIPA.

### C. Litigation, Negotiation, and Settlement

Plaintiffs originally filed this case against Kronos on January 18, 2019, in the Circuit

Court of Cook County, Illinois. Kronos then removed the case to this Court. Shortly thereafter,

Kronos removed another substantively identical proposed class action, led by a different plaintiff

and a different group of attorneys. Plaintiffs moved to consolidate the cases and for their counsel

to be appointed interim lead counsel on April 29, 2019. (Dkt. 42.) After briefing and argument

from the plaintiffs in both cases, the Court consolidated the cases and appointed Jay Edelson of

Edelson PC and James B. Zouras of Stephan Zouras LLP as interim class counsel. (Dkt. 94.)

While the consolidation proceedings were pending, Plaintiffs moved forward on the

merits. On April 15, 2019, Defendant filed a motion to dismiss the complaint for failure to state a

claim and a simultaneous motion to strike Plaintiffs' class allegations. (Dkts. 29, 30, 32, 33.)

After full briefing, (dkts. 50, 51, 62, 63), the Court denied both motions in full on April 13, 2020.

(Dkt. 128.) The Court requested supplemental briefing on Plaintiffs' standing to bring their

claims under 740 ILCS 14/15(a) at the same time, which the Parties simultaneously submitted on

May 19, 2020. (Dkts. 137, 138.) The Court ultimately severed Plaintiffs' section 15(a) claims

and remanded that portion of the case to state court. (Dkt. 150.) After the Seventh Circuit's

decision in *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146 (7th Cir. 2020), Kronos re-

removed the remanded portion of the case, which was then re-consolidated. (Dkt. 179.)

Kronos answered on May 12, 2020, and asserted 13 affirmative defenses. (Dkt. 136.)

Following Kronos's answer, Plaintiffs engaged in written discovery and sought the Court's

intervention on several discovery disputes. Kronos also sought discovery from the putative class,

which Plaintiffs contested. Kronos moved to compel this discovery (dkt. 173), which was denied

without prejudice to Kronos issuing subpoenas. (Dkt. 179.) Kronos then issued more than sixty

subpoenas to members of the absent class, upon which Plaintiffs moved for a protective order

and absent members of the class moved to quash. (Dkt. 234.) Kronos meanwhile filed another

motion to compel (dkt. 259), and moved the Court for leave to issue additional interrogatories.

(Dkt. 261.) Each of these motions was fully briefed. (Dkts. 265, 266, 269, 270, 271.)

Plaintiffs argued that Kronos's additional discovery efforts—both on Plaintiffs and the

putative class—were predicated on defective affirmative defenses. Plaintiffs accordingly moved

to strike Kronos's equitable and implied consent defenses. (Dkt. 267.) The motion to strike was fully briefed (dkts. 273, 274), and the Court granted the motion without prejudice to Kronos's re-pleading its defenses. (Dkt. 276). Kronos filed a second amended answer on April 7, 2021. (Dkt. 278.) Plaintiffs also moved to strike Kronos's affirmative defenses as amended. (Dkt. 285.) This motion was fully briefed (dkts. 294, 298), and argued at a hearing on June 29, 2021 (dkt. 299). The Court ultimately denied the motion to strike on July 20, 2021, but reserved ruling on the key legal questions. (Dkt. 307.)

During the same time period, Kronos moved to stay the case pending the Seventh Circuit's ruling on *Cothron v. White Castle System, Inc.*, No. 20-3202 (7th Cir.) and the Illinois Appellate Court's decision in *Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563. (Dkt. 279.) Plaintiffs opposed, and this, too, was fully briefed. (Dkts. 283, 284.) The Court denied the motion to stay after a hearing on April 29, 2021. (Dkt. 288.) The Court then granted in part and denied in part the pending discovery motions concerning the subpoenas to the absent class. (Dkt. 323.)

By the time this settlement was reached. Kronos had produced over 100,000 pages of documents, and Plaintiffs had taken a total of seven depositions of current and former Kronos employees ranging from product managers to senior directors of the company. Kronos also deposed Plaintiffs themselves.

Amid the discovery and motion practice, the Parties agreed that a mediation would be productive. The Parties asked the Court to stay its ruling on the pending discovery motions in light of the forthcoming mediation, which the Court granted. (Dkt. 314, 319.) The Parties participated in a full-day mediation with Judge James F. Holderman (Ret.) of JAMS on August 31, 2021. That mediation was productive but ultimately not successful. The Parties then

continued litigating the case, including conducting one of Kronos's depositions. However, they continued to consider the possibility of settlement, including by exchanging a number of drafts of a binding Memorandum of Understanding and engaging in several telephone and Zoom conferences beginning in mid-September and through mid-October. Ultimately, after dozens of e-mails, phone calls, and numerous edits on the draft, the Parties executed a binding Memorandum of Understanding late in the evening on October 20, 2021. They executed a final settlement agreement in late January 2022, for which they now seek the Court's approval.

## III.    TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth in the Stipulation of Class Action Settlement, and are briefly summarized here:

### A.    Class Definition

The proposed Settlement Class includes all persons who used a Kronos brand time clock with a finger sensor attachment for timekeeping purposes in Illinois and whose finger-scan data was hosted by Kronos between January 18, 2014, and thirty days after the date the Court enters the Preliminary Approval Order. (Agreement § 1.32.) Excluded from the Settlement Class are: (1) any Judge or Magistrate presiding over this action and members of their families, (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, (3) persons who properly execute and file a timely request for exclusion from the class, (4) the legal representatives, successors or assigns of any such excluded persons, (5) individuals who only scanned at (i) a State or local government agency; (ii) a banking institution subject to Title V of the federal Gramm-Leach Bliley Act of 1999; or (iii) a court of Illinois, a clerk of the court, or any judge or justice thereof, and (6) persons who were members of the settlement class in the *Diaz v. Greencore, Inc.*, 2017-

CH-13198 (Cir. Ct. Cook Cnty.) and *Dixon v. Washington Jane Smith Home*, No. 17-cv-8033 (N.D. Ill.) settlements. (*Id.*)[4]

### B. Settlement Payments

The Settlement provides that Kronos will establish a non-reversionary Settlement Fund of no less than $15,276,227, from which each Settlement Class Member who submits a valid claim will be entitled to a *pro rata* portion after payment of Settlement Administration Expenses, attorneys' fees and costs, and any incentive award, if approved by the Court. (*Id.* §§ 1.35, 2.1.)

The Parties reached the $15,276,227 figure based on Kronos's good-faith representation that there are approximately 171,643 Settlement Class Members. To verify the number of Settlement Class Members and provide the best notice practicable, the Parties will engage in confirmatory discovery after the Court grants preliminary approval. (Agreement § 7.2.) If Kronos's representation is accurate, as the Parties believe that it is, then the fund will remain $15,276,227. (*Id.* § 7.3.) However, if confirmatory discovery shows that Kronos's representation is more than five percent below the actual figure, then the fund will be recalculated as $89 per Settlement Class Member (resulting in a proportionally larger fund). If confirmatory discovery shows a major discrepancy—that there are more than 200,000 people in the Settlement Class—then the Parties will go back to mediation, and the agreement is voidable at the option of either party. (*Id.*) Plaintiffs will retain the unilateral option to accept the Settlement at the amount that would be paid for 200,000 Settlement Class Members, i.e., $17,800,000. (*Id.*)

---

[4] Class Counsel has, consistently from the start of the case, prosecuted this action on behalf of individuals who had their finger-scan data put in Kronos Cloud. The Settlement Class definition set forth above reflects this. Class Counsel sees no viable legal theory against Kronos on behalf of individuals who encountered Kronos timeclocks but whose information was never uploaded to Kronos Cloud.

