**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHARLENE FIGUEROA and JERMAINE BURTON, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-01306 |
| *Plaintiffs,* | Honorable Gary M. Feinerman |
| v. | |
| KRONOS INCORPORATED, | |
| *Defendant.* | |

**PLAINTIFFS' MOTION FOR AND MEMORANDUM OF LAW
FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS**

### TABLE OF CONTENTS

I.       **INTRODUCTION** .................................................................................................... 1

II.     **BACKGROUND** ...................................................................................................... 3

       A.    **BIPA and the Underlying Claims** ........................................................ 3

       B.    **Litigation History and the Work Performed for the Settlement Class** ........... 5

       C.    **The Settlement Secures Excellent Relief for the Settlement Class** ................ 10

III.    **THE REQUESTED ATTORNEYS' FEES AND INCENTIVE AWARDS ARE REASONABLE AND SHOULD BE APPROVED** ...................................................... 11

       A.    **Percentage-of-the-Recovery Should Be Used to Determine Fees Here** .......... 13

       B.    **A 33% Fee Award Is Appropriate Here** .......................................... 15

             1.    **This case presented serious obstacles to recovery, and Class Counsel litigated the case mindful of the high possibility that the class might recover nothing** ................................................................... 17

             2.    **Class Counsel achieved an excellent result for the class** ..................... 21

             3.    **A lodestar cross-check confirms the reasonableness of the requested fees** ................................................................................. 23

IV.    **THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE AWARDS** ............................................................................................................. 25

V.     **CONCLUSION** ..................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**<u>United States Supreme Court Cases</u>**

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................................. 11, 12

*Frank v. Gaos*,
    139 S. Ct. 1041 (2019) ................................................................................................ 22

*Hall v. Cole*,
    412 U.S. 1 (1973) ........................................................................................................ 23

**<u>United States Appellate Court Cases</u>**

*Americana Art China, Co., Inc. v. Foxfire Printing & Packaging Inc.*,
    743 F.3d 243 (7th Cir. 2014) ................................................................................. 12, 21

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ........................................................................ 23, 24, 25

*Cothron v. White Castle System, Inc.*,
    No. 20-3202 (7th Cir) ............................................................................................. 8, 20

*Florin v. Nationsbank of Georgia, N.A.*,
    34 F.3d 560 (7th Cir. 1994) ................................................................................... 11, 14

*Fox v. Dakkota Integrated Systems, LLC*,
    980 F.3d 1146 (7th Cir. 2020) ................................................................................... 6, 7

*Golan v. FreeEats.com, Inc.*,
    930 F.3d 950 (8th Cir. 2019) ..................................................................................... 20

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ........................................................................... 14, 24, 25

*In re Google Referrer Header Priv. Litig.*,
    869 F.3d 737 (9th Cir. 2017) ..................................................................................... 22

*In re Stericycle Securities Litigation*,
    35 F.4th 555 (7th Cir. 2022) ................................................................................. 16, 17

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) .............................................................................. 2, 12, 16

*In re Trans Union Corp. Privacy Litig.*,
    629 F.3d 741 (7th Cir. 2011) ...................................................... 12

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ...................................................... 14

*Montgomery v. Aetna Plywood*,
    231 F.3d 399 (7th Cir. 2000) ...................................................... 15

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ...................................................... 15

*Pickett v. Sheridan Health Care Ctr.*,
    813 F.3d 640 (7th Cir. 2016) ...................................................... 24

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) .............................................. 12, 16

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) .............................................. 12, 18

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ...................................................... 12

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ...................................................... 16

*United States v. Dish Network L.L.C.*,
    954 F.3d 970 (7th Cir. 2020) ...................................................... 20

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) ...................................................... 20

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) ...................................................... 23

**United States District Court Cases**

*Adkins v. Facebook, Inc.*,
    No. 18-cv-05982-WHA (N.D. Cal.) ............................................ 22

*Bryant v. Compass Grp. USA, Inc.*,
    No. 19-cv-06622 (N.D. Ill. Sept. 8, 2022) ................................ 22

*Figueroa, et al. v. Kronos Inc.*,
    454 F. Supp. 3d 772 (N.D. Ill. 2020) .................................. 18, 19

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016) ................................................................................. 13, 15

*Hale v. State Farm Mutual Auto. Ins. Co.*,
    No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. 2018) .................................................. 14

*Howe v. Speedway LLC*,
    19-cv-01374 (N.D. Ill.) ..................................................................................................... 19

*In re Akorn, Inc. Secs. Litig.*,
    No. 1:15-cv-01944 (N.D. Ill. June 5, 2018) ..................................................................... 26

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................................................................. 15

*In re Facebook Biometric Info. Priv. Litig.*,
    No. 3:15-cv-03747-JD, 2018 WL 2197546 (N.D. Cal. May 14, 2018) ........................... 19

*In re Google LLC Street View Elec. Commc'ns Litig.*,
    No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .......................... 22

*In re TikTok, Inc., Consumer Priv. Litig.*,
    No. 20-cv-04699, 2022 WL 2982782 (N.D. Ill. July 28, 2022) ................................ 15, 17

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) .............................................................................. *passim*

*Leung v. XPO Logistics, Inc.*,
    326 F.R.D. 185 (N.D. Ill. 2018) ....................................................................................... 16

*Namuwonge v. Kronos, Inc.*,
    418 F. Supp. 3d 279 (N.D. Ill. 2019) ............................................................................... 18

*Neals v. ParTech, Inc.*,
    No. 19-cv-05660 (N.D. Ill. July 20, 2022) ...................................................................... 22

*Nistra v. Reliance Tr. Co.*,
    No. 1:16-cv-04773 (N.D. Ill. June 19, 2020) .................................................................. 26

*Norberg v. Shutterfly, Inc.*,
    152 F. Supp. 3d 1103 (N.D. Ill. Dec. 29, 2015) .............................................................. 18

*Perlin v. Time Inc.*,
    237 F. Supp. 3d 623 (E.D. Mich. 2017) ..................................................................... 20, 21

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................. 26

*Spicer v. Chicago Bd. Options Exch., Inc.*,
844 F. Supp. 1226 (N.D. Ill. 1993) ............................................................... 24

*Thome v. NOVAtime Tech., Inc.*,
No. 19-cv-6256 (N.D. Ill. Mar. 8, 2021) .................................................. 21, 26

## State Supreme Court Cases

*Rosenbach v. Six Flags Ent. Corp.*,
2019 IL 123186 ............................................................................................ 4

## State Appellate Court Cases

*Tims v. Black Horse Carriers, Inc.*,
2021 IL App (1st) 200563 ......................................................................... 8, 20

