**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHARLENE FIGUEROA and JERMAINE BURTON, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-01306 |
| *Plaintiffs,* | Honorable Gary S. Feinerman |
| v. | |
| KRONOS INCORPORATED, | |
| *Defendant*. | |

**PLAINTIFFS' MOTION FOR AND MEMORANDUM IN SUPPORT OF**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.      **INTRODUCTION**.................................................................................................1

II.     **BACKGROUND**.................................................................................................2

      A.    **Nature of the Litigation**.....................................................................2

      B.    **The Claims**.........................................................................................3

      C.    **Procedural History**............................................................................4

III.    **TERMS OF THE SETTLEMENT AGREEMENT**......................................6

      A.    **Class Definition**................................................................................6

      B.    **Monetary Relief**................................................................................6

      C.    **Prospective Relief**.............................................................................7

      D.    **Payment of Settlement Notice and Administrative Costs**.................8

      E.    **Attorneys' Fees and Incentive Awards**.............................................8

      F.    **Release**...............................................................................................8

IV.    **THE CLASS NOTICE FULLY SATISFIED DUE PROCESS**....................9

V.     **CERTIFICATION OF THE SETTLEMENT CLASS SHOULD BE CONFIRMED FOR PURPOSES OF FINAL APPROVAL**...................................................11

VI.    **THE SETTLEMENT WARRANTS FINAL APPROVAL**.........................11

      A.    **Plaintiffs and Class Counsel have Adequately Represented the Class**..........13

      B.    **The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations**......................................................................................15

      C.    **The Settlement Treats Class Members Equally**.............................16

      D.    **The Relief Secured for the Settlement Class is Adequate and Warrants Final Approval**........................................................................................17

            1.    *The Relief Provided by the Settlement is Excellent*.................18

        2.      **The Cost, Risk, and Delay of Further Litigation Compared to the Settlement's Benefits Favors Final Approval** ........................................... 20

        3.      **The Method of Distributing Relief to the Class Members is Effective and Supports Final Approval** ......................................................... 23

        4.      **The Terms of the Requested Attorneys' Fees are Reasonable** .............. 24

    E.      **The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement** ............................................................... 25

        1.      **The Reaction of the Settlement Class Favors Approval** ......................... 26

        2.      **Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval** ............................................... 27

        3.      **The Settlement Raises No Red Flags** .................................................... 28

**VII.**    **CONCLUSION** ........................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court Cases**

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)............................................................................9

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)..........................................................................16

**United States Circuit Court of Appeals Cases**

*Cothron v. White Castle System, Inc.*,
    No. 20-3202 (7th Cir.) ..................................................................5, 22

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ......................................................26, 28

*Fox v. Dakkota Integrated Systems, LLC*,
    980 F.3d 1146 (7th Cir. 2020) ...........................................................4

*Golan v. FreeEats.com, Inc.*,
    930 F.3d 950 (8th Cir. 2019) ............................................................23

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019) ..........................................................22

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ......................................................11, 27

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ...........................................................11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ...........................................................12

*Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*,
    309 F.3d 978 (7th Cir. 2002) ...........................................................12

*United States v. Dish Network L.L.C.*,
    954 F.3d 970 (7th Cir. 2020) ...........................................................23

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) ..........................................................23

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ................................................................ *passim*

**United States District Court Cases**

*Alvarado v. Int'l Laser Prods., Inc.*,
    No. 18-cv-7756 (N.D. Ill. Jan. 24, 2020) ..........................................25

*Bryant v. Compass Group USA, Inc.*,
    No. 19-cv-06622 (N.D. Ill. Nov. 2, 2021) ..........................................19

*Chambers v. Together Credit Union*,
    No. 19-CV-00842-SPM, 2021 WL 1948453 (S.D. Ill. May 14, 2021) .............................13

*Cooks v. TNG GP*,
    No. 2:16-cv-01160-KJM-AC, 2021 WL 5139613 (E.D. Cal. Nov. 4, 2021) ..................15

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
    No. 18-cv-7018 (N.D. Ill Sept. 20, 2020) ..........................................20

*Crumpton v. Octapharma Plasma, Inc.*,
    No. 19-cv-08402 (N.D. Ill. Feb. 16, 2022) ...........................................24, 25, 26

*Dixon v. Washington Jane Smith Home*,
    No. 17-cv-8033 (N.D. Ill.) ..........................................6

*Goldsmith v. Tech. Sols. Co.*,
    No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) .........................................20

*Howe v. Speedway LLC*,
    No. 19-cv-01374 (N.D. Ill.) ..........................................21

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) ..........................................17, 23

*In re Facebook Biometric Info. Priv. Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. 2021) ..........................................26

*In re Google LLC Street View Elec. Commc'ns Litig.*,
    No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)..........................18

*In re NCAA Student-Athlete Concussion Injury Litig.*,
    332 F.R.D. 202 (N.D. Ill. 2019)..........................................12

*In re TikTok, Inc., Consumer Priv. Litig.*,
    No. 20-cv-04699, 2022 WL 2982782 (N.D. Ill. July 28, 2022) .........................................25

*Martinez v. Nando's Rest. Grp., Inc.*,
   No. 19-cv-07012 (N.D. Ill. Oct. 27, 2020) .......................................................20

*Neals v. ParTech, Inc.*,
   No. 19-cv-05660 (N.D. Ill. July 20, 2022).................................................25, 26

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ..........................27

*Schulte v. Fifth Third Bank*,
   No. 09-CV-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) .......................16

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) .....................................................9, 21, 27

*Snyder v. Ocwen Loan Servicing, LLC*,
   No. 14 c 8461, 2018 WL 4659274 (N.D. Ill. Sept. 28, 2018)............................13

*Snyder v. Ocwen Loan Servicing, LLC*,
   No. 14 c 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ......................12, 16

*Thome v. NOVAtime Tech., Inc.*,
   No. 19-cv-6256 (N.D. Ill. Mar. 8, 2021).................................................19, 27

**State Appellate Court Cases**

*Tims v. Black Horse Carriers, Inc.*,
   2021 IL App (1st) 200563 ................................................................5, 22

**State Circuit Court Cases**

*Carroll v. Crème de la Crème, Inc.*,
   No. 2017-CH-01624 (Cir. Ct. Cook Cnty. June 6, 2018) .................................18

*Diaz v. Greencore, Inc.*,
   2017-CH-13198 (Cir. Ct. Cook Cnty.) ............................................................6

*Fluker v. Glanbia Performance Nutrition, Inc.*,
   No. 2017-CH-12993 (Cir. Ct. Cook. Cnty.) ...........................................19, 20

*Kusinski v. ADP LLC*,
   2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) ................................19, 27

*LaBarre v. Ceridian HCM, Inc.*,
   2019-CH-06489 (Cir. Ct. Cook Cnty. May 18, 2022) ................................19, 26