Based on claims rates in similar BIPA class settlements, which typically range between 10-20%,[5] Class Counsel estimate that each Class Member who submits an Approved Claim will receive a net Settlement Payment of approximately $290 to $580. Any uncashed checks or electronic payments unable to be processed within 120 days of issuance will, subject to Court approval, be provided as *cy pres* to Legal Aid Chicago (earmarked for workers' rights representation) and the American Civil Liberties Union of Illinois (earmarked to support its Government Accountability and Personal Privacy efforts, which advocates to protect Illinoisans' privacy rights) or other appropriate entity agreed upon by the Parties and approved by the Court. (*Id.* § 2.1(f).) No portion of the Settlement Fund will revert back to Kronos. (*Id.* § 1.35.)

### C. Prospective Relief

Kronos has also agreed to implement prospective measures related to the finger-scan time clocks it provides to Illinois Kronos Cloud Customers. Specifically, Kronos will notify its Illinois customers who send finger-scan data to its cloud platform that they are required to: (1) establish a retention and destruction schedule that complies with BIPA and follow that schedule with timely data deletion; (2) notify the subjects of collection, in writing, that finger-sensor data, which may be considered biometric information under BIPA, is being collected, stored, used, and disclosed by the Illinois Kronos Cloud Customer and/or Kronos; (3) notify the subjects of collection in writing of the purposes and length of term that finger-sensor data is being collected, stored, used and disclosed; and (4) obtain a written release to the collection, storage, use, and

---

[5]      *See In re Facebook Biometric Info. Priv. Litig.*, No. 15-cv-3747-JD, 2021 WL 757025, at *1 (N.D. Cal. Feb. 26, 2021) (22% claims rate, class size of 6.9 million); *Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (15% claims rate, class size of 37,822); *Kusinski*, 2017-CH-12364 (13% claims rate, class size of 320,000); *Thome*, No. 19-cv-6256, dkt. 90 (10% claims rate, class size of 62,000); *Prelipceanu*, 2018-CH-15883 (5% claims rate, class size of 260,000).

disclosure by the Illinois Kronos Cloud Customer and by Kronos. (Agreement § 2.2.) These measures will be in place by no later than the Effective Date of the Settlement. (*Id.*)

### D. Payment of Settlement Notice and Administrative Costs

Settlement notice and administrative costs, including the costs of providing Notice, creating and maintaining the Settlement Website, receiving and processing Claim Forms, dispersing Settlement Payments, related tax expenses, fees of the escrow agent, and other such related expenses, will be paid from the Settlement Fund. (*Id.* § 1.30.)

### E. Payment of Attorneys' Fees, Costs, and Incentive Awards

Defendant has agreed that Class Counsel are entitled to reasonable attorneys' fees in an amount to be determined by the Court by petition. (*Id.* § 8.1.) Proposed Class Counsel has agreed to limit its request for fees to 33% of the Settlement Fund, with no consideration from Defendant and no "clear-sailing agreement," so Defendant may challenge the amount requested. (*Id.*) Defendant has also agreed to pay Plaintiffs an incentive award in the amount of $7,500 each from the Settlement Fund, subject to Court approval, in recognition of their efforts as Class Representatives. (*Id.* § 8.2.) Plaintiffs will move for these payments via a separate request after preliminary approval.

### F. Release of Liability

In exchange for the relief described above, the Settlement Class Members will release Kronos and related entities from any and all past and present claims or causes of action related to BIPA, including, but not limited to, any claims arising out of BIPA, tort or privacy claims, or any other federal, state, or local statute, regulation, or common law, arising out of or related to the alleged possession, collection, capture, purchase, receipt through trade, obtaining, sale, lease, trade, profit from, disclosure, re-disclosure, dissemination, storage, transmittal, and/or protection

from disclosure of alleged biometric information or biometric identifiers. (*Id.* §§ 1.26, 1.27, 3.1.) The release specifically *excludes* Kronos's customers, such as the Illinois employers where Settlement Class Members used finger-scan time clocks. (*Id.* § 1.27.)

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Before the Court can preliminarily approve the proposed Settlement and direct notice to the Settlement Class, it must certify the class for settlement purposes, which requires a finding that the Court "will likely be able to certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). District courts are given broad discretion to determine whether class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

To merit certification, the Settlement Class must first satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, because the Settlement releases claims for money damages, the Settlement Class must also satisfy the requirements of Rule 23(b)(3): that (i) common questions of law or fact predominate over individual issues and (ii) a class action is the superior device to resolve the claims. *Amchem*, 521 U.S. at 615–16. Finally, a certified class must be ascertainable; that is, "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). As explained below, the proposed Settlement Class satisfies all the Rule 23(a) and 23(b)(3) prerequisites and is ascertainable, and thus, should be certified for settlement purposes.

## A.    The Numerosity Requirement is Satisfied.

A class action may proceed when the proposed class "is so numerous that joinder of all members is impracticable." Fed R. Civ. P. 23(a)(1). "A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), and the court may make common sense assumptions to determine numerosity." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (citing collected Seventh Circuit cases). While there is no magic number at which joinder becomes unmanageable, courts have typically found that numerosity is satisfied when the class comprises 40 or more people. *See*, *e.g.*, *id.* (certifying a class of 120 members). Here, the Settlement Class includes well over 100,000 members, and the numerosity requirement is easily met.

## B.    Common Issues of Fact and Law Predominate.

Rule 23(a)(2) instructs that a class may be certified only if there exist "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Where, as here, the class seeks monetary relief, the common questions must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). *See also Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("[T]he question of commonality and predominance overlap in ways that make them difficult to analyze separately."). Common questions are those "capable of class-wide resolution" such "that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id.* (citing *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011)). "What matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotations omitted). As such, "the critical point is the need for *conduct* common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)

13

(internal quotations omitted). When "the defendant's allegedly injurious conduct differs from plaintiff to plaintiff . . . no common answers are likely to be found." *Id.* But when "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members," class treatment is appropriate. *Id.*

Here, common issues of law and fact certainly predominate. Plaintiffs' and the proposed Settlement Class's claims are based upon the same common contention and course of alleged conduct by Kronos: that it allegedly violated BIPA by collecting, storing, and disclosing the Settlement Class's biometric data without obtaining informed written consent or establishing and abiding by a publicly-available retention policy. *See Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 779 (N.D. Ill. 2020). Further, it is alleged to have done so in the same manner for every member of the class—by collecting finger-scan data from time clocks installed by certain of its customers at the Class Members' workplaces, using Kronos software and storing that data on its own servers. *Id.* The core factual and legal issues in this lawsuit are therefore common ones.

Because answering each of these questions would resolve all Class Members' claims in one stroke, and no individualized issues (to the extent there are any) could defeat this overwhelming commonality, predominance is satisfied. *See Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at *9 (N.D. Ill. Aug. 1, 2018) (predominance requires that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating individual issues.") (internal quotations omitted).

C. **The Typicality Requirement is Satisfied.**

The next prerequisite—typicality—requires that a class representative has claims that are typical of those of the putative class members. Typicality examines whether there is "enough congruence between the named representative's claim and that of the unnamed members of the

14

class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). Where a named plaintiff's claim "arise[s] from the same events or course of conduct that gives rise to the putative class members' claims," typicality is satisfied. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). In other words, when the basis of the suit is the defendant's systematic business practices toward the named plaintiff and the members of the proposed class, typicality is generally satisfied.