## State Circuit Court Cases

*Bernal v. ADP*,
2017-CH-12364 (Cir. Ct. Cook Cnty. Aug. 23, 2019) .................................... 18

*Carroll v. Crème de la Crème*,
2017-CH-01624 (Cir. Ct. Cook Cnty.) ......................................................... 15

*Cameron v. Polar Tech Indus., Inc.*,
2019-CH-000013 (Cir. Ct. DeKalb Cnty. Aug. 23, 2019) .............................. 18

*Kusinski, et al. v. ADP, LLC*,
2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) .................................... 21

*LaBarre v. Ceridian HCM, Inc.*,
2019-CH-06489 (Cir. Ct. Cook Cnty.) ......................................................... 22

## Miscellaneous Authority

5 Newberg and Rubenstein on Class Actions
§ 15:83 (6th ed.) ..................................................................................... 15
§ 15:87 (6th ed.) ..................................................................................... 24

740 ILCS 14 ................................................................................. *passim*

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*,
7 J. Empirical L. Stud. 811 (2010) ............................................................... 14

Fed. R. Civ. P. 23 ......................................................................................................... 11

H.B. 559, 102nd Gen. Assembly (Ill. 2021) ..................................................................21

H.B. 560, 102nd Gen. Assembly (Ill. 2021) ..................................................................21

H.B. 1764, 102nd Gen. Assembly (Ill. 2021) ................................................................21

H.B. 3112, 102nd Gen. Assembly (Ill. 2021) ................................................................21

H.B. 3304, 102nd Gen. Assembly (Ill. 2021) ................................................................21

H.B. 3414, 102nd Gen. Assembly (Ill. 2021) ................................................................21

S.B. 56, 102nd Gen. Assembly (Ill. 2021) .....................................................................21

S.B. 300, 102nd Gen. Assembly (Ill. 2021) ...................................................................21

S.B. 1607, 102nd Gen. Assembly (Ill. 2021) .................................................................21

S.B. 3874, 102nd Gen. Assembly (Ill. 2022) .................................................................21

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*,
53 UCLA L. Rev. 1303 (2006) ........................................................................... 2

I.      **INTRODUCTION**

Almost four years ago, Plaintiffs Charlene Figueroa and Jermaine Burton ("Plaintiffs") brought this class action lawsuit against Defendant Kronos, Inc. ("Defendant" or "Kronos")—the vendor of a biometric timeclock system—alleging that Kronos collected theirs and thousands of other Illinois workers' biometric data in violation of the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*[1] Plaintiffs and Class Counsel litigated the case extensively, which included defeating Defendant's motion to dismiss and motion to strike class allegations, obtaining significant written discovery, taking seven depositions, each Plaintiff sitting for their own full-day deposition, briefing numerous discovery motions, moving to strike two of Defendant's affirmative defenses, defeating Defendant's motion to stay, and participating in a full-day mediation with the Honorable James F. Holderman (ret.). As a result of these efforts, Class Counsel was able to secure a remarkably strong Settlement, which creates a non-reversionary $15,276,227.00 Settlement Fund for the benefit of 84,193 Settlement Class members. Assuming a 25-30% claims rate,[2] each Class Member who submits an Approved Claim will receive a cash payment estimated to be between $385 and $465, after any fees and costs are deducted.

The Settlement provides non-monetary relief, too. If Kronos continues to host finger-scan data, it will be required to notify its employer-customers that they need to establish and comply with a retention and deletion schedule in line with BIPA and obtain an informed written release from their employees permitting the employer-customer and Kronos to collect, store, use, and

---

[1]      Capitalized terms used in this motion are those used in the Stipulation of Class Action Settlement ("Settlement" or "Agreement") attached hereto as Exhibit 1.

[2]      As of November 18, 2022, 21.8% of the Settlement Class has submitted an Approved Claim, and there are still 14 days until the December 6, 2022 Claims Deadline.

1

disclose their finger-scan data. Moreover, the Settlement preserves any Class Members' separate BIPA claims against their employers who deployed Kronos's biometric timeclocks and may have committed separate BIPA violations through their own collection. That means many Class Members likely stand to receive additional monetary relief, on top of this Settlement, for their employers' collection of the same biometric data if they decide to pursue those unreleased claims.

In light of this excellent result, Class Counsel now respectfully move the Court to award 33% of the Settlement Fund (less the amount paid for notice and the proposed incentive award) as attorneys' fees and expenses for a total of $4,834,287.22. The requested fee award accurately reflects the fee arrangement that a Class Member would have entered into with Class Counsel had they made an *ex ante* bargain before heading into litigation like this, given the risks in the case. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001). Moreover, the requested percentage fee award is well in line with common fund fee awards in BIPA cases in this District, (*see* Exhibit 2, Chart 1 (listing 33% fee awards in BIPA cases in the Northern District)) and is in fact less as a percentage than that commonly awarded in BIPA cases, (*see id.*, Charts 2 and 3 (listing 35–40% fee awards)).

The requested incentive awards of $7,500.00 for each Plaintiff is similarly reasonable. Incentive awards in class action settlements frequently exceed $10,000.00. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1348 (2006) (finding that "[t]he average award per class representative was $15,992"). Plaintiffs' requested awards reflect their participation throughout this case, including in the investigation of the Action, litigation, discovery, and the settlement process and is comfortably in line with what has been awarded in similar BIPA cases in this

District. (*See* Exhibit 2, Chart 4 (listing incentive awards ranging from $7,500.00 to $10,000.00 in BIPA cases).) Plaintiffs' requested fees and incentive award are reasonable and warrant the Court's approval.

## II.     BACKGROUND

A brief summary of the underlying facts and law will lend context to the instant motion and demonstrate the reasonableness of the requested fees and incentive award.

### A.      BIPA and the Underlying Claims

BIPA is landmark privacy law in Illinois and one of the country's only meaningful regulations on the collection and use of biometric data. Recognizing the "very serious need" to protect Illinois citizens' biometric data—which includes retina scans, fingerprints, voiceprints, and scans of hand or face geometry—the Illinois legislature unanimously passed BIPA in 2008 to provide individuals recourse when companies failed to appropriately handle their biometric data in accordance with the statute. (*See* Complaint, ("Compl."), dkt. 1-1 ¶ 14; 740 ILCS 14/5.) Thus, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . "

740 ILCS 14/15(b). BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. For example, BIPA requires companies

3

to develop and comply with a written policy establishing a retention schedule and guidelines for permanently destroying biometric information. 740 ILCS 14/15(a). As a means of enforcement, BIPA provides a civil private right of action and allows for the recovery of statutory damages in the amount of $1,000 for negligent violations or $5,000 for willful violations, plus costs and reasonable attorneys' fees, to any person "aggrieved by a violation" of the statute. *See* 740 ILCS 14/20.