*Lark, et al. v. McDonald's USA, LLC, et al.*,
    No 17-L-559 (Cir. Ct. St. Clair Cnty. Nov. 29, 2021) ....................................................18

*Mazurkiewicz v. Mid City Nissan*,
    No. 2018-CH-09798 (Cir. Ct. Cook Cnty.) ...................................................................20

*Prelipceanu v. Jumio Corp.*,
    2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020).......................................................27

*Rosenbach v. Six Flags Ent. Corp.*,
    2016-CH-00013 (Cir. Ct. Lake Cnty. Oct. 29, 2021) .......................................................18

*Sekura v. L.A. Tan Enters., Inc.*,
    2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016)...................................................26, 27

**Miscellaneous Authority**

4 NEWBERG ON CLASS ACTIONS
    § 13:53 (6th ed.)..............................................................................................23

740 ILCS 14 ................................................................................................ *passim*

*Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*,
    FED. TRADE COMM'N (Sept. 2019) ...................................................................26

Federal Judicial Center,
    *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide
    2010*, available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf .............................9

Fed. R. Civ. P. 23 .......................................................................................... *passim*

Illinois House Transcript, 2008 Reg. Sess. No. 276 ......................................................3

## I.  INTRODUCTION

Plaintiffs Charlene Figueroa and Jermaine Burton brought this class action against Kronos Incorporated, the provider of a cloud-based timekeeping system with an attached finger scanner used by many employers of hourly workers in many locations across Illinois. Plaintiffs alleged that Kronos violated the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, by collecting and storing their and other Illinois workers' fingerprints without their consent, and by failing to create and abide by a publicly-available retention and deletion policy for biometric data. After years of contentious litigation that included substantial motion practice and extensive written and oral fact discovery, the Parties reached a Settlement, which the Court preliminarily approved on February 18, 2022. (Dkt. 358.) The Settlement provides substantial monetary relief, distributed equitably through a simple claims process, following a comprehensive direct notice program that resulted in an outstanding claims rate. Now that notice to the Settlement Class is completed and not a single individual objected and only one person requested to be excluded, Plaintiffs request that this Court grant final approval to this exceptional Settlement.[1]

In terms of monetary relief, the Settlement creates a $15,276,227.00 non-reversionary Settlement Fund for the 81,910 class members to be split *pro rata* among those who filed Approved Claims. Unsurprisingly, given the comprehensive notice that directly reached 95.4% of the class and outstanding relief available, the Settlement has seen an excellent participation rate: 21,933 Approved Claims have been submitted, for a claims rate of 26.78%. As a result, those Class Members are expected to receive payments of approximately $445 each. Although part of a growing trend of increased participation in class settlements, this far exceeds historical

---

[1] The capitalized terms used in this motion are those used in the Stipulation of Class Action Settlement (the "Settlement" or "Agreement"), attached hereto as Exhibit 1.

claims rates in consumer class actions, which rarely see rates in the double digits. The Settlement further provides non-monetary benefits: if Kronos continues to host finger-scan data, it will be required to notify its employer-customers that they need to establish and comply with a retention and deletion schedule in line with BIPA and obtain an informed written release from their employees permitting the employer-customer and Kronos to collect, store, use, and/or disclose their finger-scan data. Finally, the Settlement explicitly preserves Plaintiffs' and the Settlement Class's claims against their employers (i.e., Kronos' customers), meaning the Settlement Class can pursue separate BIPA claims for additional monetary relief for their employer's collection of their finger-scan data.

For these reasons, and as detailed below, this Settlement is exceptional. The factors to be considered under Rule 23 when determining whether to grant final approval to a class settlement weigh strongly in favor of approving this one. Thus, the Court may appropriately grant final approval.

## II.    BACKGROUND

Though Plaintiffs have detailed the case background in their preliminary approval motion and motion for attorneys' fees (dkts. 342, 374), it is set forth in brief below for ease of reference.

### A.    Nature of the Litigation

BIPA was passed after the bankruptcy of a company called Pay By Touch, which had partnered with gas stations and grocery stores in Illinois to install checkout terminals that used fingerprint scanners linked to bank accounts to make purchases. (Compl., dkt. 1-1 ¶¶ 12–13.) When Pay By Touch's parent company declared bankruptcy at the end of 2007, it began shopping its database of Illinois consumers' fingerprints as an asset to its creditors. (*Id.* ¶ 13.) This decision was met with public backlash, and while a bankruptcy court ultimately ordered the

destruction of the database, the Illinois legislature recognized the "very serious need" to protect Illinois citizens' biometric data. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276. Therefore, in 2008, the Illinois legislature unanimously passed BIPA, which makes it unlawful for any private entity to collect and store consumers' biometric data unless it first (i) obtains their informed written consent, (ii) provides details related to the data's purpose and storage, and (iii) establishes and complies with a publicly-available retention and destruction policy. *See id.*; 740 ILCS 14/15(a), (b). If a company fails to comply with BIPA's provisions, the statute provides for a civil private right of action allowing consumers to recover $1,000 for negligent violations or $5,000 for willful violations, plus costs and reasonable attorneys' fees. 740 ILCS 14/20.

### B.    The Claims

The Court provided an accurate (and concise) summary of the claims and conduct at issue in its ruling on Kronos' motion to dismiss:

> Kronos is a provider of human resource management software and services. Doc. 1-1 at ¶ 1. As part of its business, Kronos provides timekeeping systems to thousands of employers in Illinois. *Ibid.* Those systems include biometric-based time clocks, which require employees to use their biometric information to punch in and out of work. *Id.* at ¶ 2.

> When beginning work for an employer that uses a Kronos biometric timekeeping device, an employee must have her fingerprint or palm print scanned to enroll in the Kronos database. *Id.* at ¶ 25. Kronos does not inform those employees that it is collecting, storing, or using their biometric data. *Id.* at ¶¶ 26-27. Nor does Kronos inform them of the purposes for collecting their data or to whom the data is or will be disclosed. *Ibid.* Kronos does not maintain retention schedules or guidelines for permanently destroying the data. *Id.* at ¶¶ 28, 32. Kronos has not destroyed biometric data when the initial purpose for obtaining it has been satisfied or within three years of an employee's last interaction with her employer. *Id.* at ¶ 32. Employees are not told whether and to whom Kronos discloses their data or what would happen to the data in the event of a Kronos merger or bankruptcy. *Id.* at ¶ 33.

(Dkt. 128 at 2.) Based on the substantial discovery they obtained in this case, Plaintiffs still believe these allegations to be accurate. Kronos, for its part, has denied any violation of BIPA. (*See* Def.'s Am. Ans., dkt. 278.)

### C. Procedural History

Plaintiffs originally filed this case on January 18, 2019, against Kronos in the Circuit Court of Cook County, Illinois. Kronos removed this case and another substantively identical case led by a different plaintiff to this Court. (Dkt. 1.) Plaintiffs then moved to consolidate the cases and for their counsel—Edelson PC and Stephan Zouras LLP—to be appointed interim class counsel, which the Court granted. (Dkts. 37, 55.)