Here, there is nothing separating Plaintiffs' BIPA claim from that of any other member of the Settlement Class. Like the rest of the Settlement Class members, they enrolled their fingers on Kronos time clocks at work and scanned their fingers on the same clocks to record their work time, causing their finger-scan data to be sent to Kronos's servers. *Figueroa*, 454 F. Supp. 3d at 779. And as with the rest of the Settlement Class members, Kronos did not obtain a written release from Plaintiffs before collecting and storing their finger-scan data. *Id.* And while Kronos has insisted during this litigation that some other type of consent might be sufficient, (*see* dkt. 307 at 2), Plaintiffs are not aware of evidence that any other Settlement Class member provided such consent. In other words, Plaintiffs were subject to the same conduct and practices by Kronos as everyone else, and their claims will "stand or fall on the same facts" as everyone else's claims. *Ziemack v. Centel Corp.*, 163 F.R.D. 530, 534 (N.D. Ill. Sep. 25, 1995). Typicality is therefore satisfied.

### D. The Adequacy Requirement is Satisfied.

The final Rule 23(a) prerequisite—adequacy—requires a finding that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is twofold: "adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s]

of the class members." *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014)

(quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584 (7th Cir. 1993)). To assess

adequacy, courts examine whether "the named plaintiff has [(1)] antagonistic or conflicting

claims with other members of the class; or (2) has a sufficient interest in the outcome of the case

to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and

able to vigorously conduct the litigation." *Osada v. Experian Info. Sols., Inc.*, 290 F.R.D. 485,

490 (N.D. Ill. 2012) (quoting *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D.

Ill. 2008)) (quotation marks omitted).

Here, both Plaintiffs and proposed Class Counsel have and will continue to adequately

represent the Settlement Class. Because Plaintiffs suffered the same alleged injury as every other

member of the Settlement Class—the collection, storage, and disclosure of their biometric data

without their informed written consent during the class period—their interest in redressing

Kronos's alleged violations of BIPA is identical to the interests of all other members of the

Settlement Class. And like many other members of the Settlement Class, Plaintiffs are involved

in concurrent litigation against their current or former employers, which claims they are not

releasing. Thus, Plaintiffs do not have any interests antagonistic to those of the Settlement Class.

Consequently, Plaintiffs' interests are entirely representative of and consistent with the interests

of the Settlement Class.

As far as Class Counsel is concerned, the Court has already determined that Edelson PC

and Stephan Zouras LLP were well-qualified to lead this action as interim class counsel. (Dkt. 95

at 1) ("The *Figueroa* counsel group … have the experience required by Rules 23(g)(1)(A) and

(g)(4) to serve as adequate class counsel."). Nothing has changed since then. Edelson PC has

extensive experience in litigating class actions of similar size, scope, and complexity to the

16

instant action and is a national leader in high stakes' plaintiffs' work ranging from class and mass actions to public client investigations and prosecutions. (*See* Firm Resume of Edelson PC, attached as Exhibit 2-A to the Declaration of J. Eli Wade-Scott, ("Wade-Scott Decl."), attached as Exhibit 2.) The firm holds records for the largest jury verdict in a privacy case ($925 million), the largest consumer privacy settlement ($650 million), and the largest Telephone Consumer Protection Act ("TCPA") settlement ($76 million). (*Id.*) The firm filed the first-ever class action under BIPA against Facebook, *Licata v. Facebook, Inc.*, No. 2015-CH-05427 (Cir. Ct. Cook Cnty. Apr. 1, 2015), secured the first-ever adversarially-certified BIPA class in that case and defended the ruling in the Ninth Circuit, *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019) (upholding adversarial BIPA class certification), *cert. denied* 140 S. Ct. 937 (2020), and obtained final approval of a settlement agreement with Facebook to resolve the case for $650 million. *In re Facebook Biometric Info. Priv. Litig.*, 2021 WL 757025, at *1 ("Overall, the settlement is a major win for consumers in the hotly contested area of digital privacy."). The firm is responsible for the first-ever BIPA settlement, too, *see Sekura*, 2015-CH-16694, and has paved the way to many of the favorable appellate decisions for BIPA plaintiffs. *Sekura v. Krishna Schaumburg Tan, Inc.*, 115 N.E. 3d 1080, 1098 (Ill. App. Ct.) (pre-*Rosenbach* opinion creating district-split, holding violation of statute sufficient for plaintiff to be "aggrieved"); *Rottner v. Palm Beach Tan, Inc.*, 2019 IL App (1st) 180691-U (violation of statute sufficient to claim liquidated damages); *McDonald v. Symphony Bronzeville Park LLC*, 2022 IL 126511 (holding that the exclusivity provisions of the Illinois Workers' Compensation Act ("IWCA") do not bar employee BIPA claims against employers); *Sosa v. Onfido, Inc.*, 8 F.4th 631 (7th Cir. 2021) (affirming district court's denial of motion to compel arbitration).

The firm was recognized by Law360 as a "Practice Group of the Year" for 2020 in two

categories—Class Action and Cybersecurity[6]—and for three years running as an "Illinois Powerhouse," alongside Kirkland & Ellis, Sidley Austin, Mayer Brown, Dentons, and Jenner & Block.[7] Edelson PC has been the only plaintiffs' firm, as well the only firm with fewer than 100 attorneys, to make the latter list. Proposed Class Counsel Edelson PC has diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency. (Wade-Scott Decl. ¶ 2.)

Proposed Class Counsel Stephan Zouras LLP is a premier plaintiffs-side employment and class action firm whose founders and partners have been consistently recognized as Illinois "Super Lawyers."[8] For over 13 years, Stephan Zouras, LLP has litigated almost exclusively on

---

[6]    *Law360 Names Practice Groups of the Year*, LAW360 (Nov. 29, 2020), https://www.law360.com/articles/1327476/law360-names-practice-groups-of-the-year; Grace Dixon Hanson, *Class Action Group Of The Year: Edelson*, LAW360 (Dec. 3, 2020), https://www.law360.com/articles/1328395/class-action-group-of-the-year-edelson; Joyce Hanson, *Cybersecurity & Privacy Group Of The Year: Edelson*, LAW360 (Dec. 8, 2020), https://www.law360.com/articles/1327009/cybersecurity-privacy-group-of-the-year-edelson.

[7]    Lauraann Wood, *Illinois Powerhouse: Edelson*, LAW360 (Sept. 3, 2019), https://www.law360.com/articles/1193728/illinois-powerhouse-edelson; Diana Novak Jones, *Illinois Powerhouse: Edelson PC*, LAW360 (Aug. 28, 2018), https://www.law360.com/articles/1076447/illinois-powerhouse-edelson-pc; Diana Novak Jones, *Illinois Powerhouse: Edelson PC*, LAW360 (October 5, 2017), https://edelson.com/wp-content/uploads/2016/05/Illinois-Powerhouse-Edelson-PC.pdf.