As the Illinois Supreme Court assessed the legislature's intent in passing BIPA, the statute:

> vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. . . . These procedural protections are particularly crucial in our digital world because technology now permits the wholesale collection and storage of an individual's unique biometric identifiers—identifiers that cannot be changed if compromised or misused. When a private entity fails to adhere to the statutory procedures . . . the right of the individual to maintain her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized. This is no mere technicality. The injury is real and significant.

*Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 34 (internal citations and quotations omitted).

This case arises from Plaintiffs' experiences with Kronos's biometric timeclocks at their respective jobs in Illinois: Ms. Figueroa was an hourly employee at a grocery store, and Mr. Burton was an hourly employee at metal manufacturing plant. (Compl. ¶¶ 35, 49.) Kronos provides timekeeping systems to hundreds of employers with brick-and-mortar locations in Illinois, including Plaintiffs' former employers. (*Id.* ¶ 1.) As part of its timekeeping system, Kronos provides its employer-customers with physical timeclocks with a finger scanner attached, which are connected to Kronos's cloud-based servers. (*Id.* ¶ 2.) When the Plaintiffs and Class Members started work at an employer using a Kronos timeclock, they were required to scan their

4

finger to enroll in Kronos's timekeeping database and then must scan their finger every time they clock in and out of work to track their working hours. (*Id.* ¶¶ 2, 37, 51.) Plaintiffs allege that through this process, Kronos collected, stored, and used their and the class's biometric information in violation of BIPA. (*Id.* ¶¶ 23-34.) Specifically, Plaintiffs allege that Kronos violated section 15(a) of BIPA by (i) failing to develop a retention policy and guidelines for permanently destroying biometric data, (ii) failing to publicly disclose any such policy, and (iii) failing to comply with any such policy (by actually deleting the data). (*Id.* ¶¶ 28-33.) Plaintiffs further allege that Kronos violated section 15(b) of BIPA by collecting, using, and storing their and other Illinois workers' biometric data without obtaining their informed, written consent. (*Id.* ¶¶ 26-27.) Finally, Plaintiffs alleged that Kronos violated section 15(d) by disclosing their biometric data to third parties without consent. (*Id.* ¶ 79.)

**B.    Litigation History and the Work Performed for the Settlement Class**

Plaintiffs originally filed their putative class action complaint in the Circuit Court of Cook County, Illinois, on January 18, 2019. Kronos then timely removed the case and, shortly thereafter, removed another substantively identical proposed class action with a different plaintiff represented by different counsel. (Dkt. 1.) On April 29, 2019, Plaintiffs moved to consolidate the cases and for their counsel to be appointed interim class counsel, which the Court granted and appointed Jay Edelson of Edelson PC and James B. Zouras of Stephan Zouras LLP as interim class counsel. (Dkts. 42, 94.)

Meanwhile, Kronos moved to dismiss the complaint under Rule 12(b)(6) and to strike Plaintiffs' class allegations under Rule 12(f). (Dkts. 29, 30, 32, 33.) In its motion to dismiss, Kronos argued, *inter alia*, (1) that any obligation imposed by BIPA is the responsibility of Plaintiffs' employers, not Defendant as a vendor; (2) that Kronos did not "possess" Plaintiffs'

data within the meaning of the statute; and (3) that Plaintiffs failed to allege facts sufficient to demonstrate Kronos "negligently" or "recklessly" violated BIPA. (*See* dkt. 30.) Plaintiffs opposed the motion, arguing, *inter alia*, (1) that because BIPA applies to "any private entity" that collects biometric data, it applies to both vendors and employers who collect biometric data; (2) that employers and vendors alike can be in "possession" of biometric data, as possession does not require exclusive control; and (3) that "negligence" and "recklessness" are not pleading requirements for a BIPA claim but measures of culpability after liability is established. (Dkt. 50.) In support of its motion to strike, Kronos argued, *inter alia*, that Plaintiffs were seeking to certify a "mega class," in which class members would all have different employers who engaged in different courses of conduct such that class certification was doomed from the pleadings. Again, Plaintiffs opposed, explaining, *inter alia*, that Kronos's motion was wildly premature and that, in any event, Plaintiffs adequately alleged (and would prove) the class members' employers all used Kronos biometric timekeeping devices and that Kronos uniformly failed to obtain informed written consent from class members, making certification appropriate. (*See* dkt. 51.)

The Court ultimately denied Kronos's motions in full on April 13, 2020, finding that BIPA applies to defendant-vendors like Kronos; Plaintiffs had stated claims against Kronos under sections 15(a), (b), and (d) of BIPA; and rejecting Kronos's challenges to Plaintiffs' class allegations. (Dkt. 128.) The Court then ordered Kronos to answer the complaint and requested supplemental briefing addressing Plaintiffs' Article III standing to bring their section 15(a) claims. (*Id.* at 26.) Both Parties submitted that briefing, and on July 24, 2020, the Court found that it lacked subject matter jurisdiction over Plaintiffs' section 15(a) claims and thus severed and remanded those claims to state court. (Dkts. 137, 138, 151.) A few months later, the Seventh Circuit found in *Fox v. Dakkota Integrated Systems, LLC* that allegations of a defendant's

6

violation "of the full panoply of its section 15(a) duties—the duties to develop, publicly disclose, *and comply with* data retention and destruction policies" were sufficient to establish Article III standing. 980 F.3d 1146, 1149 (7th Cir. 2020) (emphasis in original). Given that ruling, Kronos promptly re-removed the remanded portion of the case, which was then re-consolidated with this action. (Dkt. 179.)

Meanwhile, on May 12, 2020, Kronos answered the Complaint, asserting 13 affirmative defenses. (Dkt. 136.) The Parties then engaged in months of contentious written discovery, which included numerous motions to compel from both Parties, multiple meet-and-confers, and disputes over Kronos's subpoenas to absent class members. (Dkts. 155, 173, 179, 234.) Plaintiffs served their first written discovery requests to Kronos on June 2, 2020, to which Kronos initially responded on August 3, 2020. (*See* dkt. 293.) In response, Kronos refused to produce discovery related to the full class and instead limited the scope of its production to employees who worked for Kronos customers who had already been sued in separate BIPA suits. Plaintiffs objected to this distinction as arbitrary and moved to compel responses for all relevant Illinois employers (dkt. 155), which the Court denied without prejudice. (Dkt. 166.)