On April 15, 2019, Kronos moved to dismiss and to strike the Complaint's class allegations, which the Court denied after full briefing. (Dkts. 29, 30, 32, 33, 50, 51, 62, 63, 128.) In its order, the Court requested supplemental briefing on whether Plaintiffs had standing to bring their claims under 740 ILCS 14/15(a) in federal court, which the Parties submitted. The Court then severed Plaintiffs' 15(a) retention claims and remanded them to state court but allowed the 15(b) collection claims to proceed in this Court. (Dkt. 150.) After the Seventh Circuit's decision in *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146 (7th Cir. 2020), Kronos re-removed the remanded portion of the case, which was then re-consolidated. (Dkt. 179.)

On May 12, 2020, Kronos answered the Complaint (dkt. 136), and the Parties began written discovery shortly thereafter. Throughout discovery, the Parties sought the Court's intervention on several discovery disputes, including the proper scope of Kronos's production of class-related discovery (dkts. 155, 166), whether Kronos could seek discovery about unnamed putative class members (dkts. 173, 179, 234), and whether Kronos was entitled to discovery in

4

support of its equitable and implied consent defenses (i.e., whether or not Plaintiffs provided something less than informed written consent to collect their biometric data) (dkts. 259, 261).

Given the last-described discovery dispute, Plaintiffs moved to strike Kronos' equitable and implied consent defenses, (dkt. 267), which the Court granted without prejudice (dkt. 276). Kronos then amended its answer and those defenses, (dkt. 278), and Plaintiffs again moved to strike them (dkt. 285). The Court denied Plaintiffs' motion this time around but reserved ruling on the merits of Kronos' defenses. (Dkt. 307.) While the Parties briefed the motions to strike, Kronos also moved stay the case pending the Seventh Circuit's ruling in *Cothron v. White Castle System, Inc.*, No. 20-3202 (7th Cir.) and the Illinois Appellate Court's decision in *Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563. (Dkt. 279.) The Court denied the motion on April 29, 2021. (Dkt. 288.)

Throughout discovery, Kronos ultimately produced over 120,000 pages of documents and ESI to Plaintiffs, and Plaintiffs deposed seven Kronos employees. Plaintiffs also sat for their own depositions. Nearing the end of fact discovery, the Parties agreed in July 2021 that a mediation would be productive, and they participated in a full-day mediation with Judge James F. Holderman (Ret.) of JAMS on August 31, 2021. Though the Parties made significant progress during the mediation, they did not reach a deal and returned to litigation. However, they continued to work toward settlement, including by exchanging a number of drafts of a binding Memorandum of Understanding and engaging in several telephone and Zoom conferences beginning in mid-September 2021 and through mid-October 2021. After dozens of emails, phone calls, and numerous rounds of edits on the draft, the Parties executed a binding Memorandum of Understanding on October 20, 2021. After additional negotiations, the final Settlement Agreement was executed by the Parties on January 20, 2022. Plaintiffs then promptly moved for

preliminary approval of the settlement (dkt. 342), which the Court granted on February 18, 2022

(dkt. 358). Most recently, Class Counsel moved for attorney's fees, expenses, and Plaintiffs'

incentive awards on November 22, 2022 (dkt. 374), which was promptly posted on the

Settlement Website. (*See* Declaration of Paul Ferruzzi ("Ferruzzi Decl."), attached as Exhibit 2,

at ¶ 8.)

## III.   TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth in the Stipulation of Class Action Settlement,

(Ex.1), and are briefly summarized here:

**A.**   **Class Definition:** In the Preliminary Approval Order, the Court certified for

settlement purposes a Settlement Class of "[a]ll persons who used a Kronos brand time clock

with a finger sensor attachment for timekeeping purposes in Illinois and whose finger-scan data

was hosted by Kronos between January 18, 2014, and [March 20, 2022]."[2] (Dkt. 358 ¶ 3.) There

are 80,910 members of the Settlement Class.[3] (*See* Ferruzzi Decl. ¶ 6.)

**B.**   **Monetary Relief:** Kronos has established a non-reversionary Settlement Fund of

$15,276,227.00 for the benefit of the Settlement Class. Each Class Member who submitted an

---

[2]      Excluded from the Settlement Class are: (1) any Judge or Magistrate presiding over this action and members of their families, (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, (3) persons who properly execute and file a timely request for exclusion from the Settlement Class, (4) the legal representatives, successors, heirs, or assigns of any such excluded persons, (5) individuals who only scanned at (i) a State or local government agency; (ii) a banking institution subject to Title V of the federal Gramm-Leach Bliley Act of 1999; or (iii) a court of Illinois, a clerk of the court, or any judge or justice thereof, and (6) persons who were members of the settlement class in the *Diaz v. Greencore, Inc.*, 2017-CH-13198 (Cir. Ct. Cook Cnty.) and *Dixon v. Washington Jane Smith Home*, No. 17-cv-8033 (N.D. Ill.) settlements. (*Id.*)

[3]      On October 28, 2022, the Settlement Administrator mistakenly informed Class Counsel that the final class list included 84,193 individuals, 81,910 of which had an available mailing address or email address. (Ferruzzi Decl. ¶ 6.) Plaintiffs reported those figures in their motion for attorneys' fees, expenses, and incentive awards. (Dkt. 374.) However, the correct total class size is 81,910 individuals, 80,349 of which had an available mailing address or email address. (Ferruzzi Decl. ¶ 6.)

Approved Claim will be entitled to a *pro rata* portion after payment of notice costs, administrative expenses, and any attorneys' fees and incentive awards approved by the Court. (Agreement §§ 1.15, 1.35, 1.36, 2.1(a).) Should the Court approve Plaintiffs' requested attorneys' fees and incentive awards, and given the remarkable 26.78% claims rate, each Class Member who submitted an Approved Claim can expect to receive a Settlement Payment for approximately $445. Any uncashed checks or electronic payments unable to be processed within 120 days of issuance will first be redistributed to Class Members who cashed their first checks or successfully received their first electronic payments, if feasible and in the interests of the Settlement Class. (Dkt. 358 ¶ 24.) If redistribution is not feasible or if residual funds remain in the Settlement Fund after redistribution, such funds will, subject to Court approval, be provided as *cy pres* to Legal Aid Chicago (earmarked for workers' rights representation) and the American Civil Liberties Union of Illinois (earmarked to support its Government Accountability and Personal Privacy efforts, which advocates to protect Illinoisans' privacy rights) or any other appropriate entity agreed upon by the Parties and approved by the Court. (Agreement § 2.1(f).)