[8]    *See* James B. Zouras Attorney Profile, *Super Lawyers*, THOMSON REUTERS, available at https://profiles.superlawyers.com/illinois/chicago/lawyer/james-b-zouras/3e398528-2ee7-4c6d-bf77-ef609c8ca38d.html (last accessed Feb. 9, 2022),
Ryan F. Stephan Attorney Profile, *Super Lawyers*, THOMSON REUTERS, available at https://profiles.superlawyers.com/illinois/chicago/lawyer/ryan-f-stephan/3d2e4b09-091f-49d4-ad86-05d26528287a.html (last accessed Feb. 9, 2022),
Andrey Ficzko Attorney Profile, *Super Lawyers*, THOMSON REUTERS, available at https://profiles.superlawyers.com/illinois/chicago/lawyer/andrew-ficzko/5838a1d0-62cb-4a45-b0cd-1637db0cda6a.html (last accessed Feb. 9, 2022),
Teresa M. Becvar Lawyer Profile, *Super Lawyers*, THOMSON REUTERS, available at https://profiles.superlawyers.com/illinois/chicago/lawyer/teresa-m-becvar/7f1cfe58-fc28-4ad4-8b4c-4f9b85f43b18.html (last accessed Feb. 9, 2022),
Catherine Mitchell Attorney Profile, *Super Lawyers*, THOMSON REUTERS, available at https://profiles.superlawyers.com/illinois/chicago/lawyer/catherine-mitchell/b5892544-f7aa-4a39-9ece-9573551e9aa6.html (last accessed Feb. 9, 2022),

behalf of employees in class and collective action litigation across the United States. Given their extensive history of successfully advocating for employee rights, Stephan Zouras LLP was one of the first firms to realize that Illinois employers were violating BIPA and filed the first case against an employer under the statute alleging violations of BIPA through the use of biometric timeclocks. *Doporcyk v. Roundy's Supermarkets*, 2017-CH-08092 (Cir. Ct. Cook Cnty. June 9, 2017). Since then, the firm has secured several favorable rulings for employees at both the appellate and trial court levels in connection with novel issues and defenses asserted under BIPA, including that BIPA claims are not subject to arbitration as "wage and hour" claims, *Liu v. Four Seasons Hotel, Ltd.*, 138 N.E.3d 201, 207 (Ill. App. 2019), the Constitutionality of BIPA, *Bruhn v. New Albertson's*, 2018-CH-01737 (Cir. Ct. Cook Cnty. Jan. 30, 2020) (J. Loftus), the inapplicability of BIPA's "HIPAA exemption" to employees, *e.g.*, *Bruhn v. New Albertson's Inc., et al.*, 2018-CH-01737 (Cir. Ct. Cook Cnty. July 2, 2019) (J. Loftus); when BIPA claims accrue, specifically, that an aggrieved plaintiff's claims accrue each time an entity collects or disseminates biometric information without securing prior informed consent and a release, *Cothron v. White Castle System, Inc.*, 477 F. Supp. 3d 723 (N.D. Ill. 2020) (J. Tharp); that claims under Sections 15(a) and (b) of BIPA are subject to a five-year statute of limitations, *Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563; and, most recently, that Illinois courts have personal jurisdiction over non-resident defendants that manufacture biometric devices, *Fisher v. HP Property Management, LLC, et al.*, 2021 IL App (1st) 201372.

Stephan Zouras, LLP has recovered over $250 million for workers nationwide and has successfully prosecuted hundreds of class and collective actions in state and federal courts.

---

Haley R. Jenkins Attorney Profile, *Super Lawyers*, THOMSON REUTERS, available at https://profiles.superlawyers.com/illinois/chicago/lawyer/haley-r-jenkins/17a1b0f2-33db-4d80-8341-399802cd929d.html (last accessed Feb. 9, 2022).

Stephan Zouras has also been at the forefront of BIPA settlements and has helped resolve dozens of BIPA class action cases, recovering well into the eight figures for aggrieved Illinois workers and citizens.

Stephan Zouras attorneys—whose experience include testifying before legislative committees on issues relating to employee rights—uniquely understand the challenges faced by workers, which is a meaningful benefit in representing those whose biometrics were obtained without consent or the protections provided by BIPA. The firm's accomplishments (both in and outside of BIPA) are further detailed in the firm's resume, attached as Exhibit 3-A to the Declaration of Ryan F. Stephan. Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency. (Declaration of Ryan F. Stephan ("Stephan Decl."), attached hereto as Exhibit 3, ¶¶ 12-14.)

Accordingly, because Plaintiffs will fairly and adequately protect the interests of the Settlement Class, and because they and the Settlement Class are amply represented by qualified counsel, the adequacy requirement is satisfied.

### E. A Class Action is a Superior Method of Resolving the Controversy.

Rule 23(b)(3) additionally requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule sets forth four criteria germane to this requirement. All counsel in favor of certification.

The first factor, individual class members' interest in individually controlling the action, Fed. R. Civ. P. 23(b)(3)(A), weighs in favor of certification. All known actions against Kronos regarding this conduct were brought as class actions and consolidated before this Court. While BIPA provides for statutory damages, the relatively modest recovery ($1,000 or $5,000,

depending on whether a violation is negligent or reckless), compared to the high costs of retaining adequate counsel "is not likely to provide sufficient incentive for members of the proposed class to bring their own claims." *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) (discussing the FDCPA's $1,000 statutory damages provision); *see also In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018) ("While not trivial, BIPA's statutory damages are not enough to incentivize individual plaintiffs given the high costs of pursuing discovery on Facebook's software and code base and Facebook's willingness to litigate the case.").

The second factor, the extent and nature of other proceedings, Fed. R. Civ. P. 23(b)(3)(B), also weighs in favor of certification. There are no other known actions that have progressed to any extent addressing the conduct alleged here. Thus, "'the extent and nature of any litigation concerning the controversy already begun by or against class members' is not a factor" counseling against certification. *Bernal v. NRA Group, LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016) (quoting Fed. R. Civ. P. 23(b)(3)(B)).

Third, it is desirable to concentrate the litigation—and to undergo the settlement approval process—in this forum, *see* Fed. R. Civ. P. 23(b)(3)(C), given that this case concerns a proposed class of plaintiffs who scanned their fingers while working for employers throughout Illinois. *Barnes*, 310 F.R.D. at 562 (third factor met where defendant conducted business and the events giving rise to plaintiffs' claims occurred within the court's district); *Ramirez v. GLK Foods, LLC*, No. 12-C-210, 2014 WL 2612065, at *9 (E.D. Wis. June 11, 2014) (events in forum giving rise to lawsuit support concentration in the forum).

Finally, the fourth factor—"the likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D)—also weighs in favor of certification, as no management problems ought to

arise here. There is clear predominance of common issues, as explained above, and with some effort by the Parties, all of the Settlement Class members will be identified. *Bernal*, 318 F.R.D. at 76; 2 NEWBERG ON CLASS ACTIONS § 4:72 (5th ed. 2011) ("Courts generally hold that if the predominance requirement is met, then the manageability requirement is met as well."). Thus, consolidating Class Members' claims in one proceeding will generate economies of time and expense and promote legal uniformity.

More generally, Rule 23's superiority standard requires that the court recognize "the costs *and benefits* of the class device." *Mullins*, 795 F.3d at 663 (emphasis in original). Here, requiring individual cases "would make no sense," because "each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases for recovery." *Bernal*, 318 F.R.D. at 76. The class action device, on the other hand, allows the Court to swiftly evaluate common issues surrounding Kronos's alleged violations of BIPA in a single proceeding, generating a uniform result that will apply to all similarly situated persons. *Suchanek*, 764 F.3d at 759 (stating that "promot[ing] uniformity of decision as to persons similarly situated" is a goal of class actions) (quoting *Amchem*, 521 U.S. at 615). Without class-wide adjudication of these claims, tens (if not hundreds) of thousands of employees would have to sue one-by-one to recover on these relatively modest individual claims. *See* 740 ILCS 14/20(1). The cost of litigating BIPA claims on an individual basis—including the cost of discovery, motion practice, biometric data experts, and trial—would be prohibitively expensive. Moreover, such individual claims would clog the courts with an influx of separate actions, further delaying the possibility of relief. Rule 23's superiority requirement is therefore satisfied.