On June 19, 2020, Kronos issued its first set of written discovery requests to Plaintiffs, which sought discovery from Plaintiffs about absent members of the putative class. Plaintiffs objected to this discovery, prompting Kronos to move to compel. (Dkt. 173.) On December 10, 2021, the Court denied Kronos's motion without prejudice to Kronos issuing subpoenas to absent class members who were plaintiffs in state court BIPA cases. (Dkt. 179.) Kronos then issued 61 subpoenas to absent class members, which prompted Class Counsel to move (1) for a protective order on behalf of Plaintiffs and (2) to quash Kronos's subpoenas on behalf 17 absent class

members who were separately represented by Edelson PC and Stephan Zouras, LLP. (Dkt. 234.) The Court took the motions under advisement.

While those motions were pending, Kronos moved to compel responses to interrogatories it issued to Plaintiffs seeking evidence in support of its affirmative defenses (dkt. 259) and petitioned the Court for leave to issue additional interrogatories. (Dkt. 261.) These additional discovery efforts were predicated on two affirmative defenses advanced by Kronos, both of which relied on the premise that some legal or equitable principle—like "estoppel," "waiver," or "primary assumption of risk"—permits something less than informed written consent to comply with BIPA. Plaintiffs accordingly moved to strike these two defenses, arguing that they fly in the face of the plain language of section 15(b) of BIPA, which permits nothing less than written, informed consent. (Dkt. 267 at 6-8.) After full briefing, the Court granted Plaintiffs' motion to strike without prejudice to Kronos's repleading of its defenses. (Dkt. 276.) On April 7, 2021, Kronos filed a second amended answer, and Plaintiffs once again moved to strike, arguing that Kronos's defenses as amended still relied on a misunderstanding of BIPA's informed written consent requirement. (Dkt. 285.) This motion was also fully briefed (dkts. 294, 298), and argued (dkt. 299). Though the Court denied Plaintiffs' second motion to strike on July 20, 2021, it reserved ruling on the merits of the affirmative defenses at issue. (Dkt. 307.)

While the Parties were briefing the motions to strike, Kronos also moved to stay the case pending the Seventh Circuit's ruling in *Cothron v. White Castle System, Inc.*, No. 20-3202 (7th Cir.), and the Illinois Appellate Court's decision in *Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563. (Dkt. 279.) *Cothron* concerns when BIPA claims accrue for limitations purposes, and *Tims* concerns the applicable statute of limitations for BIPA claims. Plaintiffs opposed the motion, arguing that given the timing of the motion, Kronos had improperly moved

to stay to avoid impending discovery obligations and responding to Plaintiffs' then-pending second motion to strike. (Dkt. 283.) After a hearing, the Court agreed with Plaintiffs and denied Kronos's motion. (Dkt. 288.) On September 27, 2021, the Court granted in part and denied in part the discovery motions concerning the subpoenas issued to absent class members. (Dkt. 323.)

As a result of Class Counsel's continuous efforts to push for discovery, Kronos ultimately produced over 120,000 pages of documents and ESI to Plaintiffs. Class Counsel also deposed seven current and former Kronos employees ranging from product managers to senior directors of the company.[3] Both Plaintiffs also sat for their depositions, which Class Counsel defended.

In the midst of discovery and motion practice, the Parties agreed in July 2021 that a mediation would be productive. On August 31, 2021, the Parties participated in a full-day mediation with Judge James F. Holderman (Ret.) of JAMS Chicago. The Parties' settlement negotiations lasted throughout the day and into the evening, but they were unable to reach an agreement. With no deal, the Parties went back to litigating the case, which included Plaintiffs taking their seventh deposition of a Kronos employee. However, the Parties continued to negotiate a possible settlement. After exchanging numerous demands and counteroffers and engaging in several telephone and Zoom conferences from mid-September to mid-October, the Parties ultimately reached an agreement on the principal terms of a class settlement. The Parties then executed a binding Memorandum of Understanding on October 20, 2021, setting forth those terms. After three months of additional negotiation over the final terms of the settlement—which included submitting a dispute about the form of notice and the claim form to Magistrate Judge

---

[3] Deponents included Connor Jarvis, WorkForce Ready Project Manager; David Vo, Manager of Product Support; Jim Puccini, healthcare sales; Larry Florio, Area Vice President of Healthcare; Megan McCaffrey, InTouch Product Manager; and Umesh Gandhi, Software Engineer.

Gilbert for a binding determination—the Parties executed the final Settlement Agreement on January 20, 2022. Plaintiffs then promptly moved for preliminary approval (dkt. 342), which the Court granted on February 18, 2022 (dkt. 358).

But Class Counsel's work was not over once preliminary approval was secured. To compile the Class List and ensure that as many Settlement Class members as possible would receive direct notice of the Settlement, the Settlement Agreement set forth a detailed procedure for obtaining the names, addresses, and personal e-mail addresses ("Contact Information") of the Settlement Class members. (Agreement § 7.2.) First, Kronos reached out to all of its Illinois Kronos Cloud Customers asking them to voluntarily provide Contact Information for their current and former employees who are members of the Settlement Class. (*Id.*) While some Illinois Kronos Cloud Customers produced Contact Information, 18 refused or failed to respond. As a result, Class Counsel issued subpoenas to each of those customers and, when six again failed to produce Contact Information, Class Counsel moved to compel their compliance, which the Court granted. (Dkts. 360, 363, 365.) Those six customers ultimately complied with the subpoenas. In the end, the Settlement Administrator has reported that the final Class List contains the names of 84,193 unique individuals and includes a mailing address and/or email address for 81,910 of them, or over 97%. (Declaration of J. Eli Wade-Scott, ("Wade-Scott Decl.") attached hereto as Exhibit 3, ¶ 14.)

C.    **The Settlement Secures Excellent Relief for the Settlement Class**

As detailed in Plaintiffs' motion for preliminary approval, the relief to the Settlement Class is an outstanding result. The Settlement creates a non-reversionary fund of $15,276,277.00 for the 84,193 Class Members, which will be split *pro rata* between approved claimants after

deductions for Court-approved fees and costs. Even if a relatively high 25-30% of Class Members submit an Approved Claim, payments are expected to be between $385 and $465 each.

Aside from the monetary relief, the Settlement creates non-monetary benefits as well. If Kronos continues to host customer data on its cloud platform, as Plaintiffs allege, Kronos will notify its Illinois Kronos Cloud Customers that they are required to (1) establish a retention and destruction policy and actually comply with that policy by timely deleting data; (2) notify employees, in writing, that their fingerprints are being collected, stored, used, and disclosed by the employer and Kronos and the purposes and length of time for which the fingerprints are being obtained; and (3) obtain a written release from employees authorizing the employer's and Kronos's collection, storage, use, and disclosure of the data. (Agreement § 2.2.)