  **C.**   **Prospective Relief:** Kronos has also agreed to implement prospective measures related to the finger-scan time clocks it provides to Illinois Kronos Cloud Customers and has agreed to implement them by the Effective Date. (*Id.* § 2.2.) Specifically, Kronos will notify its Illinois customers who send finger-scan data to its cloud platform that they are required to: (1) establish a retention and destruction schedule that complies with BIPA and follow that schedule with timely data deletion; (2) notify the subjects of collection, in writing, that finger-sensor data, which may be considered biometric information under BIPA, is being collected, stored, used, and disclosed by the Illinois Kronos Cloud Customer and/or Kronos; (3) notify the subjects of collection in writing of the purposes and length of term that finger-sensor data is being collected,

stored, used and disclosed; and (4) obtain a written release to the collection, storage, use, and disclosure by the Illinois Kronos Cloud Customer and by Kronos. (*Id.*)

**D.** **Payment of Settlement Notice and Administrative Costs:** Defendant has agreed to pay from the Settlement Fund all expenses incurred by the Settlement Administrator in providing notice, administering the Settlement, creating and maintaining the Settlement Website, receiving and processing Claim Forms, dispersing Settlement Payments, related tax expenses, fees of the escrow agent, and any other related expenses. (*Id.* § 1.30.)

**E.** **Attorneys' Fees and Incentive Awards:** Defendant has agreed to pay reasonable attorneys' fees in an amount determined by the Court, to be paid from the Settlement Fund. (*Id.* § 8.1.) Plaintiffs' counsel voluntarily agreed to limit their request to 33% of the Settlement Fund, (*id.*), which they made by a separate motion on November 22, 2022. (Dkt. 374.) Defendant has also agreed to pay Plaintiffs incentive awards from the Settlement Fund in the amount of $7,500 each, subject to Court approval, in recognition of their efforts in serving as Class Representatives. (Agreement § 8.2; *see* dkt. 374, at 25-26.)

**F.** **Release:** In exchange for the relief described above, the Class Members will release Kronos and related entities from any and all past and present claims or causes of action related to BIPA, including, but not limited to, any claims arising out of BIPA, tort or privacy claims, or any other federal, state, or local statute, regulation, or common law, arising out of or related to the alleged possession, collection, capture, purchase, receipt through trade, obtaining, sale, lease, trade, profit from, disclosure, re-disclosure, dissemination, storage, transmittal, and/or protection from disclosure of alleged biometric information or biometric identifiers. (Agreement §§ 1.26, 1.27, 3.1.) The release specifically *excludes* Kronos's customers, such as the Illinois employers where Class Members used finger-scan time clocks. (*Id.* § 1.27.)

IV.    **THE CLASS NOTICE FULLY SATISFIED DUE PROCESS**

Prior to granting final approval to this Settlement, the Court must consider whether the class members received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011) ("*Schulte I*"). The "best notice practicable" does not necessarily require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process. In general, a notice plan that reaches at least 70% of class members is considered reasonable. *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

Here, before sending notice, the Parties worked to compile the names, addresses, and emails addresses of the Settlement Class members ("Contact Information") from Kronos' customers, following the detailed procedures set forth in the Settlement Agreement. (Agreement § 7.2.) First, Kronos reached out to all of its Illinois Kronos Cloud Customers, asking them to voluntarily provide Contact Information for their current and former employees who are members of the Settlement Class. (*Id.*) While some Illinois Kronos Cloud Customers produced Contact Information, 18 refused or failed to respond. As a result, Class Counsel issued subpoenas to each of those customers and, when six again failed to produce Contact Information, Class Counsel moved to compel their compliance, which the Court granted. (Dkts. 360, 363, 365.) Those six customers ultimately complied with the subpoenas. In the end, the final Class List contains the names of 81,910 unique individuals and includes a mailing address and/or email address for 80,349 of them, or 98%. (Ferruzzi Decl. ¶ 6.) While the 81,910 class size is smaller

9

than Kronos' original estimate of 171,643, it is based on real data received from all of Kronos' Illinois Kronos Cloud Customers.

The Court-approved Notice plan called for (1) direct notice via email and First-Class U.S. Mail to all persons in the Settlement Class for whom a valid email address and/or mailing address was available, (2) the creation of a detailed Settlement Website, and (3) reminder notices via email. (Dkt. 358, ¶¶ 9-11; Agreement § 4.1.) For direct notice, the Settlement Administrator first updated the U.S. Mail addresses on the Class List through the National Change of Address database to ensure the most up-to-date addresses as possible. (Ferruzzi Decl. ¶ 5.) On September 7, 2022, the Settlement Administrator sent the Court-approved direct notice via U.S. Mail to all 80,041 addresses on the Class List, and also via email to all 46,760 email addresses on the Class List. (*Id.* ¶¶ 11, 14.) Ultimately, direct notice was successfully delivered to 78,904 mailing addresses and 37,895 email addresses, and at least one form of direct notice successfully reached 95.4% of the Settlement Class. (*Id.* ¶¶ 11-15.)

The Settlement Administrator also sent two rounds of reminder notices via email to class members who, at each point, had not yet submitted a claim. (*Id.* ¶ 16.) The first reminder notices were sent on November 17, 2022 (i.e., 19 days prior to the Claims Deadline) to 35,573 Settlement Class members, and the second reminder notices were sent on November 29, 2022 (i.e., 7 days prior to the Claims Deadline) to 34,673 Settlement Class members. (*Id.*)

Both the direct notices and reminder notices directed class members to the Settlement Website, www.KronosBIPASettlement.com, which has been and continues to be available 24/7 and features the "long form" notice and important court filings (including Plaintiffs' Motion and Memorandum of Law for Attorneys' Fees, Expenses, and Incentive Awards), important deadlines, instructions on how to appear at the Final Approval Hearing telephonically, and

10

answers to frequently asked questions. (*Id.* ¶ 8; Agreement § 4.1(c)(iii).)

Overall, the Notice program was highly successful, as direct Notice reached over 95.4% of the class, those notices were supplemented with two rounds of reminder notices, and (as further discussed below) the Parties ultimately achieved an outstanding claims rate of 26.78%. This greatly exceeds what is required for due process.

## V. CERTIFICATION OF THE SETTLEMENT CLASS SHOULD BE CONFIRMED FOR PURPOSES OF FINAL APPROVAL

At preliminary approval, the Court certified the Settlement Class for settlement purposes under Rule 23, finding that it is sufficiently numerous, that common questions predominate, that Plaintiffs' claims are typical of the Settlement Class's claims, that Plaintiffs and Class Counsel will adequately represent the Settlement Class, and that a class action is a superior method for fairly and efficiently adjudicating this matter. (Dkt. 358, ¶¶ 3-4.) Since nothing has changed since then—other than the Parties securing Contact Information for 98% of the Settlement Class members—the Court should confirm certification of the Settlement Class for purposes of entering a Final Approval Order.