### F. The Class Is Ascertainable.

Finally, the proposed Settlement Class definition meets Rule 23's implicit requirement of "ascertainability," which "requires that a class . . . be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. "Whether a class is ascertainable depends on 'the adequacy of the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class,'" although Plaintiffs here would meet both standards. *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 581 (N.D. Ill. 2018) (citing *Mullins*, 795 F.3d at 658).

Here, the Settlement Class definition is based solely on objective criteria: whether the individual used a Kronos time clock with finger sensor attached in Illinois and their finger-scan data was hosted by Kronos during the relevant time period.[9] (Agreement § 1.32.) Moreover, Settlement Class members will be readily identified through information that Kronos either already has or that the Parties will obtain during the confirmatory discovery that the Settlement Agreement expressly provides for. (*See id.* § 7.2(c).) Because the class is "defined clearly [and] membership [is] defined by objective criteria," it is ascertainable. *Mullins*, 795 F.3d at 657.

For these reasons, maintenance of this action as a class action is appropriate. The Court should therefore certify the Settlement Class for settlement purposes.

## V. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [with the] ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

---

[9] The class period ends 30 days after the Court enters the Preliminary Approval Order in order to provide relief to the most class members possible while at the same time making it possible to conduct the required confirmatory discovery. If the number of class members has grown in any significant manner between the time the settlement was agreed to and 30 days after the entry of the Court's Preliminary Approval Order, then the size of the Settlement Fund will be increased to compensate. (Agreement § 8.3.)

In making this determination, the Court considers proposed Class Counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed above,[10] proposed Class Counsel have extensive experience in litigating consumer privacy class actions in general, and BIPA class actions specifically; have thoroughly investigated the claims at issue; and have the resources necessary to conduct this litigation. (*See* Wade-Scott Decl. ¶ 2.) And because of their efforts here, proposed Class Counsel have secured a Settlement that provides excellent monetary relief and the prospective relief necessary to protect the privacy interests of Settlement Class Members. Thus, the Court should appoint Jay Edelson and J. Eli Wade-Scott of Edelson PC and Ryan F. Stephan and James B. Zouras of Stephan Zouras, LLP as Class Counsel.

## VI. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval of all proposed class action settlements. The procedure for review of a proposed class action settlement is a familiar two-step process— preliminary and final approval—which was codified under Rule 23(e) relatively recently. Fed. R. Civ. P. 23(e)(1)-(2) (eff. Dec. 1, 2018); *see* 4 NEWBERG ON CLASS ACTIONS § 13:1 (5th ed. 2011). The first step—preliminary approval—is a pre-notification inquiry to determine whether the court "will likely be able to approve the proposal under Rule 23(e)(2)," finding that it is sufficiently fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(B). In other words, at this

---

[10]     Courts frequently analyze counsel's adequacy under both 23(a)(4) and 23(g), which is why it is discussed twice here. 1 NEWBERG ON CLASS ACTIONS § 3:56 (5th ed. 2011); *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592–93 (7th Cir. 2011), *as modified* (Sept. 22, 2011) (reviewing counsel's adequacy under Rule 23(a)(4) but mentioning the Rule 23(g) factors in its analysis).

stage, the Court needs to determine whether the proposed settlement is "within the range of possible approval" such that there is "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 & n.3 (7th Cir. 1982). Once preliminary approval is granted, class members are notified of the settlement, and the court and parties proceed to the second step: the final fairness determination. *Id.* at 621.

While "[f]ederal courts naturally favor the settlement of class action litigation," a multi-factor test must be used to determine whether the proposed settlement is likely to be found fair, reasonable, and adequate. *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)) (internal quotations omitted). Rule 23(e)(2) directs courts to consider whether: (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's-length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see*, *e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).[11]

---

[11]     Notably, the factors to be considered under the amended Rule 23 "overlap with the factors previously articulated by the Seventh Circuit, which include: (1) the strength of the plaintiff's case compared to the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings and the amount of discovery completed." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *2 (S.D. Ill. Dec. 16, 2018) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)); *see also* Fed. R. Civ. P. 23, Advisory Committee's Note to 2018 Amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). For this reason, decisions prior to the amendment can still provide guidance to the Court.

The proposed settlement here, which will be no less than $15,276,227, will provide outstanding monetary and prospective relief to Settlement Class Members without releasing any claims they may have against their employers. It should be approved.

### A. Plaintiffs and Proposed Class Counsel Have Adequately Represented the Settlement Class.

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). The focus of this analysis is "on the actual performance of counsel acting on behalf of the class" throughout the litigation and in settlement negotiations. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment; *see Gumm v. Ford*, No. 5:15-cv-41-MTT, 2019 WL 479506, at *3 (M.D. Ga. Jan. 17, 2019). In considering this factor, courts are to examine whether the plaintiffs and class counsel had adequate information to negotiate a class-wide settlement, taking into account (i) the nature and amount of discovery completed, whether formally or informally, and (ii) the "actual outcomes" of other, similar cases. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment. Ultimately, this factor is generally satisfied where the named plaintiffs participated in the case diligently, and where class counsel fought hard on behalf of plaintiffs and the class throughout the litigation. *See Snyder*, 2019 WL 2103379, at *4.

Here, Plaintiffs have been involved in nearly every aspect of this case, including by helping their attorneys investigate their BIPA claims, assisting in responding to substantial written discovery, sitting for full-day depositions, conferring with counsel throughout the litigation, and reviewing and approving the Settlement Agreement before signing it. (Wade-Scott Decl. ¶ 5.) Without Plaintiffs stepping up to represent the class and taking on these tasks, the relief secured for the Settlement Class wouldn't have been possible. Given their efforts and

aligned interest with the class, there can be no doubt that Plaintiffs have only acted in the best interest of the Settlement Class and has adequately represented them.

Likewise, proposed Class Counsel's performance in this case demonstrates that their representation has been beyond adequate, especially when considering (i) the amount and quality of discovery conducted and (ii) the benefits of the Settlement compared to similar privacy settlements, including those under BIPA. By the time settlement discussions came about, the considerable amount of written and oral discovery completed by Plaintiffs' counsel ensured that they had adequate information to assess the strength of the case and negotiate a fair deal. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the court and parties have enough information "to evaluate the merits of this case"). In addition to written discovery, Plaintiffs took seven depositions of current and former Kronos employees: manager of product management Connor Jarvis, master architect Umesh Gandhi, senior director Jigney Shah, manager of product support David Vo, healthcare area vice-president Lawrence Florio, account executive James Puccini, and product manager Meghan McCaffrey. Each of those deponents provided crucial testimony about the marketing, functionality, or deployment of the time clocks at issue in this case. In short, the issues in this litigation have crystallized sufficiently for Plaintiffs and their counsel to assess the strengths and weaknesses of their negotiating position (based upon the litigation to date, the anticipated outcomes of further fact discovery and expert discovery, and additional motion practice) and evaluate the appropriateness of any proposed resolution. *See Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at *10 (N.D. Ill. Mar. 2, 2016) (concluding that "extensive formal discovery, when measured against the cost that would be

27

incurred," would not place the parties in a better position than they are now to determine an appropriate settlement value).