Finally, beyond this case, the Settlement explicitly preserves all of Plaintiffs' and the Settlement Class's claims against their employers, including BIPA claims. (*Id.* § 1.27.) With this carve-out, Plaintiffs and the Settlement Class may pursue separate BIPA claims against their respective employers who deployed the Kronos timeclocks at issue—individually or on a class basis—for additional monetary relief for any employer's violations of BIPA.

## III. THE REQUESTED ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS ARE REASONABLE AND SHOULD BE APPROVED.

Rule 23 authorizes courts to "award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In common fund settlements like this one, the attorneys' fee award is typically made as a share of the fund. The common fund doctrine "is based on the notion that not one plaintiff, but all 'those who have benefitted from litigation should share its costs.'" *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994). By awarding fees payable from the common fund created for the benefit of the entire class, the court spreads litigation costs proportionately among those who will benefit from the

fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

The Seventh Circuit has consistently directed "that attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services," *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013), taking into account "the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007); *see also In re Synthroid*, 264 F.3d at 719 (cautioning that "any method other than looking to prevailing market rates assures random and potentially perverse results"). In making this determination, "the judge must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members." *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014).

Ultimately, district courts "must set a fee by approximating the terms that [the class and class counsel] would have been agreed to *ex ante*, had negotiations occurred." *Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 246–47 (7th Cir. 2014) (internal quotation marks omitted). Because "[s]uch estimation is inherently conjectural," *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011), and the Seventh Circuit does not prescribe a preferred method of calculation, "in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court." *Americana Art*, 743 F.3d at 247.

Finally, courts in the Seventh Circuit do not include notice and administration costs or incentive awards as part of the fund in making percentage-of-the-fund fee awards. *See Redman*, 768 F.3d at 630 ("The ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members

received.") Here, on November 22, 2022, the Settlement Administrator provided an up-to-date total cost estimate of $611,871.79, so that the Court may award attorneys' fees without unexpected additional expenses coming up later that change the ratio. *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 238 (N.D. Ill. 2016) (Feinerman, J.) (explaining that *total* notice and administration expenses must be deducted from the fund before calculating attorneys' fees). Accordingly, the $4,834,287.22 fee request represents 33% of the Net Settlement Fund, that is, after deducting from the Settlement Fund (1) the $611,871.79 in total notice and administration costs, and (2) the two $7,500.00 proposed incentive awards. (*See* Wade-Scott Decl. ¶¶ 14, 15.)

Class Counsel took this case on a contingent basis despite the high risks of no recovery at the outset. (Wade-Scott Decl. ¶ 3; Declaration of Ryan F. Stephan ("Stephan Decl."), attached hereto as Exhibit 4, ¶ 10.) Now that Class Counsel has achieved the results they did for the Settlement Class, they respectfully request that, after deducting the total amount of notice and administration costs and the proposed incentive awards from the Settlement Fund (i.e., the "Net Settlement Fund"), the Court award Class Counsel 33% of the Net Settlement Fund, or $4,834,287.22 in attorneys' fees and expenses.[4] This request is well in line with what other courts in this District have found a hypothetical *ex ante* bargain to be in BIPA cases as set out in the Charts in Exhibit 2. Accordingly, the requested fees should be approved.

### A. Percentage-of-the-Fund Should be Used to Determine Fees Here.

In the Seventh Circuit, district courts deciding common fund cases may choose one of two methods for awarding attorneys' fees: (1) percentage-of-the-fund or (2) lodestar approach. *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500 (N.D. Ill. 2015). Under the percentage-

---

[4]     The requested fee amount is inclusive of the $46,770.29 in costs fronted by Class Counsel—*i.e.*, Class Counsel is not requesting costs separately. (*See* Wade-Scott Decl. ¶ 12; Stephan Decl. ¶ 25.)

of-the-fund approach, "plaintiffs' attorneys . . . petition the court to recover its fees" as a percentage of the total fund. *Florin*, 34 F.3d at 563. In contrast, the lodestar approach requires district courts to determine the reasonable value of the services rendered and increase that amount by a multiplier that factors in various considerations. Under the lodestar approach, the court first determines a "reasonable hourly rate allowable for each attorney . . . involved in the case." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). Then, the court multiplies "the hours reasonably expended by the reasonable hourly rates" to produce the lodestar. *Id.* Finally, the court increases the lodestar by a multiplier that accounts for other relevant considerations, such as the attorneys' amount of risk in bringing the case or the complexity of the issues. *See id.* (holding that courts should consider from an *ex ante* perspective "what size risk the attorney assumed at the outset by taking this type of case").

While the court has discretion over whether to use the percentage-of-the-fund or lodestar approach, courts typically select a method by looking "to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred." *Kolinek*, 311 F.R.D. at 501. The normal practice in BIPA class actions is, overwhelmingly, "to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery." *Id.*; *see Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the prevailing method of compensating lawyers for similar services is the contingent fee, then the contingent fee *is* the market rate.") (internal quotes omitted). Because the percentage-of-the-fund approach best mirrors typical contingency agreements, it makes sense that "the vast majority of courts in the Seventh Circuit" use it in common fund cases. *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *7 (S.D. Ill. Dec. 16, 2018) (quotation omitted); *see also* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD.

14

811, 814 (2010) ("Most federal judges chose to award fees by using the highly discretionary percentage-of-the-settlement method.").

A percentage-of-the-fund, contingent approach is what the class would have negotiated with Class Counsel at the outset in a hypothetical *ex ante* bargain; in fact, it has been used to determine a reasonable fee award in virtually every BIPA class action settlement in both federal and state courts. (*E.g.*, Exhibit 2.) *See also In re TikTok, Inc., Consumer Priv. Litig.*, No. 20-cv-04699, 2022 WL 2982782 (N.D. Ill. July 28, 2022). In contrast, the lodestar approach has never been used to evaluate fees in these cases, as far as counsel is aware, where the class received a monetary benefit.[5] That makes sense because the lodestar method would have "required a level of monitoring the class members were not interested in or capable of providing," and the percentage approach best "align[s] the incentives of the class[es] and [their] counsel." *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015). Consequently, the percentage-of-the-recovery is the most appropriate method here.