## VI. THE SETTLEMENT WARRANTS FINAL APPROVAL

When analyzing class action settlements, "the law quite rightly requires more than a judicial rubber stamp[.]" *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). To that end, the Seventh Circuit has established "the district judge as a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (internal quotations omitted).

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that "claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval . . . after a hearing and only on finding that it is fair, reasonable, and

adequate[.]" Fed. R. Civ. P. 23(e); *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

As the Advisory Committee for the 2018 amendments to Rule 23 recognized that "each circuit has developed its own vocabulary for expressing these concerns[,]" the Court should also take into account the factors set out by the Seventh Circuit. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. These factors are: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (internal quotations omitted); *accord Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Courts in the Seventh Circuit continue to analyze these factors in tandem with the Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g.*, *In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019).

The following discussion of the factors set out in Rule 23(e)(2) and their corresponding factors set out by the Seventh Circuit demonstrates that the Settlement is fair, reasonable, adequate, and deserving of final approval.

## A. Plaintiffs and Class Counsel have Adequately Represented the Class.

The first Rule 23(e)(2) factor, whether the class representative and class counsel have adequately represented the class, focuses on class counsel's and the class representative's performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is generally satisfied where the named plaintiff participated in the case diligently, and class counsel fought vigorously in the litigation. *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2018 WL 4659274, at *4 (N.D. Ill. Sept. 28, 2018); *see also Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) (finding this factor satisfied when class counsel vigorously litigated the case "both through motion practice on the legal merits and through discovery of facts and potential damages"). In considering this factor, courts are to examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account the nature and amount of discovery completed. *See Snyder*, 2018 WL 4659274 at *4. This inquiry is coextensive with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted).

The knowledge and negotiating position, participation, and conduct of Ms. Figueroa, Mr. Burton, and Class Counsel have not changed since this Court granted preliminary approval. (Dkt. 358.) Plaintiffs' interests have remained aligned with the Settlement Class through the Notice process and preparation for final approval. Without Plaintiffs stepping up to represent the class and taking on these tasks as the lead plaintiffs, including responding to written discovery, sitting for their depositions, reviewing the pleadings and Settlement Agreement, and otherwise staying involved in nearly every aspect of the case, the relief secured for the Settlement Class wouldn't

13

have been possible. Given their efforts and aligned interest with the class, there can be no doubt that Ms. Figueroa and Mr. Burton have only acted in the best interest of the Settlement Class and have adequately represented them.

Likewise, Class Counsel worked vigorously to protect the interests of the class and ensure that the class was represented beyond the simple "adequate" measure. First, the immense amount of investigation and discovery undertaken by Class Counsel ensured that they had adequate information to assess the strength of the case and engage in settlement discussions. For example, Class Counsel engaged in extensive formal written discovery, including by obtaining over 120,000 pages of documents and ESI from Kronos and deposing seven of Kronos' personnel. Each of those deponents provided crucial testimony about the marketing, functionality, or deployment of the time clocks at issue in this case. Class Counsel also engaged in extensive motion practice with Kronos, which included defeating Kronos' motion to dismiss and motion to strike class allegations, briefing several discovery motions, moving to strike two of Kronos' affirmative defenses, and defeating Kronos' motion to stay. Finally, after a settlement was reached, Class Counsel issued subpoenas to 18 of Kronos' customers, seeking Contact Information for the Settlement Class, to ensure that as many of them would receive direct notice of the Settlement as possible, and successfully moved to compel six of those customers to answer their subpoenas.

After nearly four years of investigation and discovery, the facts underlying Plaintiffs' allegations in this case, though by no means their legal import, are now substantially undisputed: Kronos (1) provided a cloud-based timeclock system with a finger scanner attached to customers across Illinois and (2) hosted the finger-scan data of 81,910 of those customers' workers through Kronos' WorkForce software, (3) without first seeking their written consent to do so or making

14

the disclosures mandated by BIPA. Therefore, the Settlement unequivocally meets the Rule 23(e)(2)(C) requirement.

> **B.**      **The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations.**

The second factor in Rule 23(e)(2) requires the court to consider whether the proposed settlement is the result of arm's-length negotiations. *See Wong*, 773 F.3d at 864. The record here demonstrates nothing but good-faith, non-collusive bargaining between the Parties. After over two years of active litigation, the Parties agreed in July 2021 that it was an appropriate time to explore meaningful settlement discussions. (*See* dkt. 313.) After exchanging several demands and counteroffers, the Parties agreed to mediate with Judge James F. Holderman (Ret.) of JAMS Chicago on August 31, 2021. Since the Parties were unable to reach a deal during their full-day mediation, they went back to litigating, with Plaintiffs taking their seventh deposition of a Kronos employee on September 22, 2021. However, the Parties continued to discuss settlement, and after several more rounds of demands and counteroffers, numerous calls between counsel, and on the eve of another Kronos deposition, the Parties finally reached an agreement on the principal terms of a class settlement on October 20, 2021. The Parties spent the next three months drafting and negotiating the outstanding terms of the final settlement agreement, which required submitting a dispute about the form of notice and the claim form to Magistrate Judge Gilbert for a binding determination. After Judge Gilbert resolved these issues, the Parties finalized and executed the Settlement Agreement on January 20, 2022. *See Wong*, 773 F.3d at 864 (affirming settlement approval and finding no "suspicious circumstances" where the parties negotiated with the assistance of an experienced third-party mediator); *Cooks v. TNG GP*, No. 2:16-cv-01160-KJM-AC, 2021 WL 5139613 at *4 (E.D. Cal. Nov. 4, 2021) ("The parties' participation in mediation 'tends to support the conclusion that the settlement process was not collusive.'").

The arm's-length nature of these negotiations is further confirmed by the Settlement itself: it is non-reversionary, provides significant cash payments to Class Members who submit a simple, valid Claim Form, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (approving settlement where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's-length negotiation"). For these reasons, there should be no question that the Settlement here was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered") (internal quotations omitted).

### C. The Settlement Treats Class Members Equally.

Next, Rule 23(e)(2) requires the proposed settlement to treat class members "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Given that the Settlement Class here has nearly identical BIPA claims, the Settlement treats each of them identically. Defendant has established a non-reversionary fund of $15,276,227.00, from which each Class Member who submitted an Approved Claim will receive a single,[4] *pro rata* cash payment after fees and costs are paid. (Agreement §§ 1.36, 2.1); *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund").

---

[4] As noted above, there may be a second cash payment made to individuals who timely cash their checks or successfully receive their electronic payments. (*See* dkt. 358, ¶ 24.)

The Settlement also provides for identical prospective relief requiring Kronos to provide specific notice to all of its Illinois Kronos Cloud Customers using finger-scan timeclocks, notifying them that they must establish a retention schedule for biometric data and obtain a BIPA-compliant release before anyone uses the clocks. (Agreement § 2.2.) Further, each Class Member will release the same BIPA claims against Kronos, and all will retain all their claims against their respective employers. (*Id.* §§ 1.26, 1.27, 1.28, 3.1.) Because the Settlement treats each Class Member equally, this factor is fully satisfied.