However, Plaintiffs understood that there was one issue on which they needed additional information: the size of the class and class member contact information. During settlement negotiations, Kronos raised their belief that some of the information required to arrive at an exact class size number belongs to their clients. Kronos still provided a representation of the class size along with an explanation as to how they arrived at that number, and Plaintiffs' counsel has no reason to believe that this representation was provided in anything other than absolute good faith. Very likely, the Court could simply have approved the settlement relying on Kronos's representation to define the class size. *See, e.g.*, *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 287 (7th Cir. 2017) (affirming approval of settlement where class size had an "estimated range of 17.7 to 36.9 million people"); *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 786 n.3 (N.D. Ill. 2015) (approving settlement where "[t]he parties estimate that approximately 5% of the settlement class is unknown to [Defendant] or Plaintiff").[12]

Instead, Plaintiffs and their counsel have insisted on additional steps to protect the class's interests. Specifically, they will engage in substantial confirmatory discovery to ensure that Kronos's representation of the class size is accurate, including both informal outreach by Kronos to its customers, and, if necessary, compelled responses from those customers by way of subpoena. If it turns out that Kronos's representation as to the class size was correct or too low, nothing will change. But if the Settlement Class is more than five percent larger than the Parties believe, the fund will increase to ensure that Settlement Class Members are compensated as the

---

[12]     Kronos's ability to access such data is a major merits issue in the case, making Kronos's reluctance to demonstrate the full extent of that ability during settlement negotiations understandable.

Parties intend them to be. If the confirmatory discovery reveals that this case is, for some reason, much larger than the Parties thought, then the Parties will go back to the negotiating table with the option for either side to void the agreement. Nevertheless, the Settlement Class is protected here too. Even if the class size is more than 200,000 people, Plaintiffs retain the unilateral option to accept the settlement at the amount that would be paid if there were 200,000 Settlement Class Members. That provision protects the Settlement Class in the event there is a substantial change in the law that might otherwise lead Kronos to want to void the deal.

Second, the monetary relief achieved by Plaintiffs' counsel in the Settlement excels in comparison to other statutory privacy settlements, including many BIPA settlements. Assuming, as Plaintiffs believe will happen, that post-settlement discovery confirms the accuracy of Kronos's representation as to the class size, the settlement fund in this case will be $15,276,227, none of which will ever go back to Kronos. (*See* Agreement § 1.35.) Assuming a claims rate of 10-20%, the Settlement will result in a *net* payment (meaning after all fees and costs are deducted) of approximately $290 to $580 per claimant. This amount dwarfs the amounts recovered in many other statutory privacy class actions, particularly against a backdrop where settlements have commonly secured no relief to the class or only *cy pres* relief. *See, e.g., Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic Communications Privacy Act ["ECPA"] for a $9.5 million *cy pres*-only settlement—amounting to pennies per class member—where $10,000 in statutory damages were available per claim); *In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011) (resolving tens of millions of claims, again under the ECPA, for $8.5 million *cy pres*-only settlement). Some BIPA settlements, too, have depressed the amount defendants have to pay with credit monitoring, caps on the amount claiming class members can

29

recover, and reversion of unclaimed funds. *E.g.*, *Carroll*, 2017-CH-01624 (credit monitoring only); *Marshall*, 2017-CH-14262 (paying a cap of $270 to individuals who filed claims and reverting the remainder to defendant). Even when comparing against other consumer BIPA settlements with class sizes in the tens of thousands of people, like this one, the per-person relief provided by this Settlement is as good or better than the rest. *See Prelipceanu*, 2018-CH-15883 ($7 million fund for approximately 260,000 class members); *Miracle-Pond*, 2019-CH-07050 ($6.75 million fund for potentially millions[13] of class members); *Kusinski*, 2017-CH-12364 ($25 million fund for approximately 320,000 class members); *Thome*, No. 19-cv-6256, dkt. 90 ($4.1 million fund for approximately 62,000 class members, and assignment of insurance policy); *Rosenbach v. Six Flags Ent. Corp.*, 2016-CH-00013 (Cir. Ct. Lake Cnty. Oct. 29, 2021) (approving $36 million fund for approximately 1,110,000 class members, which caps class member payments at $200 or $60 depending on date of finger scan and provides that defendant retains all unclaimed funds). Using any metric, the relief secured by this non-reversionary Settlement—approximately $290 to $580 per claiming Class Member—is extraordinary, especially for a BIPA case of this magnitude.

Critically, while paying Class Members hundreds of dollars for their claims against Kronos, the Settlement does *not* release any claims against Class Members' employers, who maintained the biometric time clocks at Class Members' workplaces. (Agreement § 1.27 ("Released Parties expressly excludes any of Defendant's customers.").) Indeed, many Class Members—including the Class Representatives—are already covered by pending class action

---

[13]    The settlement papers submitted in *Miracle-Pond* represented that there were approximately 954,000 class members, but that number only counted Shutterfly *users* in Illinois; it did not include the vast number of *non-users* who appeared in users' photographs uploaded to Shutterfly and who were included in the settlement class definition.

litigation against their employers, and this settlement will not affect their ability to obtain recovery in those suits.

Finally, aside from the monetary relief, the non-monetary benefits created by the Settlement also demonstrate Plaintiffs' and proposed Class Counsel's outstanding representation of the class. (*See id.* § 2.2.) If Kronos is going to continue to host finger-scan data, it will be required to provide specific notice to its Illinois Kronos Cloud Customers using finger-scan timeclocks that they are required to establish a retention and destruction schedule that complies with BIPA and need to follow that schedule with timely data deletion; notify the subjects of collection, in writing, that finger-scan data, which may be considered biometric information under BIPA, is being collected, stored, used, and disclosed by the customer and/or Kronos; notify the subjects of collection in writing of the purposes and length of term that finger-scan data is being collected, stored, used and disclosed; and obtain a written release to the collection, storage, use and disclosure by the customer and by Kronos itself. This prospective relief aligns perfectly with both the goals of BIPA and those of this lawsuit, as it will ensure that past, current, and future Illinois employees are protected as the legislature intended. *See Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1207 (Ill. 2019) (noting that "the point of [BIPA]" is to "prevent problems before they occur and cannot be undone").

If the Settlement is approved, the Settlement Class will reap its valuable benefits thanks to Plaintiffs' and proposed Class Counsel's hard work pursuing this case and representing their interests. This factor is well satisfied.