**B.     A 33% Fee Award Is Appropriate Here.**

The Seventh Circuit has instructed district courts to award reasonable attorneys' fees, and that "the measure of what is reasonable is what an attorney would receive from a paying client in a similar case." *Montgomery v. Aetna Plywood*, 231 F.3d 399, 408 (7th Cir. 2000). "[I]n consumer class actions . . . the presumption should . . . be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Gehrich*, 316 F.R.D. at 235 (citing *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014)); *see also* 5 William Rubenstein, NEWBERG ON CLASS ACTIONS § 15:83

---

[5]     The one exception is *Carroll v. Crème de la Crème*, 2017-CH-01624 (Cir. Ct. Cook Cnty.), which produced no monetary recovery for the class and instead provided credit monitoring.

(6th ed.) (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund"). Courts consider, against that presumption, the benefit achieved for the class, the fee awards made in similar cases, the risks that the particular case presented, the quality of the legal work provided, the anticipated work necessary to resolve the litigation, and the stakes of the case. *See Redman*, 768 F.3d at 633 ("[T]he central consideration is what class counsel achieved for the members of the class"); *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) ("[A]ttorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees awarded by the district court."); *see also In re Synthroid*, 264 F.3d at 721.

Considering these factors, the Court can confidently find that a hypothetical *ex ante* negotiation would have resulted in at least the one-third Class Counsel now seek; indeed, in similar BIPA cases, courts in this District have routinely awarded at least 33% of the net fund. (*See* Exhibit 2, Chart 1.) The *ex ante* negotiation could have well resulted in an agreement *higher* than the requested 33%, as numerous other Illinois courts, including those in this District, have awarded as much as 35% of the fund in BIPA cases, (*see id.*, Chart 2), and others have awarded up to 40% of the fund, (*see id.*, Chart 3). *See also Kolinek*, 311 F.R.D. at 503 (in TCPA settlement with $11 million gross fund, awarding 36% of net fund in fees). Accordingly, the requested award is more than appropriate and is what the class would have agreed to in an *ex ante* negotiation. *See Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 201 (N.D. Ill. 2018) ("[A] typical contingency agreement in this circuit might range from 33% to 40% of recovery."). This makes sense given the risk taken on by Class Counsel, who filed this case in early 2019 when vendor liability under BIPA was entirely unsettled.

The Seventh Circuit's recent decision in *In re Stericycle Securities Litigation* does not

call for the use of the "sliding-scale" approach here. 35 F.4th 555 (7th Cir. 2022). In *Stericycle*, the Seventh Circuit reversed a fee award of 25% of a $45 million fund because the district court failed to consider the existence of an actual *ex ante* fee agreement between the parties that included a sliding-scale formula. *Id.* at 560. The Seventh Circuit also noted how the district court failed to give sufficient weight to how early in the litigation the parties settled and how prior litigation with the defendant reduced counsel's risk of non-payment. *Id.* None of that is present here—the only *ex ante* fee agreements available (to the extent they're useful) are Plaintiffs' retention agreements that provide for a percentage of the total recovery in fees (not a sliding scale), the Parties litigated this case tooth and nail for over three years before finally settling, and, at the time of filing, there was no blueprint for successfully litigating a BIPA vendor case, especially one of this magnitude. In any event, "*Stericycle* did not create a general presumption in favor of a sliding-scale approach for large cases." *In re TikTok, Inc.*, 2022 WL 2982782, at *27 (awarding 33.3% of $87 million net fund). Rather, it merely "spoke approvingly of using a sliding-scale approach in cases where an actual *ex ante* fee agreement also has adopted a sliding-scale formula," *id.*, which reaffirms decades of Seventh Circuit precedent—that fee awards must "reflect the market-based approach." *In re Stericycle Sec. Litig.*, 35 F.4th at 560.

The appropriateness of a 33% fee award here is further justified by (1) the substantial risk that Class Counsel took on in accepting the case, and (2) the excellent relief Class Counsel ultimately obtained for the Settlement Class.

                **1.**      **This case presented serious obstacles to recovery, and Class Counsel litigated the case mindful of the high possibility that the class might recover nothing.**

In a hypothetical *ex ante* negotiation, it would be apparent to the client that at least a 33% contingent fee would be appropriate considering the significant risk Class Counsel took on in

litigating a case mired in issues of first impression. (Wade-Scott Decl. ¶ 3; Stephan Decl. ¶ 10.) Compared to typical contingent-fee litigation, the risks here were particularly acute at the outset because the parties were likely to litigate a number of issues that are either still being resolved by the courts or were matters of first impression, as demonstrated by the number of issues Class Counsel have already litigated in this case. *See Silverman*, 739 F.3d at 958 ("Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."). Class Counsel filed this case aware of these risks but confident in their ability to achieve a superior result for the class—which they ultimately did.

Although these risks are inherent in any contingent-fee litigation, class actions especially, there are particularly acute risks here, considering the relative infancy of BIPA. *See Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1106 (N.D. Ill. 2015) ("The BIPA was enacted in 2008, and to this date, the Court is unaware of any judicial interpretation of the statute.") At the time of filing, no court had considered BIPA claims against a vendor of biometric timekeeping technology. And a few months after filing, courts began to express considerable skepticism that vendors could be liable under BIPA at all. *See Bernal v. ADP*, 2017-CH-12364 (Cir. Ct. Cook Cnty. Aug. 23, 2019) (Atkins, J.), attached hereto as Exhibit 5. Other courts joined that position to some degree, depending on how the claims were pleaded. *Cameron v. Polar Tech Indus., Inc. and ADP, LLC*, 2019-CH-000013 (Cir. Ct. DeKalb Cnty. Aug. 23, 2019); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285–86 (N.D. Ill. Nov. 22, 2019). With the liability of vendors an unresolved issue, the risks that Class Counsel took on here were significant. Nonetheless, Class Counsel forged ahead and eventually defeated Kronos's arguments that BIPA doesn't apply to vendors like itself. *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 784-85 (N.D.

Ill. 2020) ("As to other decisions in this District, they are split on the question whether BIPA governs outside vendors like Kronos in the employment context … The state of the law is by no means 'unanimous' and this court is persuaded that the understanding of Section 15(b) set forth above comports with the ordinary meaning of the word 'obtain' …").