**D.  The Relief Secured for the Settlement Class is Adequate and Warrants Final Approval.**

The final and most crucial factor under Rule 23(e)(2) scrutinizes whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 identifies several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; and (iii) the terms of any proposed award of attorneys' fees, including timing of payment. *Id.*[5] This analysis necessarily encompasses two of the Seventh Circuit's factors: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; [and] (2) the complexity, length, and expense of further litigation[.]" *Wong*, 773 F.3d at 863. Because the first Seventh Circuit factor "[is the] most important factor relevant to the fairness of a class action settlement[,]" it is critically important for a settlement to meet this standard. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (internal quotations omitted). This Settlement does so.

---

[5]  The fourth sub-factor, which requires the parties to identify any side agreements made in connection with the settlement, is inapplicable as there are no such agreements. Fed. R. Civ. P. 23(e)(2)(C)(iv); (Declaration of J. Eli Wade-Scott, ("Wade-Scott Decl."), at ¶ 3, attached as Exhibit 3.)

### 1. The Relief Provided by the Settlement is Excellent.

The Settlement provides outstanding monetary relief for the Settlement Class and excels when compared to other class action settlements, including those under BIPA. Again, the deal creates a $15,276,227.00 non-reversionary fund for the benefit of 81,910 Settlement Class members. Given the 26.78% claims rate, after any approved fees and costs are paid, each Class Member who submitted an Approved Claim will be paid approximately $445.

Settlements in other statutory privacy class actions frequently don't come near this amount, either in terms of the amount of the payments or percentage of available relief. Such settlements all too often secure *cy pres* relief without any individual payments to class members. *See, e.g.*, *In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of a federal privacy statute, where $10,000 in statutory damages were available per claim). This has been true in finally-approved settlements in the BIPA context as well, where some settlements have offered only credit monitoring to class members, with *no* monetary relief. *See Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cnty. June 6, 2018). And of the BIPA settlements that have provided monetary relief, some have unnecessarily capped the amount class members can receive and reverted the inevitable remaining funds back to the defendant, rather than distributing the fund *pro rata* to class members. *E.g.*, *Rosenbach v. Six Flags Ent. Corp.*, 2016-CH-00013 (Cir. Ct. Lake Cnty. Oct. 29, 2021) (approving $36 million reversionary fund for approximately 1,110,000 class members, which capped class member payments at $200 or $60 depending on date of finger scan and reverted unclaimed funds to defendant); *Lark, et al. v. McDonald's USA, LLC, et al.*, No. 17-L-559 (Cir. Ct. St. Clair Cnty. Feb. 28, 2022) (approving $50 million reversionary fund for more than 175,000 class members, which capped

class member payments at $375 or $190 depending on date of finger scan and reverted tens of millions of dollars in unclaimed funds to defendants).

This Settlement stands in stark contrast, as it creates a non-reversionary cash settlement fund for the Settlement Class, and the amount per person is among the highest in a BIPA vendor case to date. *See Thome v. NOVAtime Tech., Inc.*, No. 19-cv-6256, dkt. 90 (N.D. Ill. Mar. 8, 2021) ($4.1 million fund for 62,000 class members and a $10 million confession of judgment); *Kusinski v. ADP LLC*, 2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) ($25 million fund for approximately 320,000 class members); *LaBarre v. Ceridian HCM, Inc.*, 2019-CH-06489 (Cir. Ct. Cook Cnty. Nov. 30, 2022) (approving $3,493,074 fund for 14,142 class members); *see also Bryant v. Compass Group USA, Inc.*, No. 19-cv-06622, dkt. 90 (N.D. Ill. Nov. 2, 2021) (preliminarily approving $6.8 million settlement for 66,159 class members, which releases both the vendor of the biometric technology and all of its customers). This monetary relief is even more remarkable considering that vendor claims are commonly released in employer BIPA cases for nothing, with no separate payment for the vendor's separate BIPA violations or promise of injunctive relief. *But see Fluker v. Glanbia Performance Nutrition, Inc.*, 2017-CH-12993 (Cir. Ct. Cook. Cnty.) (carving out third-party vendor, ADP, from release in BIPA settlement secured by Edelson PC).

To that end, the Settlement also preserves Class Members' BIPA claims against their employers, meaning they can pursue claims against their respective employers for the employer's own possible BIPA violations for the collection of the same biometric data. (Agreement § 1.27 (the Released Parties "expressly excludes any of Defendant's customers")). This carve-out enables Class Members to vitiate the full scope of their privacy rights under

BIPA, rather than, as in other cases, forcing Class Members to make a choice about which violations to pursue.

And the Class Members' employer BIPA claims are valuable: on average, class settlements between employees and their employers who deployed biometric timeclocks settle for over $1,000 per class member before fees and costs are deducted. *E.g.*, *Martinez v. Nando's Rest. Grp., Inc.*, No. 19-cv-07012, dkt. 63 (N.D. Ill. Oct. 27, 2020) (fund constituting $1,000 per person with direct checks sent to all class members); *Mazurkiewicz v. Mid City Nissan*, 2018-CH-09798 (Cir. Ct. Cook Cnty.) ($1,250 per person); *Fluker*, No. 2017-CH-12933 ($1,300 per person); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 18-cv-7018, dkt. 57 (N.D. Ill Sept. 20, 2020) ($1,400 per person). Not only are the Class Members here receiving significant monetary relief in light of the defenses in vendor cases that are not present in employer casers, but they are maintaining their claims that fall into this employer-employee category.

The relief provided here is outstanding and should be approved.

### 2.    The Cost, Risk, and Delay of Further Litigation Compared to the Settlement's Benefits Favors Final Approval.

"As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursing a litigated outcome to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment.

The Settlement here meets both the 23(e)(2)(C) requirements and the Seventh Circuit's first and second factors because it provides immediate relief to the Settlement Class while avoiding potentially years of risky litigation and appeals, with both Plaintiffs and Defendant

believing that they have strong cases for their side. *See Schulte I*, 805 F. Supp. 2d at 586

("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated

with continued litigation."). The risks here were not insignificant.

First, if litigation were to continue, Kronos would continue to argue that Plaintiffs

consented to the collection and disclosure of their biometric data—either implicitly or

explicitly—by voluntarily scanning their fingers on Kronos timekeeping devices. (Dkt. 278

(asserting affirmative defenses for "Estoppel," "Waiver," "Consent," "Ratification,"

"Acquiescence," and "Assumption of the Risk").) Kronos was sure to raise this as a bar to class

certification, too. Though Plaintiffs are confident BIPA requires nothing short of informed

written consent, "no Illinois court has addressed the question" to date. (Order, dkt. 307 at 2-3

("The court expects that the question whether [Kronos' equitable and implied consent affirmative

defenses] are valid under Illinois law will arise anew at summary judgment, class certification,

and/or some other juncture.").)