### B. The Settlement Was Reached as a Result of Arm's-Length Negotiations Between the Parties.

The second Rule 23(e)(2) factor looks to whether the parties negotiated the settlement at arm's-length. Fed. R. Civ. P. 23(e)(2)(B). The answer here is easy: yes. Unlike many class action

settlements "in which settlement negotiations begin before discovery even takes place," this case was contested through an adversarial and contentious process. *Charvat v. Valente*, No. 12-cv-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019). Plaintiffs actively litigated this case for three years, including a motion to dismiss, a motion to strike class allegations, two motions to strike affirmative defenses, a jurisdictional remand and subsequent re-removal, substantial written discovery, and numerous depositions. *See Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (finding no collusion or unfairness where "the parties have vigorously defended their positions throughout the litigation, participated in two prior mediations, and engaged in discovery" prior to reaching settlement). With several more fact depositions of Kronos employees soon approaching and multiple discovery motions pending, the Parties began to discuss the possibility of resolution. (Wade-Scott Decl. ¶ 3.) These discussions ultimately led to a full-day, private meditation with Judge James F. Holderman (Ret.) of JAMS Chicago on August 31, 2021. (*Id.*) While productive, the mediation did not end in immediate settlement, and the Parties proceeded with litigation for another month and a half, including a deposition of a senior-level Kronos employee. (*Id.*) During that time, the Parties still continued to discuss settlement, and, late in the evening on October 20, 2021, were able to reach a binding Memorandum of Understanding. (*Id.*) The Parties then spent the next several months drafting and negotiating the finer deal points of the final Settlement Agreement before executing it in January 2022. (*Id.*) *See Young v. Rolling in the Dough, Inc.*, No. 17-cv-7825, 2020 WL 969616, at *4 (N.D. Ill. Feb. 27, 2020) (finding the settlement agreement is "clearly" the product of arm's-length negotiations after it was agreed to after a contested motion, extensive discovery and discovery disputes, and a settlement conference).

The arm's-length nature of these negotiations is further confirmed by the Settlement

itself: it is non-reversionary, provides significant cash payments to Class Members who submit a simple Claim Form, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (approving settlement where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation").

For these reasons, there should be no question that the Settlement here was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

### C.     The Settlement Treats All Settlement Class Members Equally.

The next Rule 23(e)(2) factor considers whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, given that each Class Member has nearly identical BIPA claims for monetary and injunctive relief against Kronos, the proposed Settlement treats each of them identically. In terms of monetary relief, Kronos has agreed to create a non-reversionary Settlement Fund, from which each Class Member who submits a valid Claim Form will receive a single, *pro rata* payment by check or electronic deposit. (Agreement § 2.1(c)); *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). The Settlement also provides for identical prospective relief requiring Kronos to take steps to ensure compliance with BIPA going forward. (Agreement § 2.2.) Further, each Class Member will release the same BIPA claims

33

against Kronos, and all will retain their claims against their respective employers. (*Id.* §§ 1.26, 1.27, 3.)

Likewise, the provision of a service award to Plaintiffs for serving as Class Representatives is consistent with the equitable treatment of class members. The requested $7,500 services awards are not only modest relative to the Settlement Fund that Plaintiffs have helped secure for the Settlement Class, they also reflect the work they have done for the Settlement Class, which as described above, included conferring with counsel regularly, answering written discovery, sitting for contentious depositions, and participating in the settlement process. Moreover, an award of this size is squarely in line with, and in many instances lower than, other service awards given to class representatives in BIPA cases. *See Martinez v. Nandos Rest. Grp., Inc.*, No. 19-cv-07012, dkt. 63 (N.D. Ill. Oct. 27, 2020) ($7,500 service award) (Ellis, J.); *Dixon*, No. 17-cv-8033, dkt. 103 (N.D. Ill. May 31, 2018) ($10,000 service award) (Kennelly, J.). Given that Plaintiffs' efforts were key to securing the outstanding relief provided by the Settlement, the modest proposed service awards are fully consistent with equity. Because the Settlement treats each member of the Settlement Class equitably, this factor is well satisfied.

### D. The Relief Secured for the Settlement Class Is Adequate and Warrants Approval.

The final and most substantive factor under Rule 23(e)(2) examines whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 instructs courts to consider several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. *Id.* As explained below, each

of these sub-factors demonstrate that the relief provided by the Settlement is excellent—well beyond adequate—and should be approved.

### 1. The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval.

In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursing a litigated outcome to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment.

The Settlement here warrants approval because it provides immediate relief to the Settlement Class while avoiding potentially years of complex litigation and appeals and the risk that comes along with it. *See Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."). Kronos's main defense in this case was its contention that even though it did not obtain the written consent required by the plain language of the statute, some other form of implied consent still precluded its liability. Plaintiffs sought to have this defense stricken as legally insufficient, but the Court reserved the question for a later stage of litigation. Additionally, Kronos argued that the information captured by its fingerprint scanners were not actually "biometric identifiers" or "biometric information" subject to BIPA, but some third category of finger-scan information outside of BIPA's purview. Plaintiffs again put little stock in this argument, but it is likely that it would come down to a battle of expert witnesses at a trial. *See In re Facebook Biometric Info. Priv. Litig.*, No. 3:15-CV-03747-JD, 2018 WL 2197546, at *2 (N.D. Cal. May 14, 2018) (denying cross motions for summary judgment on the basis that similar question regarding the nature of biometric technology was a jury issue). The determination of a complex factual issue by a jury is an

inherently uncertain proposition, particularly compared with the certain relief offered by this Settlement.

Likewise, the Parties also would have been forced to litigate the issue of class certification adversarially. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (instructing courts to consider the likelihood of certifying the class for litigation in evaluating this sub-factor); *see also Hudson v. Libre Tech., Inc*., No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, at *6 (S.D. Cal. May 13, 2020) ("Proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class."). Although Plaintiffs believe this case is amenable to class certification given Defendant's uniform conduct, *see In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. at 549 (certifying Rule 23(b)(3) class of Facebook users in Illinois for whom Facebook created and stored a face template), and that they would ultimately prevail on certification issues, that process is by no means risk-free. That isn't to say that the Court can ignore questions regarding the propriety of class certification; as discussed above, it cannot. The important point is that in the context of settlement, Kronos doesn't object to certification of the class, which permits the Court to focus its class certification analysis on protecting absent class members without worrying about the effect of certification on Kronos. *See Mullins*, 795 F.3d at 669 (explaining that defendants also have due process rights that can affect certification). This Settlement provides excellent relief to the Settlement Class Members now, avoiding years of delay to resolve these questions.

Protracted litigation would also consume significant resources, including the time and costs associated with the remainder of discovery, securing expert testimony on complex biometric and data storage issues, and again, motion practice, trial, and any appeals. It is possible that "this drawn-out, complex, and costly litigation process . . . would provide Class Members

with either no in-court recovery or some recovery many years from now[.]" *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). Because the proposed Settlement offers immediate—and substantial—monetary relief to the Settlement Class while avoiding the need for extensive and drawn-out litigation, preliminary approval is appropriate. *See*, *e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 2. The method of distributing relief to the Settlement Class Members is effective and supports preliminary approval.

The next sub-factor evaluates whether the settlement's proposed method of distributing relief to the class is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while also ensuring that only "legitimate claims" are paid. 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2011). Courts have held that requiring a claimant to fill out a short and simple claim form is an appropriate way to balance these concerns, especially in settlements with non-reversionary funds. *See In re Toyota Motor Corp. Unintended Acceleration Mktg. Litig.*, No. 8:10ML 02151 JVS, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous."); *Schulte*, 805 F. Supp. 2d at 591 ("[T]he Court has reviewed the claim form and concludes that it is not unduly burdensome, long, or complex. All information called for on the form is required of the claims administrator in order for it to process claims."); 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2011).

The proposed Settlement here satisfies this factor by relying on well-established, effective methods for processing Class Members' Claim Forms and distributing the proceeds of

the Settlement. The Settlement Fund will be distributed to Class Members who submit a short

and simple Approved Claim Form, by mail or online, to the Settlement Administrator—an

independent third party with extensive experience handling the administration of settlement

funds. (*See* Agreement, Exs. A, C.) Each person in the Settlement Class for whom an address is

obtained will be sent a paper Claim Form in the mail, attached to the direct notice, and will have

the option to alternatively file their claim online through the Settlement Website. The online

Claim Form also lets Class Members select to receive their Settlement Payment by Venmo,

Zelle, Paypal, or check. (*Id.* § 1.5.) The Settlement Administrator will provide Class Members

with resources (including a website, mailing address, and toll-free phone number) to contact the

Settlement Administrator or Class Counsel directly, review and process the Claim Forms, and

then disperse to Class Members their *pro rata* share of the Settlement Fund upon approval of the

Court. (*Id.* §§ 1.37, 5.1.) This distribution method is effective and supports approval.