Even setting aside that case-dispositive issue, there were other major questions that increased the risk of nonpayment. For example, given the functionality of the widely-used fingerprint-scanning technology at issue, Class Counsel pursued this case knowing full well that Kronos would argue at summary judgment that its timeclock systems didn't collect "biometric identifiers" or "biometric information" as defined by BIPA. *See* 740 ILCS 14/10 (defined, in relevant part, as a "fingerprint" or "information . . . based on an individual's [fingerprint] used to identify an individual"). Rather, Kronos would argue, its scanners collect a fingerprint "template," consisting of a string of numbers and letters that isn't regulated by the statute at all. This question is the subject of dispute in existing BIPA cases and hasn't yet been resolved by the courts. *Cf. In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-CV-03747-JD, 2018 WL 2197546, at *2–3 (N.D. Cal. May 14, 2018) (denying motion for summary judgment on whether facial scans were biometric data regulated by BIPA); *Howe v. Speedway LLC*, No. 19-cv-01374, dkts. 125, 140, 149 (N.D. Ill.) (fully briefed motion for summary judgment on this issue in a fingerprint scan case). Although Class Counsel puts no stock in this argument, it is an issue ungoverned by precedent, and if Kronos were to win on it at summary judgment or trial, Plaintiffs' case would be defeated entirely, sinking Class Counsel's substantial investment of time and effort in this case.

Moreover, when this case was filed, it was still unclear what statute of limitations applies to BIPA claims: a one-, two-, or five-year period. Class Counsel nonetheless expended

19

significant resources on this case knowing that if a one-year limitations period applied, a vast majority of the putative class's claims would be time-barred, drastically reducing the size of the class and, in turn, the potential fees to Class Counsel. Although the First District in *Tims v. Black Horse Carriers, Inc.* clarified the applicable limitations periods—finding that a five-year limitations period applies to claims brought under sections 15(a) and (b) of BIPA, *see* 2021 IL App (1st) 200563—the question remains as the Illinois Supreme Court is expected decide the issue in the near future. 2022 IL 127801. The Illinois Supreme Court will also soon decide whether BIPA claims accrue, for statute of limitations purposes, upon a plaintiff's first biometric scan or the last—another issue that was unknown at the time of filing that could change the scope of this case. *Cothron v. White Castle Systems, Inc.*, No. 128004.

Class certification also remains unanswered, as does the class's ability to actually recover—post-trial—what would be massive damages against Kronos. *See, e.g., Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022) (in TCPA case, vacating district court's denial of defendant's post-trial motion challenging the constitutionality of $925 million statutory damages award under TCPA and remanding for further proceedings); *but see United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020), *cert. dismissed*, 141 S. Ct. 729 (2021) (statutory award of $280 million for violating various telemarketing statues over 65 million times did not violate due process). Finally, it is not unprecedented for legislation to be amended while a class action is pending in a way that threatens the class's entire recovery. *See Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 629–30 (E.D.

Mich. 2017) (evaluating the retroactive effect of legislative amendment on pending class action).[6]

Class Counsel accepted this case understanding that a single loss on any of these fronts would decimate the Class's—and Class Counsel's—ability to get paid. In light of those risks, it is appropriate to award 33% of the Net Settlement Fund in attorneys' fees. *See Kolinek*, 311 F.R.D. at 502–03 (adding 6% risk premium to attorneys' fees "based on the degree of effort the attorneys would need to put in, the likelihood of success, and the risks associated with undertaking class representation" when case was filed).

### 2. Class Counsel achieved an excellent result for the class.

Given the large number of unresolved questions in BIPA vendor cases, and the possibility that the Settlement Class would recover nothing at all, the relief secured by Class Counsel is exceptionally strong. It is appropriate, too, for the Court to consider the actual result achieved—both as a function of the quality of Class Counsel's work, and because litigants often consider the ultimate degree of success in determining a fee schedule. *See Americana Art*, 743 F.3d at 247.

The $15,276,227.00 fund secured for 84,193 class members is among the highest per-person relief secured in a BIPA case against a biometric technology vendor. *See Thome v. NOVAtime Tech., Inc.*, No. 19-cv-6256, dkt. 90 (N.D. Ill. Mar. 8, 2021) ($4.1 million fund plus assignment of insurance policies for 62,000 class members); *Kusinski v. ADP LLC*, 2017-CH-

---

[6]     For example, over the past two years, at least ten bills have been introduced in the Illinois Legislature to either repeal BIPA or amend it in a way that guts its protections. *See* H.B. 559, 102nd Gen. Assembly (Ill. 2021); H.B. 560, 102nd Gen. Assembly (Ill. 2021); H.B. 1764, 102nd Gen. Assembly (Ill. 2021); H.B. 3112, 102nd Gen. Assembly (Ill. 2021); H.B. 3304, 102nd Gen. Assembly (Ill. 2021); H.B. 3414, 102nd Gen. Assembly (Ill. 2021); S.B. 56, 102nd Gen. Assembly (Ill. 2021); S.B. 300, 102nd Gen. Assembly (Ill. 2021); S.B. 1607, 102nd Gen. Assembly (Ill. 2021); S.B. 3874, 102nd Gen. Assembly (Ill. 2022).

12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) ($25 million fund for approximately 320,000 class members); *Neals v. ParTech, Inc.*, No. 19-cv-05660, dkt. 140 (N.D. Ill. July 20, 2022) ($790,000 fund for 3,560 class members); *LaBarre v. Ceridian HCM, Inc.*, 2019-CH-06489 (Cir. Ct. Cook Cnty.) (preliminarily approving $3,493,074.00 fund for 14,142 class members); *see also Bryant v. Compass Grp. USA, Inc.*, No. 19-cv-06622, dkt. 125 (N.D. Ill. Sept. 8, 2022) (approving $6.8 million settlement for 66,159 class members, which releases both the vendor of the biometric technology and all of its customers).

Here, assuming the continued trend of claims rates between 25-30% when the class is properly notified, claiming Class Members will receive individual payments of approximatively $385 to $465 each. Against a backdrop where many privacy claims under similar statutes settled for pennies on the dollar or no monetary relief at all, this is an exceptional result. *See, e.g.*, *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 740 (9th Cir. 2017), *vacated on other grounds by Frank v. Gaos*, 139 S. Ct. 1041 (2019) (approving 25% award of attorneys' fees on *cy pres*-only fund with not a penny to class members); *In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of the Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA, dkts. 350, 369 (N.D. Cal. May 6, 2021 and July 13, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs).

This result is even more impressive when considering that the Settlement's release preserves Class Member's separate BIPA claims against their employers who deployed the Kronos timeclocks. (Agreement § 1.27 (the Released Parties "expressly excludes any of

Defendant's customers").) That means each Class Member will retain any separate BIPA claims they have against the Kronos customers who employed them and separately collected or stored the same biometric data without complying with BIPA. This is significant because scores of prior BIPA settlements released both the employer claims and the vendor claims together, with no additional compensation for the release of two sets of claims. This carve-out enables Class Members to vitiate the full scope of their privacy rights under BIPA, rather than, as in other cases, forcing Class Members to make a choice about which violations to pursue.