Second, Kronos would have also continued to assert that the fingerprint data collected by

its scanners are neither "biometric identifiers" nor "biometric information" covered by BIPA.

Rather, the argument goes, the scanner merely scans a person's fingertip and creates a

mathematical representation of the fingerprint (known as a "template"), and any image of the

fingerprint is immediately discarded. While Plaintiffs seriously question the merit of this

argument, given that "biometric information" includes "any information, regardless of how it is

captured, converted, stored, or shared" based on a fingerprint, *see* 740 ILCS 14/10, no court has

ruled on this issue yet at summary judgment or trial. *Howe v. Speedway LLC*, No. 19-cv-01374,

dkts. 125, 140, 149 (N.D. Ill.) (fully briefed motion for summary judgment on this issue in

fingerprint scan case against a Kronos customer).

21

Third, there are two key unresolved issues regarding the limitations period for BIPA claims, both of which have been argued and will soon be decided by the Illinois Supreme Court could have negatively impacted this case. The first is whether a one- or five-year limitations period applies to the various claims under § 15 of BIPA. *Tims v. Black Horse Carriers*, No. 127801 (Ill.). If the high court holds that a one-year period applies to claims under §§ 15(a) and (b)—instead of a five-year period—the vast majority of the class's BIPA claims would be time barred absent settlement. (*See* Agreement § 1.32 (settling a five-year class period).) The second is whether BIPA claims under § 15(b) and § 15(d) accrue for limitations purposes the first time a defendant collects and discloses their biometric data or the last time. *Cothron v. White Castle Sys., Inc.*, No. 128004 (Ill.). Like *Tims*, a ruling in *Cothron* that claims start to accrue on the first scan and disclosure would decrease the size of the class here and strip many current Settlement Class members of relief.

Beyond these issues, if litigation were to continue, Plaintiffs would also be required to use significant resources to litigate the issue of class certification. The Advisory Committee notes to amended Rule 23(e) suggest that courts should consider the likelihood of certifying a class for litigation in evaluating this sub-factor because the issue of litigating class certification is a salient one. While Plaintiffs believe that they would ultimately prevail on certification issues given Defendant's uniform conduct, class certification is still a significant hurdle and presents a risk to any class recovery. Even if adversarial class certification were granted, the possibility of an interlocutory appeal would still risk causing significant delay to any recovery. *Cf. Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019) (in BIPA case, affirming class certification on interlocutory appeal that pended for over a year). And assuming Plaintiffs would have succeeded at summary judgment and/or trial, Plaintiffs expect that Defendant would have re-

raised its arguments requesting a reduction in damages based on due process in light of the significant potential statutory damages at issue. (Dkt. 278 at 36-37); *see, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 963 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (in TCPA case, vacating district court's denial of defendant's post-trial motion challenging the constitutionality of $925 million statutory damages award under TCPA and remanding for further proceedings); *but see United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020), *cert. dismissed*, 141 S. Ct. 729 (2021) (statutory award of $280 million for violating various telemarketing statues over 65 million times did not violate due process).

Finally, there is no guarantee that the Class Members would receive any benefit from protracted litigation. Protracted litigation is costly and time consuming, and it is possible that it "would provide Class Members with either no in-court recovery or some recovery many years from now . . ." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. at 964. This Settlement provides immediate relief to Class Members, without the risk of protracted litigation. Thus, given the substantial risks, expense, and delay that would accompany further litigation, and in comparison to similar BIPA class action settlements, the Settlement offers substantial value relative to the strength of Plaintiffs' case. This crucial factor therefore strongly supports final approval.

### 3. The Method of Distributing Relief to the Class Members is Effective and Supports Final Approval.

The "effectiveness of [the]…method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53 (6th ed.).

Settlement distribution here is straightforward. Up until December 6, 2022, Class Members could submit a claim either by mail or online. Those who submitted online had the option to select to receive their Settlement Payment by Venmo, Zelle, Paypal, or check; those who submitted an Approved Claim by mail will receive a check in the mail and can update their address at any time on the Settlement Website. (Agreement § 1.5.) Once the Settlement is approved, the Settlement Administrator will distribute Settlement Payments to each Class Member for their *pro rata* portion of the fund. *See Crumpton v. Octapharma Plasma, Inc.*, No. 19-cv-08402, dkt. 92 (N.D. Ill. Feb. 16, 2022) (approving BIPA settlement where settlement administrator processed claims under counsel's oversight and distributed *pro rata* shares to class members with valid claims). If, after 120 days of issuance, any electronic payments are unable to be processed or any checks go uncashed, and if there are enough residual funds to make redistribution feasible, those residual funds will remain in the Settlement Fund and be redistributed to Class Members who successfully received their e-payment or cashed their check. (Dkt. 358, ¶ 24.) If redistribution is not feasible, or if there are residual funds remaining after redistribution, Plaintiffs propose donating such funds, in equal amounts, to Legal Aid Chicago and the American Civil Liberties Union of Illinois (earmarked to support its Government Accountability and Personal Privacy efforts), as agreed by the Parties. (Agreement § 2.1(f).) This well-recognized method of distributing monetary relief fully satisfies this aspect of Rule 23(e)(2)(C)(ii).

### 4. *The Terms of the Requested Attorneys' Fees are Reasonable.*

The third and final relevant sub-factor considers the adequacy of the relief provided to the class taking into account "the terms of [the] proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii).

After the Settlement Class received Notice, Class Counsel petitioned the Court for an award of reasonable attorneys' fees on November 22, 2022—16 days prior to the Objection Deadline. (Dkt. 374.) The Settlement's contemplated method of calculating attorneys' fees (i.e., the percentage-of-the-fund method) and Class Counsel's request for thirty-three percent (33%) of the non-reversionary Settlement Fund is reasonable and predicated on the outstanding relief provided to the Settlement Class. (Agreement § 8.1.) To be sure, the percentage-of-the-fund method has been used to determine a reasonable fee award in every BIPA class action settlement creating a common fund to date, and the requested percentage fee award is well in line with—if not on the low end of— common fund fee awards in BIPA cases in this District. *See*, *e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, No. 20-cv-04699, 2022 WL 2982782, at *35 (N.D. Ill. July 28, 2022) (awarding 33% of $92 million fund) (Lee, J.); *Crumpton*, No. 19-cv-08402, dkt. 92 (awarding 33% of $9.9 million fund) (Kendall, J.); *Alvarado v. Int'l Laser Prods., Inc.*, No. 18-cv-7756, dkt. 70 (N.D. Ill. Jan. 24, 2020) (awarding 35% of $895,788.74 fund) (Pallmeyer, J.); *Neals v. ParTech, Inc.*, No. 19-cv-05660, dkt. 140 (N.D. Ill. July 20, 2022) (awarding 35% of $790,000 fund) (Valderrama, J.). Accordingly, Class Counsel's request of 33% of the net fund in attorneys' fees is reasonable.