### 3. The terms of the requested attorneys' fees are reasonable.

The third and final relevant sub-factor[14] considers the adequacy of the relief provided to

the class taking into account "the terms of any proposed award of attorney's fees, including

timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). If the Settlement is preliminarily approved,

proposed Class Counsel plans to petition the Court for an award of reasonable attorneys' fees

after the Settlement Class has received notice of the Settlement. The Settlement's contemplated

method of calculating attorneys' fees (i.e., the percentage-of-the-fund method), and its limit on

attorneys' fees (i.e., no more than 33% of the non-reversionary Settlement Fund) is reasonable

---

[14]     The fourth sub-factor, which requires the parties to identify any side agreements made in connection with the settlement, Fed. R. Civ. P. 23(e)(2)(C)(iv), is not applicable here as the written Settlement Agreement provided to the Court represents the entirety of the Parties' proposed Settlement. (Wade-Scott Decl. ¶ 4.) Since there are no side agreements to be identified, this sub-factor weighs in favor of preliminary approval.

and predicated on the outstanding relief provided to the Settlement Class. (Agreement § 8.1.) In fact, the percentage-of-the-fund method has been used to determine a reasonable fee award in every BIPA class action settlement creating a common fund to date, and a 33% award will adequately capture the hypothetical *ex ante* agreement that the Settlement Class would have entered into with proposed Class Counsel had they sought them out in the market, given the risks in the case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011); *e.g.*, *Lopez-McNear v. Superior Health Linens, LLC*, No. 19-cv-2390, dkt. 69 (N.D. Ill. Apr. 27, 2021) (awarding 35% of fund); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv-07018, dkt. 57 (N.D. Ill. Sept. 10, 2020) (awarding 35% of fund); *Sekura*, 2015-CH-16694 (awarding 40% of fund); *Zepeda v. Intercontinental Hotels Grp., Inc.*, 2018-CH-02140 (Cir. Ct. Cook Cnty.) (awarding 40% of fund); *Svagdis v. Alro Steel Corp.*, 2017-CH-12566 (Cir. Ct. Cook Cnty.) (awarding 40% of fund); *see also* 5 NEWBERG ON CLASS ACTIONS § 15:83 (5th ed. 2011) (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund"). Accordingly, that the Settlement permits the Court to award 33% of the fund in attorneys' fees is more than appropriate.[15] Finally, if approved, the Settlement provides that attorneys' fees will be paid within five business days after final judgment, including any appeals. (Agreement §§ 1.13, 8.1.) These terms are reasonable and should be preliminarily approved.

For these reasons, Plaintiffs and proposed Class Counsel submit that the monetary and prospective relief provided by the Settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of possible approval. The Court should grant preliminary approval.

---

[15]     To be clear, Defendant may oppose the amount of attorneys' fees requested by proposed Class Counsel, as there is no "clear-sailing" provision in the Agreement. (Agreement § 8.1.)

## VII.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

Rule 23 and Due Process require that for any "class proposed to be certified for purposes of settlement under Rule 23(b)(3)[,] the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement, voluntary dismissal, or compromise.]" Fed. R. Civ. P. 23(e)(1). Notice may be provided to the class via "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) (eff. Dec. 1, 2018). The substance of the notice to the Settlement Class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the Settlement Class, and that the effect of a class judgment shall be binding on all class members. *See id.*

Here, the Settlement contemplates a comprehensive Notice Plan that will send direct notice by U.S. mail and email in the best manner practicable. Specifically, the Parties' confirmatory discovery will include collecting the names, email addresses, and mailing addresses of all class members from Kronos's customers, either voluntarily or by subpoena if necessary. (Agreement § 7.2.) Once the Class List is compiled, the Settlement Administrator will update the addresses through the National Change of Address database and send direct Notice by e-mail to all members of the Settlement Class for whom a valid e-mail address is available. (*Id.* § 4.1(c); *see id.* Ex. B.) The Settlement Administrator will also be authorized to send up to three reminder e-mails, which in Class Counsel's experience has a material impact on the claims rate. In

addition to email, the Settlement Administrator will also send direct notice by First Class U.S. Mail to every Class Member whose physical address is on the Class List, which will include a fold-over postcard Claim Form attached. (*Id.* § 4.1(c); *see id.* Ex. C.) If any Notice by mail is returned as undeliverable, the Settlement Administrator will forward it to any forwarding addresses provided by the U.S. Postal Service, and if none are provided, the Settlement Administrator will perform skip traces to attempt to obtain the most recent addresses for such Settlement Class Members. (*Id.* §§ 4.1(c); 5.1(c).)[16]

All of the Notice documents are written in plain, easily-understood language. To ensure a comprehensive Notice, the email and mail Notice will direct class members to a Settlement Website, which will provide class members 24-hour access to further information about the case in English and Spanish, including important court documents and a detailed "long form" Notice document, and will allow class members to submit claims forms online. (*See id.* Exs. A, B & D.) Supporting the mail notices and Settlement Website will be a toll-free telephone line through which class members can contact Class Counsel and the Settlement Administrator to obtain additional information about the Settlement. (*Id.* § 4.1(c).) Finally, the Settlement Administrator will provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (*Id.* § 4.1(c)(iv).)

Because the proposed Notice Plan effectuates direct Notice in the best practicable manner and fully apprises Settlement Class Members of their rights, it comports with both Rule 23 and Due Process. Consequently, the Court should approve the Parties' proposed Notice Plan.

---

[16] The Settlement Administrator will delete the data nine months after the check issue date, unless otherwise agreed in writing by the Parties as necessary to effectuate the settlement.

## VIII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (i) granting preliminary approval of the Parties' proposed Class Action Settlement Agreement, (ii) certifying the proposed Settlement Class for settlement purposes, (iii) approving the form and content of the Notice to the members of the Settlement Class, (iv) permitting the confirmatory discovery as described in the Settlement Agreement, (v) appointing Plaintiffs Charlene Figueroa and Jermaine Burton as Class Representatives, (vi) appointing Jay Edelson and J. Eli Wade-Scott of Edelson PC and Ryan F. Stephan and James B. Zouras of Stephan Zouras, LLP as Class Counsel, (vii) scheduling a final fairness hearing in this matter, and (viii) providing such other and further relief as the Court deems reasonable and just.[17]

Respectfully submitted,

**CHARLENE FIGUEROA AND JERMAINE BURTON,** individually and on behalf of all others similarly situated

Dated: February 10, 2022

By: /s/J. Eli Wade-Scott
        One of Plaintiffs' attorneys

Jay Edelson
jedelson@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

James B. Zouras
jzouras@stephanzouras.com
Ryan F. Stephan
rstephan@stephanzouras.com

---

[17]    Plaintiffs intend to submit a proposed Preliminary Approval Order for the Court's convenience and to propose future case deadlines.

STEPHAN ZOURAS, LLP
100 N. Riverside Plaza
Suite 2150
Tel: 312.233.1550
Fax: 312.223.1560