Finally, aside from the monetary relief, the non-monetary benefits created by the Settlement further support the requested fee award. Per the Settlement Agreement, Kronos will require its Illinois Kronos Cloud Customers to obtain written, informed consent from their employees, inform their employees that the employer and Kronos are collecting their biometric data, and establish a retention and deletion schedule for employee biometric data with which they will comply. This non-monetary result is also properly considered for purposes of determining fees. *See Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973).

Ultimately, the monetary and non-monetary relief recovered on behalf of the Settlement Class warrants approving the requested 33% of the monetary benefits of the Net Settlement Fund as attorneys' fees.

### 3. A lodestar cross-check confirms the reasonableness of the requested fees.

While the Settlement Class would not have agreed to calculate fees using the lodestar method, and the Court need not perform a lodestar "cross-check" to confirm the reasonableness of the fee award, analyzing the fee award under the lodestar method further confirms its reasonableness. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("[C]onsideration of a lodestar check is not an issue of required methodology.") (citing *Cook v.*

*Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach.")). A lodestar analysis is properly based on Class Counsel's current hourly rates. *See Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 647 (7th Cir. 2016).

Class Counsel performed substantial work in this litigation, totaling thousands of attorney and staff hours already. The individuals primarily responsible for the case, along with their years of experience, rates and hours worked are provided in the Declarations of J. Eli Wade-Scott and Ryan F. Stephan. (Wade-Scott Decl. ¶ 10; Stephan Decl. ¶ 19.) As those declarations demonstrate, the value of Class Counsel's services to the class amounts to $1,362,670.00 through the present.[7][8] (*Id.*) Class Counsel has also incurred unreimbursed expenses of $46,770.29, which are encompassed in the attorneys' fee request—i.e., Class Counsel are not seeking expenses separately. (Wade-Scott Decl. ¶ 12; Stephan Decl. ¶ 25.)

Calculating Class Counsel's base lodestar amount is only one part of the inquiry, however, in determining a reasonable fee award under this approach. The base lodestar amount is increased by a "multiplier . . . designed to reflect the fact that, no matter how many hours were invested, there was, at the outset, the possibility of no recovery." *Harman*, 945 F.2d at 976. A multiplier, accordingly, should be added to reflect the risk that Class Counsel faced in undertaking the litigation, which is discussed above. *See id.* Typically, courts apply a risk multiplier of between 1 and 4. *See* 5 William B. Rubenstein, NEWBERG ON CLASS ACTIONS

---

[7]     The attorney and staff time spent on this fee petition and its supporting documents has been excluded from Class Counsel's submitted lodestar. *Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1247 (N.D. Ill. 1993) ("As we have noted in our past opinions determining fee awards, we do not feel that it is appropriate to compensate attorneys for the time spent preparing the fee petition and supporting documentation.").

[8]     Class Counsel will supply detailed billing records for *in camera* review upon request.

§ 15:87 (6th ed.); *see also Harman*, 945 F.2d at 976 ("Multipliers anywhere between one and four… have been approved.").

Here, Class Counsel requests a total of $4,834,287.22 in attorneys' fees and costs from the Settlement Fund, which amounts to a multiplier of their base lodestar of 3.5. Given the substantial risks Class Counsel took on and the exceptional result they achieved, the award is appropriate.

## IV.  THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE AWARDS.

The Settlement Agreement also provides for incentive awards of $7,500.00 to each of the named Plaintiffs, Charlene Figueroa and Jermaine Burton, for serving as class representatives. Incentive awards are appropriate in class actions to compensate individuals for stepping up to protect the interests of a broader class and spending their own time to achieve benefits for the class as a whole. *Cook*, 142 F.3d at 1016.

Here, Ms. Figueroa's and Mr. Burton's participation was critical to the case's ultimate resolution. Their willingness to commit time to this litigation and undertake the responsibilities involved in representative litigation resulted in a substantial benefit to the Settlement Class and fully justifies the requested incentive awards. Throughout the case, they expended time and effort conferring with Class Counsel, providing information to Class Counsel to prepare the pleadings, reviewing the Complaint before filing, preparing and sitting for their depositions, responding to Kronos's interrogatories, helping to collect documents to produce in discovery, and reviewing and approving the Settlement Agreement before signing it. (Wade-Scott Decl. ¶¶ 16, 17; Stephan Decl. ¶ 28.) These efforts from Ms. Figueroa and Mr. Burton were necessary to secure the $15,276,227 Settlement Fund for the Settlement Class. (*Id.*) They were also willing to attach their names to this litigation against Kronos and allow it to be transmitted via class notice

25

to over 80,000 people, subjecting themselves to "scrutiny and attention" which is "certainly worth some remuneration." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 601 (N.D. Ill. 2011).

As a monetary matter, Plaintiffs' requested incentive awards are eminently reasonable: they're in line with the amounts awarded to plaintiffs in numerous other privacy cases, including BIPA cases, *see Thome*, No. 19-cv-6256, dkt. 90; (Exhibit 2, Chart 3), and a fraction of the amounts often awarded in BIPA class settlements in this District and in other class settlements by this Court. (*See* Exhibit 2, Chart 3 (listing incentive awards in BIPA cases in this District between $7,500.00 and $10,000.00).) *See In re Akorn, Inc. Secs. Litig.*, No. 1:15-cv-01944, dkt. 182 (N.D. Ill. June 5, 2018) (Feinerman, J.) (awarding three $10,000.00 incentive awards in securities case); *Nistra v. Reliance Tr. Co.*, No. 1:16-cv-04773, dkt. 291 (N.D. Ill. June 19, 2020) (Feinerman, J.) ($25,000.00 incentive award in ERISA case). Accordingly, Plaintiffs' incentive awards should be granted.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs Charlene Figueroa and Jermaine Burton respectfully request that this Court enter an order (1) granting Class Counsel's request for an award of attorneys' fees and expenses in the amount of $4,834,287.22; (2) awarding Plaintiff Figueroa a $7,500.00 incentive award and awarding Plaintiff Burton a $7,500.00 incentive award; and (3) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**CHARLENE FIGUEROA AND JERMAINE BURTON,** individually and on behalf of all others similarly situated

Dated: November 22, 2022

By: /s/ J. Eli Wade-Scott
One of Plaintiffs' attorneys

Jay Edelson
jedelson@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

James B. Zouras
jzouras@stephanzouras.com
Ryan F. Stephan
rstephan@stephanzouras.com
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza
Suite 2150
Tel: 312.233.1550
Fax: 312.223.1560