Finally, if approved, the Settlement provides that attorneys' fees will be paid within five business days after the final judgment becomes final and non-appealable. (Agreement §§ 1.13, 8.1.) These terms are reasonable and should be approved.

### E. The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement.

In addition to the requirements that overlap with those now required by Rule 23(e), the Seventh Circuit requires a few additional considerations: the class's reaction to the settlement, the opinion of competent counsel, and whether the settlement raises any red flags that courts

25

should be wary of. *Wong*, 773 F.3d at 863. Here, the positive reaction of the Settlement Class, the support of counsel, and the lack of red flags all favor approval.

### 1.    The Reaction of the Settlement Class Favors Approval.

The Court-approved Settlement Administrator diligently implemented the Notice plan outlined in the Agreement and the objection and exclusion deadlines have passed without a single person objecting to the Settlement and only one person opted out of participating. (Ferruzzi Decl. ¶ 17.) While the lack of objections and single opt out shed some light on the Settlement Class's favorable reaction to the settlement, the better indicator is the rate at which Class Members participated in the settlement by submitting claims. *See Eubank v. Pella Corp.*, 753 F.3d 718, 728 (7th Cir. 2014) ("[A] low opt-out rate is no evidence that a class action settlement was 'fair' to the members of the class.") Here, that 21,933 Approved Claims have been submitted—imputing a strong 26.78% claims rate—indicates a robust positive reaction from the Settlement Class.[6] *See Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N, 11 (Sept. 2019) ("Across all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.,* cases weighted by the number of notice recipients) was 4%."). Indeed, the rate at which Class Members participated in this Settlement meets, and in most instances surpasses, nearly every other finally-approved BIPA settlement to date. *See LaBarre*, 2019-CH-06489 (26.2% claims rate); *Neals*, No. 19-cv-05660, dkt. 140 (N.D. Ill. July 20, 2022) (23.86% claims rate); *In*

---

[6]    In total, there were 9,269 claims submitted by mail and 349,789 submitted online. (Ferruzzi Decl. ¶ 19.) The Settlement Administrator observed a drastic spike in the number of online claims submitted on and after October 21, 2022, as 322,156 online claims were submitted after that date. (*Id.* ¶ 21.) The Settlement Administrator has reported that many of these claimants submitted suspicious email addresses and physical addresses that don't exist. (*Id.*) Based on the Settlement Administrator's reports, Class Counsel believes many of these claims were submitted by "bots" *en masse* and are fraudulent. The Settlement Administrator has initially rejected these claims and is further reviewing. (*Id.*)

*re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 620 (N.D. Cal. 2021) (22% claims rate); *Crumpton*, No. 19-CV-08402, dkt. 92 (20.6% claims rate); *Sekura v. L.A. Tan Enters., Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (15% claims rate); *Kusinski*, 2017-CH-12364 (12.7% claims rate); *Thome*, No. 19-cv-6256, dkt. 90 (10% claims rate); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (5% claims rate). The strong response rate combined with a total lack of objections and a single opt out thus strongly supports granting final approval to the Settlement.

### 2. Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval.

While the Seventh Circuit has expressed skepticism about the weight of this factor, *see Pearson*, 772 F.3d at 787, the opinion of competent counsel also supports final approval of the Settlement. Where class counsel has "extensive experience in consumer class actions and complex litigation[,]" their "belie[f] that the [s]ettlement is beneficial to the [c]lass" supports approval of the settlement. *Schulte I*, 805 F. Supp. 2d at 586; *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (finding plaintiff's counsel competent, and their endorsement of a settlement thus supporting approval, where counsel were "experienced and skilled practitioners in the [relevant] field, and [were] responsible for significant settlements as well as legal decisions that enable litigation such as this to be successfully prosecuted") (internal quotations omitted).

Here, as the Court found when it appointed interim lead counsel (dkt. 95) and as discussed at length in Plaintiffs' motion for preliminary approval (dkt. 342 at 16–20), Class Counsel are competent to give their opinion on this Settlement. Put simply, and for the reasons discussed above, Class Counsel believe that the Settlement provides outstanding monetary and

prospective relief without the uncertainty and delay that years of additional litigation would bring. (Wade-Scott Decl. ¶ 4.) That is certainly in the best interest of the Settlement Class. (*Id.*)

For these reasons, the opinion of Class Counsel weighs in favor of final approval.

### 3. *The Settlement Raises No Red Flags.*

Finally, the Settlement raises none of the red flags identified by the Seventh Circuit in analyzing class settlements. In *Eubank v. Pella Corp.*, the Seventh Circuit identified "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for[.]" 753 F.3d at 728. Those signs included (i) a single class containing two adverse subgroups, (ii) a familial relationship between class counsel and the class representative, (iii) failure to establish the amount of class member recovery, (iv) the reversion of any unawarded attorneys' fees to defendant, (v) an advance of attorneys' fees before notice of the settlement was provided to class members, (vi) a provision in the settlement agreement denying incentive awards to class representatives who objected to the settlement, (vii) providing some class members only coupons, and (viii) a complicated claims procedure creating substantial obstacles to recovery. *Id.* at 721-28.

Here, none of those red flags are present. There are no subgroups to this class, and the Class Representatives, Ms. Figueroa and Mr. Burton, have no familial or other relationship with Class Counsel or any member of their respective law firms. The claims process here is simple and straightforward: Class Members were able to submit the short, one-page Claim Form either online through the Settlement Website, or by mail by submitting the postage-prepaid Claim Form that was attached to their original postcard notice. Any unawarded attorneys' fees will be distributed to Class Members who submitted Approved Claims, not revert to Kronos (Agreement § 8.1); there has been no advance of attorneys' fees to Class Counsel; and there is no provision in

the Settlement Agreement denying an incentive award to a named plaintiff who does not support the Settlement.

The Settlement here is beneficial to Class Members and displays no warning signs that should give this Court pause. The Settlement should therefore be approved.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order finally approving the Parties' Settlement and ordering such other relief as this Court deems reasonable and just.[7]

Respectfully submitted,

**CHARLENE FIGUEROA AND JERMAINE BURTON,** individually and on behalf of all others similarly situated

Dated: December 15, 2022

By: /s/ J. Eli Wade-Scott
       One of Plaintiffs' attorneys

Jay Edelson
jedelson@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

James B. Zouras
jzouras@stephanzouras.com
Ryan F. Stephan
rstephan@stephanzouras.com
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza
Suite 2150
Tel: 312.233.1550
Fax: 312.223.1560

---

[7] For the Court's convenience, Plaintiffs will submit a proposed final approval order to the Court's designated email address prior to the December 20, 2022 final approval hearing.